UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRAINTECH, INC., a Nevada corporation,

        Plaintiff/Counter-Defendant,

v.

ADIL SHAFI, an individual,

        Defendant/Counter-Plaintiff

v.

FREDERICK WEIDINGER, an individual,

        Additional Counter Defendant.
_____/

Case No. 09-10454

Hon. Victoria A. Roberts

## JOINT RULE 26(f) PLAN

Pursuant to Fed. R. Civ. P. 26(f), a conference was held on June 17, 2009, in this case and was participated in by James D. VandeWyngearde of Pepper Hamilton LLP, attorneys for Braintech, Inc. ("Braintech") and Frederick Weidinger ("Weidinger"), and James P. Murphy of Berry Moorman, attorneys for Shafi, Inc. ("Shafi"). This is submitted as the required report of that conference.

**I.     BACKGROUND OF THE ACTION**

    **A.     Braintech and Weidinger's Summary:**

Braintech was forced to initiate this litigation to rescind several agreements that it entered into with Adil Shafi, which directly resulted from numerous false and fraudulent misrepresentations that Shafi made to Braintech.

Braintech is a publicly traded robotic vision software technology company with hundreds of shareholders whose vision software and technologies enable vision recognition and

robot guidance processes in manufacturing, logistics, material handling, automation, situation awareness, security and reconnaissance. Weidinger is Braintech's Chief Executive Officer.

Prior to August 12, 2008, Shafi was the President and sole owner of SHAFI, Inc. ("SI"), a Michigan corporation with its principal place of business in Brighton, Michigan, and SHAFI Innovation, Inc. ("SII"), also a Michigan corporation with its principal place of business in Brighton, Michigan. SI and SII allegedly provided simplified software solutions for vision guided robotics.

Shafi, both in his individual capacity, and his capacity as President of SI and SII, made numerous material fraudulent misrepresentations, including but not limited to, representing that SI and SII possessed a fully functional, market-revenue-ready product, a strong, fully-trained channel network of integrators capable of executing the product in the field, and a discrete and fully disclosed amount of indebtedness with solid revenue commitments. Relying on those misrepresentations, on or about August 12, 2008, Braintech was fraudulently induced to enter into a series of six agreements with Shafi in his individual capacity and as President of SI and SII: (1) Share Purchase Agreement, which included a number of schedules, (2) Lock-Up Agreement, (3) Employment Agreement, (4) Non-Competition Agreement, (5) Letter Agreement regarding Indebtedness of SI and SII, and (6) Promissory Note (collectively referred to as the "Company Sale Agreements"). Weidinger was not a party to any of these agreements.

In the fourth quarter of 2008, after the Company Sale Agreements were executed, Braintech learned that material representations Shafi made to induce Braintech into entering into the Company Sale Agreements were, in fact, false and fraudulent. Instead of finding that the Reliabot was market-revenue-ready, Braintech learned that it was inadequate and not market-revenue-ready. Similarly, Braintech discovered that SI and SII were not supported by a large

number of integrators already in the field marketing and selling the products, as represented. Moreover, Shafi failed to appropriately fulfill his responsibilities under the Employment Agreement. By letter dated November 19, 2008, while reserving its right to terminate for the good cause that existed as of November 19, 2008, Braintech notified Shafi that he was being placed on administrative leave with pay and benefits. Shortly thereafter, Shafi began destroying company e-mails and other documents, and deleting employee computer files, thus causing further harm to the company. As a result, on November 24, 2008, Braintech moved Shafi's status to administrative leave without pay and benefits. Also by letter dated November 19, 2008, Braintech specifically notified Shafi of its decision to rescind the Company Sale Agreements. Braintech reiterated this decision by e-mail dated November 24, 2008. Despite this notice and demand, Shafi failed to return the consideration, failed to place Braintech in the position it was prior to execution of the Company Sale Agreements, and never even responded to Braintech's letter, email, and telephone calls. Thus, Braintech was forced to initiate the instant litigation for declaratory judgment, rescission, and other appropriate relief.

In a retaliatory measure designed solely to gain leverage, Shafi filed a counterclaim, first against Braintech only. Shafi shortly thereafter filed a First Amended Counterclaim, this time adding Braintech's Chief Executive Officer, Weidinger, as a party. The causes of action set forth in Shafi's First Amended Counterclaim are Declaratory Judgment-Employment Contract (Count I); Breach of Contract-Employment Contract (Count II); Breach of Contract-Share Purchase Agreement (Count III); Fraud/Fraud in the Inducement (Count IV); Violation of Section 10(b) of the Exchange Act (Count V); Violation of the Michigan Uniform Securities Act, MCL 451.810(a)(2) (Count VI); Conversion (Count VII); and Unjust Enrichment (Count VII). Braintech and Weidinger have filed a Motion to Dismiss, pursuant to Fed. R. Civ.

P. 12(b)(6), through which Weidinger seeks dismissal of all the claims that are asserted against him in Shafi's First Amended Counterclaim, and Braintech seeks dismissal of Counts IV – VI of Shafi's First Amended Counterclaim.

At its essence, Shafi's First Amended Complaint attempts to pierce the corporate veil (without articulating that it is attempting to do) and pin liability on Braintech's Chief Executive Officer for alleged actions or inactions of Braintech. By way of example, Shafi has asserted breach of contract claims against Braintech and Weidinger even though Weidinger was not a party to the contracts.

**B.    Shafi's Summary:**

Adil Shafi ("Shafi") began operating his vision-guided robotic software business in 1991 and later incorporated that business under the name Shafi Inc. ("SI"). Between its inception and 2008, SI became a successful and highly-regarded supplier of vision-guided robotics software. Before the transaction between Braintech and SI, SI was regarded as an industry leader in VGR software. Prior to the discussions between Braintech and SI, the two companies were competitors. However, SI's VGR software, RELIABOT, was operating in far more diverse platforms than Braintech's VGR software.

In February, 2008, Braintech through Weidinger approached Shafi to discuss a business combination. Between February and the date of the transaction, August 12, 2008, there were at times intense negotiations and long periods of extended and in-depth due diligence conducted by Braintech. There were occasions during this period of discussion and due diligence where Mr. Shafi was prepared to simply end the discussions. However, Braintech and Weidinger continued to press in order to conclude the business combination. Braintech was represented in the transaction by a talented national law firm, Greenberg Trauig. The due diligence conducted by Braintech was so deep that Braintech paid for and received regular

reports from an Ann Arbor attorney (William Tishkoff) working on behalf of SI, who negotiated payment agreements or consent judgments with creditors of SI prior to the transaction.

Included in the schedules to the Stock Purchase Agreement are numerous reports and memos prepared by William Tishkoff concerning his efforts to negotiate payment arrangements and/or reach payment terms for judgments entered against SI by various creditors. Included in his reports are references to SI's bank debt, including Comerica Bank. In fact, Comerica Bank was made aware of the transaction between SI and Braintech, on Braintech's behalf. Braintech not only was aware of SI's debts but in many cases, Braintech obtained consent for the stock purchase from SI's largest creditors and committed to make regular payments to all SI creditors. The amount of diligence and the level of detail in the schedules absolutely refutes any claim that SI or Shafi made a single misrepresentation.

As part of the transaction, Shafi became employed as the Chief Operating Officer of Braintech. Prior to Mr. Shafi's employment, the parties had worked out a business plan pursuant to which the joint resources of Braintech and SI (including technological and personnel resources) would be directed to growing the newly combined enterprise. However, almost immediately after Mr. Shafi began his employment he was virtually isolated from sales and marketing activities. He was also isolated from the joint effort to upgrade and integrate the technologies of the two companies into a more advanced product.

Unbeknownst to Mr. Shafi, Braintech was itself experiencing financial distress. Braintech is a publicly traded company and, as such, is required to file certain reports with the Securities and Exchange Commission. Beginning in late 2008, Braintech began making public statements that there was substantial doubt as to its ability to continue as a going concern. In 2009, these statements were amplified to the effect that Braintech would be unable to satisfy a

substantial loan repayment commitment which falls due in July, 2009.  Braintech has informed its shareholders that there is substantial doubt that Braintech will be able to repay the loan or obtain refinancing.  Braintech is also slated to lose its most valuable contract with ABB which will result in a significant, potentially business-ending loss of revenue.  In fact, Braintech acquired SI as a means of rescuing itself.  When its plans did not turn out as intended, Braintech merely claimed it was fraudulently induced to acquire the stock of SI and Shafi Innovation Inc.

The amount, depth and breadth of Braintech's due diligence prior to the transaction is breathtaking and completely refutes any charge that Braintech was fraudulently induced to acquire the stock in connection with he Stock Purchase Agreement.  Rather, the picture which emerges from the evidence is when Braintech realized that its acquisition of SI and SII would not be the panacea it thought it would be, Braintech immediately and abruptly attempted to reverse the transaction.

Mr. Shafi alleges that contrary to Braintech's allegations, Mr. Shafi was fraudulently induced to acquire 3 million shares of stock in Braintech in exchange for the transfer of stock owned by Mr. Shafi in SI and SII.

Shafi was employed as the COO of Braintech pursuant to a written Employment Agreement.  The written Employment Agreement provided the terms and conditions upon which Shafi could be terminated.  Shafi alleges that he was not properly terminated for cause, and as such, the contract entitles Mr. Shafi to certain severance benefits.  Count I, for a declaratory judgment, requests the Court's interpretation of the contract and an Order concluding that Shafi is entitled to certain severance benefits.  Count II seeks recovery against Braintech for breach of Mr. Shafi's Employment Agreement.  Counts I and II are directed to Braintech only.

The Share Purchase Agreement provided that Braintech would cause various debts of SI to be paid. Braintech failed to honor this obligation and only to the extent that debts on which Mr. Shafi was personally obligated have now come back to him, Mr. Shafi seeks recovery for breach of those promises in Count III.

Mr. Shafi contends that he was fraudulently induced to acquire Braintech stock in exchange for his stock in SI and SII. In other words, Shafi contends that Weidinger and Braintech concocted an elaborate scheme which included all of the contracts in question, merely to acquire the intellectual property of SI. Mr. Shafi has lost the entire value of his ownership interest in SI and SII and been given worthless Braintech stock in exchange. Mr. Shafi seeks to recover the value of his companies at the time he transferred his ownership interest to Braintech in Count IV. Mr. Shafi seeks recovery from both Weidinger and Braintech.

Mr. Shafi claims that in connection with the sale of Braintech stock to him, Weidinger and Braintech violated Section 10(b) of The Exchange Act. In Count V, Mr. Shafi seeks to recover his damages for the fraud in connection with the sale of Braintech securities. Mr. Weidinger and Braintech actively participated and aided and abetted each other in connection with the violation of Section 10(b) of The Exchange Act. Mr. Shafi has also asserted a similar cause of action under the Michigan Uniform Securities Act in Count VI. Both Braintech and Mr. Weidinger are defined as "Sellers" under the Michigan Uniform Securities Act and recovery is sought against both of them for the violation of the Michigan Uniform Securities Act.

Mr. Shafi contends that Braintech and Weidinger converted Mr. Shafi's property, his stock in SI and SII. The conversion statute, MCL600.2919(a) imposes liability on both

Weidinger and Braintech as each aided the other in the conversion of Mr. Shafi's stock/ownership interest in SI and SII.

Finally, Mr. Shafi seeks recovery for unjust enrichment in Count VIII. Both Weidinger as the majority shareholder of Braintech and Braintech have been unjustly enriched as a result of the enhanced value of Braintech following the acquisition of SI and SII (including all of its valuable intellectual property). As the majority shareholder, Weidinger had much to gain by converting SI and SII and hoped to profit handsomely in a future public offering of Braintech stock.

Shafi acknowledges that Mr. Weidinger was not a party to his Employment Agreement and does now seek any relief for breach of his employment agreement from Mr. Weidinger. Shafi is aware that Braintech and Weidinger have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) but believes there is ample factual foundation for Shafi's counterclaim to survive the 12(b)(6) motion.

## II. PROPOSED AMENDMENTS TO THE PLEADINGS

### A. Braintech and Weidinger's Proposed Amendments to the Pleadings:

At this time, none.

### B. Shafi's Proposed Amendments to the Pleadings:

None.

## III. ADMISSIONS OF FACT AND STIPULATIONS

### A. Braintech and Weidinger:

At this time, Braintech and Weidinger cannot stipulate as to the authenticity of any documents in Shafi's possession, as discovery has only just commenced. Likewise, Braintech and Weidinger cannot presently admit any of the facts claimed by Shafi.

**B.  Shafi:**

Shafi believes that the parties should be able to stipulate to the authenticity of the entire package of closing documents including all of the schedules and related documents which together, constitute a substantial body of evidence for both parties in this case.  Shafi also proposes the following stipulations of fact:

i. Until the date this case was filed, Braintech provided no justification for the termination of Mr. Shafi's employment.

ii. Braintech was aware that pursuant to schedules in the Closing Agreement that a portion of the $100,000 advanced to SI prior to the closing would be paid to Mr. Shafi in repayment of loans Mr. Shafi made to SI prior to the transaction.

iii. Braintech fully investigated each and every creditor of SI and paid William Tishkoff, Esq. to contact each and every creditor to make payment arrangements and/or arrangements to pay off judgments or default judgments.

iv. The culmination of Mr. Tishkoff's work resulted in the schedule entitled "Braintech Accepted Debt."

v. Braintech communicated with each and every secured creditor of SI prior to the transaction.

vi. Braintech obtained the consent of the IRS, State of Michigan, Comerica Bank and LaSalle Bank prior to the transaction.

## IV. LIST OF POTENTIAL DEPONENTS

### A. Braintech and Weidinger:

1. Adil Shafi.  (This initial list of potential deponents should not be construed as a final witness list or a final witness list of individuals that Braintech and Weidinger will depose. Braintech and Weidinger reserve the right to amend this list.)

### B. Shafi:

1. Frederick Weidinger.

2. William Tishkoff, Esq.

3. Peter Long (Counsel for SI and SII prior to the transaction)

4. Glen Smith

5. Jeffrey Houle (counsel for Braintech)

6. Witness who were requested to consent to the transaction including:

    a. Internal Revenue Service

    b. State of Michigan

    c. LaSalle Bank

    d. Comerica Bank

7. Banking relationships investigated by Braintech prior to the transaction, including:

    a. Comerica Bank

    b. Superior National Bank

    c. LaSalle Bank

8. Bruce Rukkila, CPA (SI's CPA prior to the transaction)

9. Various creditors set forth in the Shafi Inc. payables contact information (which is included in the schedules to the August 12, 2008 contracts)

      10. Various customers and contacts of SI.

      11. Additional members of the Braintech executive team including:

          a.  Jeffrey Milton, Esq.

          b.  Edward White

          c.  Babak Hababi (former executive with Braintech)

      12. There are likely to be other witnesses identified by the parties pursuant to discovery.

## V.   OTHER PRESUMPTIVE LIMITS ON DISCOVERY

### A.  Braintech and Weidinger:

Braintech and Weidinger do not request any changes to the limitations on discovery imposed under the Federal Rules of Civil Procedure or by local rule.

### B.  Shafi:

Mr. Shafi will rely upon the existing limitations set forth in the Federal Rules of Civil Procedure.

## VI.   AREAS WHICH MAY REQUIRE EXPERT TESTIMONY

### A.  Braintech and Weidinger:

Braintech and Weidinger may require potential experts in the following areas: robotic vision software technology; damages.

### B.  Shafi:

Mr. Shafi himself will qualify as an expert witness in vision-guided robotic software. At this time, Mr. Shafi does not anticipate additional expert witnesses.

**VII.   ELECTRONIC DISCOVERY**

    **A.   Braintech and Weidinger:**

Braintech and Weidinger do not request any orders from the Court concerning electronic discovery at this time.

    **B.   Shafi:**

Mr. Shafi has taken steps to preserve electronic evidence to which he has access. It is expected that Braintech has done the same and will continue to do so. If an agreement cannot be reached between the parties, the Court may be requested to enter an Order concerning electronic discovery.

**VIII.   OUTSTANDING/ANTICIPATED DISCOVERY DISPUTES**

    **A.   Braintech and Weidinger:**

Braintech and Weidinger propose to stay all discovery in this matter, including the exchange of Initial Disclosures, until 21 days following a final resolution to Braintech and Weidinger's pending Motion to Dismiss.

    **B.   Shafi:**

At present, Mr. Shafi does not anticipate discovery disputes, however, Mr. Shafi is opposed to any stay on discovery pending the outcome of the motion to dismiss.

**IX.   INITIAL DISCLOSURE REQUIREMENTS**

    **A.   Braintech and Weidinger:**

Braintech and Weidinger propose to stay the exchange of Initial Disclosures until 21 days following a final resolution to Braintech and Weidinger's pending Motion to Dismiss.

    **B.   Shafi:**

Mr. Shafi will be prepared to exchange his Initial Disclosure at or immediately prior to the scheduling conference.

## X.     APPROPRIATE MANAGEMENT PLAN

### A.  Braintech and Weidinger:

Braintech and Weidinger propose to stay all discovery in this matter, including the exchange of Initial Disclosures, until 21 days following a final resolution to Braintech and Weidinger's pending Motion to Dismiss.  Braintech and Weidinger propose ninety days of fact discovery, followed by thirty days of expert discovery, with all potential dispositive motions to be filed within forty-five days from the close of expert discovery.

### B.  Shafi:

Mr. Shafi requests a period of 6 months for all discovery, fact and expert witness. Mr. Shafi agrees to a period of forty-five days after the close of discovery to file dispositive motions.

## XI.    CASE EVALUATION

### A.  Braintech and Weidinger:

Braintech and Weidinger do not wish to stipulate to mediation under the Michigan Court Rules.

### B.  Shafi:

Mr. Shafi is willing to participate in he Michigan State Court case evaluation process.

## XII.   WHAT IT WOULD TAKE TO RESOLVE THE CASE

### A.  Braintech and Weidinger:

Braintech and Weidinger believe that periodic settlement conferences with this Court or a Magistrate Judge would be beneficial.

-14-

**B. Shafi:**

Mr. Shafi wants to be made whole. Unfortunately, at this point in time, return of ownership in SI and SII is not practicable because Braintech and Mr. Weidinger have turned them into empty shells and have defaulted on every single obligation to every single creditor of SI and SII. Mr. Weidinger and Braintech also have had complete and unfettered access to the intellectual property of SI and SII for almost 12 months. The value of this transaction to Mr. Shafi at the time, exceeded the sum of $3,000,000. Mr. Shafi would consider compromising this amount in an early resolution to this case.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| /s/ Mary K. Deon | /s/ James P. Murphy |
| JAMES J. VANDEWYNGEARDE (P58634) | JAMES P. MURPHY 9P36728) |
| MARY K. DEON (P63019) | Berry Moorman P.C. |
| Pepper Hamilton LLP | 535 Griswold, Suite 1900 |
| Suite 3600 | Detroit, MI  48226 |
| 100 Renaissance Center | 313.496.1200 |
| Detroit, MI 48243-1157 | murph@berrymoorman.com |
| (313) 259-7110 | Attorneys for Adil Shafi |
| vandewyj@pepperlaw.com | |
| deonm@pepperlaw.com | |
| Attorneys for Braintech, Inc. and Frederick Weidinger | |
| Dated:  June 17, 2009 | Dated:  June 17, 2009 |

#11137294 v1 (135776.2)