# EXHIBIT N

**EXECUTION**

August 12, 2008

Braintech, Inc.
#102 - 930 West 1st Street
North Vancouver, B.C. Canada
V7P 3N4

Re: Indebtedness of SHAFI, Inc. and SHAFI Innovation, Inc.

Ladies and Gentlemen:

This letter agreement (this "**Agreement**") is being delivered as an inducement to Braintech, Inc., a Nevada corporation ("**Buyer**"), to enter into that certain Share Purchase Agreement (the "**Purchase Agreement**"), dated as of August 12, 2008, by and among the undersigned Adil Shafi (the "**undersigned**"), SHAFI, Inc., a Michigan corporation ("**SI**"), SHAFI Innovation, Inc., a Michigan corporation, and Buyer. Capitalized terms used herein and not otherwise defined herein shall have the respective meanings set forth in the Purchase Agreement. Any notices permitted or required hereunder shall be provided in accordance with the notice provisions set forth in Section 9.1 of the Purchase Agreement.

In furtherance of, and without limiting any Buyer Indemnified Party's remedies pursuant to Article 5 of the Purchase Agreement or otherwise, the undersigned hereby covenants and agrees to fully and finally satisfy in a timely manner, without any Liability to Buyer or any Company, any and all Excess Debt. "**Excess Debt**" means any and all of the following: (i) Company Indebtedness existing as of immediately prior to the Closing that is not expressly set forth on the Creditor and Payment Schedule or is in excess of the Company Indebtedness identified thereon, and (ii) Company Indebtedness that is expressly set forth on the Creditor and Payment Schedule but is not Braintech Accepted Debt ("**Seller Obligation Debt**").

The undersigned shall be permitted to negotiate the terms of repayment of any particular Excess Debt with the creditor to whom such debt is payable, provided he receives the prior written consent of Buyer's Chief Executive Officer to do so. Any such negotiation by the undersigned with such a creditor shall not limit Seller's obligations pursuant to the preceding paragraph.

"**Braintech Accepted Debt**" is any Company Indebtedness expressly set forth on the Creditor and Payment Schedule in the column thereon titled "Braintech Accepted Debt (Remaining Balance)" in the amount set forth in such column. Braintech Accepted Debt shall not exceed $900,000 in the aggregate.

The undersigned acknowledges and agrees that (i) nothing herein shall prevent Buyer from negotiating or attempting to negotiate the terms of any Braintech Accepted Debt and (ii) Buyer may modify or cause the modification of the repayment terms

(including, without limitation, the amount paid, to be paid or not paid in any specific month and the timing of any payments) of any Braintech Accepted Debt for which no written settlement thereof has been entered into between SI and the applicable creditor as of the date hereof. The undersigned further agrees that he shall not negotiate, attempt to negotiate, settle or attempt to settle any Braintech Accepted Debt, or discuss or attempt to discuss the same with any creditor thereof, in each case without the prior written consent of Buyer's Chief Executive Officer.

Without limiting the foregoing, but for the avoidance of doubt: (i) if a party to whom either Company is indebted as of immediately prior to the Closing (a "**creditor**") is not set forth on the Creditor and Payment Schedule, the undersigned shall be responsible for all Company Indebtedness to such creditor pursuant to paragraph 2 above, (ii) if a creditor is set forth on the Creditor and Payment Schedule with a specified amount that is Braintech Accepted Debt but a Company is indebted to such creditor immediately prior to the Closing in an amount that is in excess of such specified amount, the undersigned shall be responsible for such excess indebtedness to such creditor pursuant to paragraph 2 above, and (iii) the undersigned's obligations hereunder shall not be reduced in any way as a result of the negotiated reduction of any Braintech Accepted Debt or settlement of Braintech Accepted Debt for less than the amount shown on the Creditor and Payment Schedule.

The undersigned understands and agrees that this Agreement is irrevocable and cannot be modified without the written consent of Buyer.

This Agreement may be executed and delivered in two counterparts and by facsimile or other electronic transmission, each of which shall be deemed an original but both of which shall be considered one and the same instrument.

EACH OF THE UNDERSIGNED AND BUYER HEREBY WAIVE ANY AND ALL RIGHTS IT MAY HAVE TO A JURY TRIAL IN CONNECTION WITH ANY LITIGATION, PROCEEDING OR COUNTERCLAIM ARISING WITH RESPECT TO THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS HEREUNDER.

This Agreement will be governed by and construed in accordance with the laws of the State of Michigan, without giving effect to any choice of law or conflicting provision or rule (whether of the State of Michigan, or any other jurisdiction) that would cause the laws of any jurisdiction other than the State of Michigan to be applied. In furtherance of the foregoing, the internal laws of the State of Michigan will control the interpretation and construction of this Agreement, even if under such jurisdiction's choice of law or conflict of law analysis, the substantive law of some other jurisdiction would ordinarily apply.

[Signatures follow]

Very truly yours,

_____

Adil Shafi

Agreed to and Acknowledged:

**BRAINTECH, INC.**

By: _____

    Name:

    Title:

[Signature page to Side Letter Agreement]

3

Very truly yours,

_____

Adil Shafi

Agreed to and Acknowledged:

**BRAINTECH, INC.**

By: _____
    Name: *Frederick W. Weidinger*
    Title: *Chief Executive Officer*

[Signature page to Side Letter Agreement]

3

Shell, Inc.
Expected Debt Payments

The document contains a complex financial spreadsheet titled "Expected Debt Payments" for Shell, Inc. The spreadsheet shows a detailed debt payment schedule with numerous line items organized in columns by month (July through December across multiple years), with columns for Total Debt and various payment amounts. The text is too small and faded to reliably transcribe the individual numeric values and row labels.



