UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRAINTECH, INC., a Nevada corporation,

      Plaintiff/Counter-Defendant,

v.                                     Case No. 09-10454

ADIL SHAFI, an individual,               Hon. Victoria A. Roberts

      Defendant/Counter-Plaintiff/
      Third-Party Plaintiff,

v.

FREDERICK WEIDINGER, an individual,

      Third-Party Defendant.
_____/

**DEFENDANT'S REPLY REGARDING AMENDED MOTION FOR PROTECTIVE ORDER [DOCKET NO. 62]**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES………………………………………………………………iii

I.   ARGUMENT ………………………………………………………….……1

## INDEX OF AUTHORITIES

<u>Cases</u>

*Amcast Indus.*, 138 F.R.D. at 121……………………………………………………………….5

IBM Peripheral EDP Devices Antitrust Litig., 77 F.R.D. 39, 41-42 (N.D. Cal. 1977)…………5

*Claude P. Bamberger Int'l v. Rohm & Haas Co.,* 1998 U.S. Dist. LEXIS 11141 (D. N.J. 1998)………………………………………………………………………………………..5

Fontaine, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975)……………………………………………5

## I.   ARGUMENT

Adil Shafi has spent most of his adult life in the vision guided robotic software business, creating software to operate vision systems on robots for a variety of industries. He built Shafi Inc. into a business that had hundreds of robots around the world running proprietary software under the brand name of RELIABOT.   The name and proprietary software were owned by Shafi Inc., and became a wholly owned subsidiary of Braintech when Braintech acquired Mr. Shafi's companies, Shafi Inc., and Shafi Innovation Inc., on August 12, 2008 (which is the subject matter of this case.)

Braintech has recently filed a motion for summary judgment. In it, Braintech argues that:

> Braintech learned after the closing that various representations regarding the Reliabot technology and the number of integrators, including without limitation, the representations outline above, were untrue when made.  Indeed, instead of finding that the Reliabot was market-revenue-ready, Braintech learned that it was inadequate, not market-revenue-ready, and had no pipeline of revenue.

In other words, Braintech and Weidinger contend Shafi Inc. RELIABOT software was useless, inadequate and incapable of being sold.  Yet in their opposition to Shafi's discovery motions, Braintech and Weidinger now contend Mr. Shafi is using RELIABOT code, selling it and making money doing so.  Braintech's interest in Mr. Shafi's activities is remarkable when considered in the context of Braintech's claim that Shafi Inc., was essentially worthless when acquired by Braintech.[1]

Before the subpoena was issued (on the last day of the discovery period) Braintech

---

[1] Braintech claims it is a pointless waste of time for Shafi to pursue a claim against Braintech when Braintech has no funds to pay any judgment. It must be utterly confounding to Braintech that a judgment against Braintech may enable Mr. Shafi to recover the "Shafi" name, the RELIABOT trademark and name and the RELIABOT source code, among other items.

had never asserted that Mr. Shafi had made any use of Shafi Inc. assets.  Moreover, had Braintech paid the required severance under his employment contract, Mr. Shafi would have been bound by a covenant not to compete.  After being placed on "administrative leave without pay" on November 19, 2008, it should come as no surprise to Braintech that Mr. Shafi returned to the vision guided software market in order to feed and clothe his family.   To Braintech, Mr. Shafi's return to the business which made him successful equates to theft of Braintech property.  It is a claim not based on any tangible evidence, but rather rank speculation.

Mr. Shafi was asked point blank if he was using RELIABOT software in his new venture Advenovation.  Mr. Shafi testified:

> Q.   Okay.  Well, here's the mystery, sir.  How did the product, the Advenovation software product, how did it come into existence, inception, how did it come to inception when you stepped into the company?
>
> A.   Well, it came from my more than 20 years of experience, quite well known for my solutions out there, and at Shafi, Inc., we had hundreds of systems out there, so although we are not developing with any of Shafi, Inc.'s old software, nor its, you know, intellectual property,  we are developing, or Advenovation is developing, software through its asset called Adil Shafi that knows these systems and knows what systems need to do.  If anything, the technology has moved on and grown and innovated itself since my time at Shafi, Inc., and so the solutions are newer platforms or newer things and – but the product is and the company's developing its strengths through my personal past experience and understanding of what the market needs and what types of solutions customers need and what types of interfaces they need and communications and all that type of thing.
>
> Q.   Okay.  So when you came to Advenovation was there a product that was in existence at the time that the company was transferred to you?
>
> A.   No.  No.  I built this up since I joined Advenovation.

Shafi Tr. pp. 413-415.

Shafi's motion for a protective order was filed almost 2 years after he left Braintech. His company Advenovation was formed following his departure from Braintech.[2]  In its first year of operation, Advenovation generated sales of approximately $100,000.  Shafi Tr. p. 402.  In its second year of existence, Mr. Shafi's company has generated sales revenue of "a few hundred thousand" dollars.[3]  Shafi Tr. pp. 402-403.  Braintech apparently cannot comprehend that Mr. Shafi is an expert in the field of robot vision guided software and has the ability to develop software independently of Braintech and RELIABOT.

Braintech relies on pure innuendo to make its case that Mr. Shafi is making use of Braintech property – namely RELIABOT.  By returning to the vision guided software market, Mr. Shafi has corroborated with David Dechow, with whom Mr. Shafi worked to create RELIABOT software.  This, Braintech argues, surely shows that Mr. Shafi is simply re-using RELIABOT software code.  Mr. Shafi and Advenovation will allow Braintech's attorneys to inspect the source code of Advenovation vision guided software.  This will dispel any notion that Mr. Shafi is trading on assets he sold to Braintech.

As for the full blown examination of the business records of Advenovation, this is nothing more than a fishing expedition. Mr. Shafi testified that his involvement with Advenovation did not begin until February 2009 (three months after being terminated from Braintech).  Shafi Tr. pp. 494-496.  The software being sold by Advenovation was created after February 2009.  Shafi Tr. p. 496 ("I started in December – in February of 2009, and after that the software developed over time.")  Inspection of Advenovation's software code

---

[2] Mr. Shafi was effectively terminated from Braintech on November 19, 2008. Advenovation Inc., came into existence on December, 5, 2009. See Exhibit 1, state of Michigan record re formation of Advenovation.

[3] Mr. Shafi was asked this question in his deposition. This was his best estimate because he did not have financial records of Advenovation in his possession during the deposition (and was not asked to produce such records).

will refute any claim that Mr. Shafi or Advenovation are making use of RELIABOT software.

Mr. Shafi's income and Advenovation's revenue records have nothing to do with any claim in this case.  Braintech appears to concede the disputed discovery has nothing to do with the employment or fraud claims.  Braintech argues that the disputed discovery is relevant to the claims for conversion and unjust enrichment.  Braintech appears to argue that if Mr. Shafi is trading on Shafi Inc., assets then any such income must reduce or offset the claims for conversion and unjust enrichment.  This is a stretch by any means but this argument only works if there is any evidence that Mr. Shafi is making use of Shafi Inc., assets.  Braintech does not offer a shred of evidence to support its contention.

In fact, Braintech continued to operate all the way up to its recent closure in April, 2010.  This means Advenovation was competing with Braintech for more than a year – while this case was pending.  Braintech was represented by able counsel and no claim was ever made that Mr. Shafi or Advenovation was making use of assets sold to Braintech.  Now, with no assets, no employees and no existence, attorneys hired by an insurance company waited until the last day of discovery to make a speculative assertion that Mr. Shafi is making use of assets sold to Braintech.  This is beyond a fishing expedition, Braintech seeks to   "'drain the pond and collect the fish from the bottom.' *Amcast Indus.*, 138 F.R.D. at 121 (quoting *In re IBM Peripheral EDP Devices Antitrust Litig.*, 77 F.R.D. 39, 41-42 (N.D. Cal. 1977)). Additionally, they [seek to do] so without knowing whether there were even any fish in the pond." *Claude P. Bamberger Int'l v. Rohm & Haas Co.,* 1998 U.S. Dist. LEXIS 11141 (D. N.J. 1998).

This case was filed in February 2009.  Braintech actively litigated this case until its attorneys sought withdrawal in March 2010. Braintech went out of business when its

secured lenders foreclosed its assets.  Lawyers hired by Braintech's insurance company asked Mr. Shafi a series of questions about whether Mr. Shafi was making use of any Shafi Inc., asset.  Mr. Shafi made it absolutely clear that Advenovation is a new company that has nothing to do with Shafi Inc., or RELIABOT software.  Inspection of the Advenovation software code will prove that there is no RELAIBOT code whatsoever being used by Advenovation.  In fact, had they asked, Braintech's attorneys would have discovered that RELIABOT code was written in Microsoft's Visual Basic 6.0, while Advenovation code is written in Microsoft VB.NET software.

Braintech should not be permitted to drain the pond to see if there are any fish in it. "Discovery under the Federal Rules of Civil Procedure is intended to narrow the scope of the issues and to prevent surprise at trial; it is not intended to allow a plaintiff to go on a fishing expedition to see if the speculative complaint that he has filed has any basis in fact."; *In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975)  ("While the standard of relevancy is a liberal one, it is not so liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter which does not appear germane merely on the theory that it might become so.'") (citations omitted).  The claim that Mr. Shafi is making use of Shafi Inc. assets is clearly the shadow zone of relevancy.  The idea was cooked by lawyers who essentially have no client. It is speculative and frivolous.  It is discovery for the point of discovery, not grounded in fact or reality.

Respectfully submitted,

BERRY MOORMAN P.C.

By:   s/James P. Murphy
       James P. Murphy (P36728)
       Attorneys for Defendant
       535 Griswold, Suite 1900
       Detroit, Michigan 48226
       (313) 496-1200
       murph@berrymoorman.com

Dated:  November 29, 2010

## CERTIFICATE OF SERVICE

STATE OF MICHIGAN )
                 )ss
COUNTY OF WAYNE  )

    I hereby certify that on the 29th day of November, 2010, a copy of the foregoing Reply Regarding Amended Motion for Protective Order [Docket No. 62] was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Respectfully submitted,

BERRY MOORMAN P.C.

By:   s/James P. Murphy
       James P. Murphy (P36728)
       Attorneys for Defendant
       535 Griswold, Suite 1900
       Detroit, Michigan 48226
       (313) 496-1200
       murph@berrymoorman.com