UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADIL SHAFI, an individual,

    Defendant/Counterclaim Plaintiff

v.                                                              Case No. 09-10454

BRAINTECH, INC, a Nevada corporation,                           Hon. Victoria A. Roberts

    Counterclaim Defendant,

and

FREDERICK WEIDINGER, an individual,

    Additional Counterclaim Defendant.
_____/

**DEFENDANT SHAFI'S SUR-REPLY TO SUMMARY JUDGMENT
MOTION OF BRAINTECH AND WEIDINGER**

{00009396;v1 }

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES………………………………….…………………….ii

I.   INTRODUCTION……………………………………………………...….……1

II.  ARGUMENT………………………………………………………………..….1

     A.   The Failure to Pay Debts to Shafi Inc. ………………………………….1

     B.   The Failure to Open a Michigan Office to Support A&A. …………………..3

     C.   There is no Proof Shafi "Deleted" Anything But Spam Email. ………..……4

     D.   The Promise to Acquire Robots was Material and its Breach Doomed
          the Relationship. ……………………………………………………….…5

III. CONCLUSION………………………………………………………………….5

## INDEX OF AUTHORITIES

**Cases** Page(s)

*Celotex Corp. v. Catrett,* 477 U.S. 317, 326 (1986)……………………….……....1, 3


**Rules**

Fed. R. Civ. P. 56(c)………………………………………………………….………1, 3, 5

Local Rule 7……………………………………………………………………………….5

## I.  INTRODUCTION

The purpose of Rule 56(c) is to afford the nonmoving party notice and a *reasonable* opportunity to respond to the moving party's summary judgment arguments and supporting evidence. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 326 (1986).  A party seeking summary judgment is obligated to lay out the evidence in support thereof.  The non-moving party must respond in kind.  Reply briefs are permitted by local rule, but a party may not use the reply brief to submit new evidence and arguments in support of summary judgment. In their reply brief filed on January 7, 2011, Weidinger and Braintech have done just that.  The Reply [Docket No. 81] contains new arguments, new contentions and new exhibits.

## II.  ARGUMENT

### A.  The Failure to Pay Debts of Shafi Inc.

Braintech and Weidinger's summary judgment brief conceded that Braintech failed to pay debts of Shafi Inc. but made an unsupported claim that debts were paid for "several months."

> The undisputed evidence in this case is that Braintech performed the SPA for several months after it was signed, and undertook to pay SI's debts until it was no longer able to make those payments from revenue produced by SI.

No evidence or citation to the record was offered.  In response, Shafi presented Weidinger's testimony, where he confirmed that payments to Shafi Inc. creditors ceased almost immediately after the closing:

> Weidinger admitted on deposition that payments to Shafi creditors were stopped almost immediately because "[t]here was no revenue from Shafi

pipeline coming in to net against it." [quoting from Weidinger deposition testimony]

In fact, Weidinger did not know what sum (if any) was paid to Shafi Inc. creditors. Weidinger Tr. p. 160. Thus, the "record" contains no evidence the Shafi Inc. debt *was ever paid*.

The reply brief reverses this concession and presents new "evidence" (in the form of email exchanges) purporting to show that all debt payments to Shafi Inc. creditors were made by Braintech. With this, Braintech and Weidinger now claim that Shafi has failed to carry his burden to show that creditors of Shafi Inc. were *not* paid.

Weidinger and Braintech conceded payments were not made and failed to document that *any* payments were made. Thus, Shafi has no "burden" to prove that payments were not in fact made. The fact is there is no evidence of payment, but rather, ample evidence of non-payment. For example, see Exhibit 1, judgment entered against Shafi in favor of Comerica Bank in the amount of $82,938.72[1] and Exhibit 2, judgment entered against Shafi for $78,200.82 for unpaid wages to former employees. Both of these obligations were part of the "Braintech assumed debt." The amounts claimed in the unpaid wages complaint (Exhibit 3) track dollar for dollar with the amounts scheduled for payment to former employees of Shafi Inc. for wages on the closing exhibit setting forth the "Braintech assumed debt."[2] Exhibit 4 is an email from a

---

[1] The debt schedule used for the closing of the transaction showed Comerica was owed $74,500. The amount claimed as damages in its judgment was $75,668.19. Braintech did not pay Comerica a single penny.

[2] Here again, for the moving party to carry its burden under Rule 56(C) and the *Celotex* trilogy, if the claim is made that payment of Braintech assumed debt actually occurred, it is the moving party's burden to show evidence of payment. The burden is not carried by the mere pronouncement that payment occurred which is all the moving papers do in this case. Exhibit YY of the reply is purportedly offered to

former Shafi employee who was supposed to be paid according to "Braintech assumed debt." She was not paid a single dollar. Virtually none of the so called "Braintech assumed debt" was paid and Braintech offers no proof of any payment whatsoever. The claim in the reply that Shafi Inc. debt was paid is patently false.

### B. The Failure to Open a Michigan Office to Support the A&A.

On deposition, Braintech and Weidinger swept aside the promise to open a Michigan sales office in its moving brief claiming it was a future promise and therefore not actionable. See moving brief, p. 26. On deposition, Weidinger conceded that no office was *ever* opened in Michigan while Adil Shafi was the COO of Braintech:

> Q. During Mr. Shafi's entire tenure as the COO, there was never an office opened in Detroit; true or false?
>
> MR. GREEVES: Object to the form of the question.
>
> A. True.

With this concession, Shafi has no burden to prove that a Michigan office was *never* opened. Despite this, Weidinger and Braintech reverse course in their reply and assert Shafi's claim that no Michigan office was opened is "false." The reply contends:

> **Shafi Assertion:** Weidinger and Braintech failed to open a Michigan based office.
>
> **False**

---

show that payments were in fact made to former Shafi Inc. employees listed on the debt schedule. Included in YY is an email dated October 15, 2008 from Shafi to Weidinger complaining that a particular employee was paid nothing. Per the debt schedule, said employee, Mark Pilbeam was owed $14,383.56 (See Exhibit 8 to Shafi's Response to Summary Judgment Motion). Exhibit YY suggests Weidinger was under some belief that this obligation to Mark Pilbeam or part of it was paid. This could not be farther from the truth. In January 2010 the state of Michigan sued Shafi on behalf of Pilbeam and others and the amounts claimed match *to the penny* the amounts on the debt schedule. There was no reduction because no payments were made by Braintech. See State of Michigan complaint at Exhibit 3.

{00009396;v1 }                                3

This is an entirely new contention.  Yet the purported "proof" offered in Exhibit VV of the Reply fails to show any office was opened at any time.  It is not clear whether Braintech and Weidinger are now claiming that Weidinger's testimony was false or whether it should be disregarded.  But it is certainly not true that a Michigan office was opened at any time while Shafi was employed by Braintech.

### C.  There is no Proof Shafi "Deleted" Anything But Spam Email

In their moving brief, Braintech and Weidinger asserted that Shafi "deleted" Braintech files.  Yet the record only shows that Shafi deleted spam email.  Shafi Tr. p. 304.  In discovery, Shafi produced *every single email ever sent or received regarding Braintech*.  Shafi Tr. p. 170.  Braintech asserts the same "deletion" claim in the Reply, but now supports the claim new evidence of what appears to be the creation of a @braintech.com email address for Shafi immediately after the closing.

The mere creation of an email address does not prove anything.  It proves neither access to Braintech servers (for anything other than the email portal) or actual deletion of files.[3]  The record in this case demonstrates that neither Braintech nor Shafi ever used the @braintech.com email address.  Shafi continued to receive email at his @shafi.com address and this is the only address Braintech used to communicate with Shafi up to and including the date Shafi was placed on so called "administrative leave."

---

[3] In today's internet driven world, the mere creation of an email address is certainly not "proof" of access to all servers owned by Braintech.  For example, anyone can create email accounts at Google, Yahoo, Hotmail and a variety of other providers.  But the mere creation of an email account does not give the owner access to anything but the single email account.  An ordinary Gmail account user has no access to Google servers for anything other than the specific portal to the email account. The same is true in this case.  There is simply no evidence offered by Braintech or Weidinger that anything was deleted from Braintech servers. As such, Shafi is under no obligation to prove he did not delete Braintech files from its servers.

See Exhibit BB to Weidinger and Braintech Brief in Support of Motion for Summary Judgment.

### D. The Promise to Acquire Robots was Material and its Breach Doomed the Relationship

From the start of the negotiations and continuing to the end of his brief tenure as COO of Braintech, Shafi repeatedly expressed the need to have demonstration robots available to run software for training and sales in Michigan. Weidinger admitted on deposition that no office was opened in Michigan and no robots were acquired to allow for demonstrations and training. Weidinger Tr. p. 214. Braintech claims that Shafi Inc. software, Reliabot, was not revenue or market ready, but Braintech never took the steps it agreed to in the closing documents to provide a place and a platform to run the software. Braintech never even attempted to run the software and presents no evidence beyond the conjecture of Weidinger that Shafi Inc. software was not viable.

### III. CONCLUSION

The joint motion for summary judgment is based almost entirely on conjecture. It does not contain appropriate citations to the record, but rather makes a series of unsupported pronouncements that Shafi will not be able to prove his claims. The fraud committed in this case was done in a complicated fashion, but all the elements are present. Once Shafi sold his company and became COO of Braintech, Weidinger had no intention of honoring any promise – except to pay Shafi's salary unless sales of product occurred. The omission to inform Shafi of this condition was material, was relied upon by Shafi and caused enormous financial harm to Shafi and his reputation.

Respectfully submitted,
BERRY MOORMAN P.C.

By:   s/James P. Murphy
     James P. Murphy (P36728)
     Attorneys for Defendant
     535 Griswold, Suite 1900
     Detroit, Michigan 48226
     (313) 496-1200
     murph@berrymoorman.com

Dated:  January 24, 2011

## CERTIFICATE OF SERVICE

STATE OF MICHIGAN )
                    )ss
COUNTY OF WAYNE  )

    I hereby certify that on the 24th day of January, 2011, a copy of the foregoing Defendant Shafi's Sur-Reply to Summary Judgment Motion of Braintech and Weidinger was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Respectfully submitted,

BERRY MOORMAN P.C.

By:   s/James P. Murphy
     James P. Murphy (P36728)
     Attorneys for Defendant
     535 Griswold, Suite 1900
     Detroit, Michigan 48226
     (313) 496-1200
     murph@berrymoorman.com