EXHIBIT 2

December 17, 2010 Hearing Transcript

1

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

3

4

BRAINTECH, INC.,

                Plaintiff/Counter-Defendant,

5

6

        -v-                        Case No. 09-10454

ADIL SHAFI,

7

8

                Defendant/Counter-Plaintiff/
                Third-Party Plaintiff,

9

        -v-

10

11

FREDERICK WEIDINGER and
BRAINTECH, INC.,

12

Third-Party Defendant/Counter Defendant./

13

14

15

**MOTIONS HEARING**
**BEFORE HON. VIRGINIA M. MORGAN**
United States Magistrate Judge
Federal Building and U.S. Courthouse
200 E. Liberty Street
Ann Arbor, Michigan 48104

16

**(Friday, December 17, 2010)**

17

18

19

APPEARANCES:            ANNE WIDLAK, ESQUIRE
                        Appearing on behalf of
                        Plaintiff/Counter-Defendant
                        Braintech, Inc.

20

21

                        JAMES P. MURPHY, ESQUIRE
                        Appearing on behalf of
                        Defendant/Counter-Plaintiff/Third
                        Party Plaintiff Adil Shafi.

22

23

24

(Via Telephone)         GEOFFREY J. GREEVES, ESQUIRE
                        Appearing on behalf of Third-Party
                        Defendant/Counter Defendant Frederick
                        Weidinger.

25

1    TRANSCRIBED BY:        MARIE METCALF, CVR, CM
                            Federal Official Court Reporter
2                           257 U.S. Courthouse
                            231 W. Lafayette
3                           Detroit, Michigan 48226
                            *metcalf_court@msn.com*
4

5

6        *(TRANSCRIPT PRODUCED FROM DIGITAL VOICE RECORDING;*
              *TRANSCRIBER NOT PRESENT AT PROCEEDINGS)*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

<u>**TABLE OF CONTENTS**</u>

Proceedings - Friday, December 17, 2010

*Braintech, Inc. v. Adil Shafi, et al.*

1          Ann Arbor, Michigan

2          Friday, December 17, 2010

3          At about 1:37 p.m.

4                  *    *    *

5          DEPUTY COURT CLERK:  United States

6   District Court for the Eastern District of Michigan is

7   now in session, the Honorable Virginia M. Morgan, United

8   States Magistrate Judge, presiding.

9          The Court calls case number 09-10454,

10  Braintech, Incorporated versus Adil Shafi, et al.

11          Will counsel please step forward and put

12  your appearances on the record?

13          MS. WIDLAK:  Anne Widlak on behalf of

14  Braintech.

15          MR. MURPHY:  Good afternoon, Your Honor.

16  J. P. Murphy on behalf of Adil Shafi.

17          MR. GREEVES:  Your Honor, appearing by

18  phone pursuant to the Court's leave, Geoffrey Greeves for

19  third party Defendant Frederick Weidinger.

20          THE COURT:  All right.  Would you state

21  your name again, counsel?

22          MS. WIDLAK:  Yes.  Ann Widlak,

23  W-i-d-l-a-k, counsel for Braintech only.

24          THE COURT:  And what firm are you with?

25          MS. WIDLAK:  Nemeth Burwell.

*Braintech, Inc. v. Adil Shafi, et al.*

1               THE COURT:  Okay, thank you.  Oh, I see.

2               MS. WIDLAK:  Yes, we joined the case late.

3               THE COURT:  You are on the docket, but

4      you're not on the docket as the plaintiff because --

5               MS. WIDLAK:  Of the --

6               THE COURT:  Because you were --

7      Braintech's complaint was dismissed.

8               MS. WIDLAK:  That's correct, Judge.

9               THE COURT:  So you show up on the second

10     page of the docket.  So we're good on that.  We couldn't

11     find you, but you are fine.

12              MS. WIDLAK:  All right.

13              THE COURT:  Okay.  Thank you.

14              MS. WIDLAK:  You're welcome.

15              THE COURT:  Now, today we have some

16     motions up.  Let's see.  We have a motion to quash

17     subpoenas, we have an amended -- that's amended also,

18     amended motion for protective order regarding third party

19     discovery.  We can start with whatever you want to start

20     with.

21              MR. MURPHY:  Well, they're all kind of

22     interrelated, Your Honor.

23              THE COURT:  Yeah, so I have docket entry

24     61 and 62, non-party Advenovation?

25              MS. WIDLAK:  I believe so.

5

*Braintech, Inc. v. Adil Shafi, et al.*

1                THE COURT:  Is that how you say it?

2                MR. MURPHY:  Advenovation, yes.

3                THE COURT:  Advenovation's amended motion

4  to quash, 61, and Mr. Shafi's amended motion for

5  protective order, 62.

6                MR. MURPHY:  Right.

7                THE COURT:  Okay.  All right.  So do you

8  want to speak to those motions?

9                MR. MURPHY:  Yes, Your Honor.

10               First, as you've observed, the posture of

11  this case is a little bit odd.  Braintech originally

12  filed suit seeking recision of a transaction in which

13  Braintech acquired all of the stock in my client's

14  company, Shafi, Inc., and 80 percent of a second company,

15  Shafi Innovation, Inc.

16               THE COURT:  Can you hear him?

17               MR. GREEVES:  I can hear him pretty well,

18  Your Honor.  If he can speak up a little bit --

19               THE COURT:  All right.  Why don't you

20  speak from the lectern.

21               MR. MURPHY:  As part of that transaction,

22  Your Honor, my client was slated to become the chief

23  operating officer of the combined entities.  That

24  transaction occurred on August 12, 2008.

25               It was -- Braintech at the time was a

*Braintech, Inc. v. Adil Shafi, et al.*

1    publicly traded company and my understanding is that

2    because of that, it was a very complicated closing

3    transaction.  And the closing documents are literally six

4    inches thick, all kinds of contracts, and schedules, and

5    exhibits and things like that.

6              This case proceeded all the way through a

7    year and-a-half and Braintech went out of business.  Its

8    secured lender foreclosed on its assets.  It went out of

9    business.

10             Counsel for Braintech at the time, a

11   lawyer associated with Pepper Hamilton, filed motion

12   papers to withdraw and the Court granted that motion.

13             When no counsel filed an appearance, the

14   complaint was dismissed.  However, my client had filed a

15   counterclaim and brought in an additional party,

16   Frederick Weidinger, as a defendant on the counterclaim.

17   And so that's the posture of this case.

18             I represent now really the plaintiff.  My

19   claims are two-fold -- actually three-fold.  Breach of

20   the employment agreement.  And that claim is strictly

21   based on the contract.  It's not a wrongful termination

22   tort.  It is strictly based on contract, because under

23   the contract if there was no good cause to terminate my

24   client, there is a severance package that was to be

25   awarded.  That's the basis of my claim.

*Braintech, Inc. v. Adil Shafi, et al.*

1      And I concede, Your Honor, that if I

2   cannot demonstrate that there was no good cause to

3   terminate my client, then I don't have a right to recover

4   under the severance.  And I think the response has

5   conceded.

6      And let me back up.  After my client's

7   termination, my client formed the company Advenovation.

8   My client has been in the vision-guided software business

9   virtually all of his adult life.  That's his profession.

10      After he was thrown out of Braintech, he

11   decided to get back into that profession and he has

12   worked with the other party who has not filed a motion,

13   Aptura.  Aptura has developed new software code for a

14   vision guidance for robotic systems.  And this is what

15   drives the cameras to pick up the -- for the robots.

16      Prior to the transaction, my client had

17   developed a proprietary software called Reliabot.  It was

18   trademarked.  It was owned by Shafi, Inc., the company.

19   That went to Braintech as part of the transaction.

20      So we fast forward the case all the way to

21   the last day of discovery.  And immediately prior to the

22   last day of discovery, my client, Adil Shafi, gave

23   deposition testimony.  He was asked repeatedly, "Are you

24   using Reliabot software code?"

25      He absolutely and steadfastly said, "No,

*Braintech, Inc. v. Adil Shafi, et al.*

1    I'm not making any use of it."

2                     On the last day of discovery, these

3    subpoenas went out seeking all kinds of information about

4    Advenovation which did not become -- which wasn't formed

5    and did not become operational until after my client was

6    terminated from Braintech, and Advenovations'

7    relationship with Aptura principally in the development

8    of the new software code for New Vision Guidance

9    Software, without any credible information evidence

10   developed in the record prior to the last day of

11   discovery before those subpoenas went out.

12                    And really, it's based on speculation that

13   my client is somehow making use of Shafi, Inc., and/or

14   Reliabot code, Shafi, Inc., assets and/or Reliabot code.

15                    And so what we've offered to do in our

16   response is produce the new code developed by

17   Advenovation and Adil Shafi, he's the driving force

18   behind it since the termination from Braintech, so that

19   Braintech and its lawyers can compare that code to

20   Reliabot code.

21                    But as far as the business of

22   Advenovation, that has absolutely no relevance to any

23   issue in this case.  Now, counsel speculates in the

24   papers that perhaps Adil Shafi is somehow trading on --

25   excuse me, the assets of Shafi, Inc.

*Braintech, Inc. v. Adil Shafi, et al.*

1          There's no -- first of all --

2          THE COURT:  Do you need some water?

3          MR. MURPHY:  No, I'm fine.

4          THE COURT:  Okay.

5          MR. MURPHY:  First of all, there's no

6   evidence in the record that he's doing anything like

7   that.

8          And second of all, even if he was calling

9   on customers, former customers of Shafi, to sell new

10  software for vision guidance, that has nothing to do with

11  any claim in this case.

12          Now, there is a conversion claim, there is

13  an unjust enrichment claim.  The basis of those claims

14  are that Braintech and Weidinger wrongfully converted an

15  asset that was owned by Adil Shafi, and that is his

16  company, Shafi, Inc.

17          But there is no evidence that Shafi is

18  making use of any of those assets.  And basically, Your

19  Honor, the only asset that Shafi, Inc. had was the

20  software.  That's what it sold to customers throughout

21  its existence.

22          And so we're willing to proffer the

23  software and let counsel examine that to their heart's

24  content.  But this business about going through purchase

25  orders issued by Advenovation, after this whole

*Braintech, Inc. v. Adil Shafi, et al.*

1    transaction blew up, and even after Braintech went out of

2    business, has no relevance to any issue in this case, and

3    frankly, it's a fishing expedition.

4                    Unless you have any questions, that's all

5    I have to say.

6                    THE COURT:  I don't.

7                    MR. MURPHY:  Thank you.

8                    THE COURT:  Ms. Widlak.

9                    MS. WIDLAK:  Thank you, Judge.

10                    Just a few points, Judge.  As Mr. Murphy

11    pointed out today, but not in his filings with the Court,

12    there are a number of claims, including conversion and

13    unjust enrichment, which are really the focus of our

14    response today.

15                    The damages that Mr. Shafi seeks and that

16    he published in his Rule 26(a) filing are upwards of $10

17    million for loss of going concern, breach of the

18    employment contract, personal liability for some debts,

19    lost opportunity costs, and damages to Mr. Shafi's

20    reputation and a conversion claim and he's seeking treble

21    damages.

22                    And it's Braintech's position, as well as

23    Mr. Weidinger's, we filed a joint response, that because

24    one of the allegations, specifically in Counts Six and

25    Seven of his second amended counter-complaint, are that

*Braintech, Inc. v. Adil Shafi, et al.*

1   we stole corporate property of his and have converted it

2   to our own use.

3             It's highly germane to be able to

4   ascertain whether he in fact has possession of the

5   property he claims Braintech and/or Weidinger stole.  And

6   so that's the basis -- it's really driven by his claim

7   for damages.

8             And with all due respect to Mr. Murphy's

9   characterization of his client's deposition testimony, we

10  did not find it particularly credible and we would like

11  to be able to do additional discovery to try to either

12  verify or dispute the fact that what he's saying, i.e.,

13  "I don't have possession of what you stole from me," we

14  would like to be able to verify that.  So in that regard

15  we believe it's relevant to his claim for damages.

16            He testified that Mr. David Deckow

17  (phon.), who is the principal of the third party Aptura

18  Machine, he -- Mr. Shafi testified that Mr. Deckow has a

19  copy of the Reliabot source code, the original that is

20  the subject of this controversy, that he, Mr. Shafi,

21  claims we stole from him.

22            He does business very closely with Mr.

23  Deckow, and so we are eager to evaluate what Mr. Deckow

24  may possess or know about this.  Mr. Deckow, by the way,

25  has no objection to our subpoena himself.

*Braintech, Inc. v. Adil Shafi, et al.*

1          But I have really four points and then

2     I'll conclude.  As I noted, we believe that the subpoena

3     directed to Advenovation is relevant to these claims for

4     damages because Mr. Shafi's activities post-Braintech,

5     we'll put it that way, would impact on his allegation

6     that our client's conduct somehow harmed his ability, his

7     reputation to go forward in this robotics business.

8          Secondly, he also asserts that part of

9     these materials are attorney/client privileged, but he

10    does not specify -- didn't submit a privilege log and

11    does not specify how and why and what items would be

12    subject to the privilege.  So we don't think he's

13    successfully met his burden on that.

14         Now, with regard to Aptura, the third

15    party, the case law that we cited in our brief is quite

16    clear, Judge, that Mr. Shafi does not have standing to

17    object to -- or seek a protective order disallowing

18    discovery with regard to this third party.

19         They're cited in my brief.  But one case

20    is the *White Mule Company versus ATC Leasing*, reported at

21    -- well, published at 2008 WestLaw 268023.

22         Now, we've tried to be reasonable during

23    the proceedings and we would agree to a protective order

24    with regard to the third party materials.  And so I just

25    offer that to the Court at this time in terms of

*Braintech, Inc. v. Adil Shafi, et al.*

1      resolving this.

2                      And then as a final matter, Mr. Deckow, as

3      I indicated, has been in contact with us and has no

4      objection to providing the subpoenaed materials to us.

5      And Mr. Shafi has asserted that this meets the undue

6      burden standard, but Mr. Deckow, in one of our

7      attachments, sent an e-mail, indicated that he estimates

8      that this -- producing these materials would require

9      about one hour of management time and about three hours

10     of administrative and accounting time.

11                     So we do not think that Mr. Shafi has met

12     his burden with regard to showing that it would be an

13     undue burden under Rule 26.

14                     So in conclusion, Judge, we ask that you

15     deny the Advenovation amended motion to quash the

16     subpoena and also deny Mr. Shafi's amended motion for a

17     protective order disallowing the third party discovery as

18     to Aptura.

19                     Do you have any questions, Judge?

20                     THE COURT:  Not at this time.

21                     MS. WIDLAK:  Okay.  Thank you.

22                     THE COURT:  Is there anything that you

23     want to say on behalf of Mr. --

24                     MR. GREEVES:  Mr. Weidinger, Your Honor?

25                     THE COURT:  Weidinger.

*Braintech, Inc. v. Adil Shafi, et al.*

```
 1                    MR. GREEVES:  Yes.  This is Jeffrey
 2      Greeves, Your Honor, representing Frederick Weidinger.
 3                    A few additional points.  Aptura Machine
 4      Vision Solutions was actually identified by plaintiff in
 5      initial disclosures as having responsive information to
 6      the extent that plaintiff claims this is kind of out of
 7      left field and they're not really part of the fishing
 8      expedition contest.
 9                    They, meaning Mr. Shafi, identified Aptura
10      as a party who had particular information about the
11      products and solutions that -- including Reliabot, that
12      Shafi, Inc. had (inaudible).
13                    And, you know, we got basically the
14      identification of this entity before the depositions.
15      And once we took the depositions, it became obvious that
16      Mr. Shafi never had provided for, that he never reviewed
17      the code for this allegedly new product that he is now
18      out there marketing and then (inaudible) saying that he
19      believed it was not the same thing as what he had before.
20                    The other thing, Your Honor, is with
21      regard to the timing of this issue, I think it was just
22      maybe two to three months in February of 2000 -- well,
23      February of the next year, after Mr. Shafi was
24      terminated, that he began working at Aptura in
25      marketing-type -- at Advenovation, in marketing the
```

*Braintech, Inc. v. Adil Shafi, et al.*

1     product.  It was obvious that it took him several years

2     to develop the prior product, but that he was quickly

3     able to inherit the Advenovation Company which had been

4     set up by an undisclosed or undisclosed persons and given

5     to Mr. Shafi in exchange for releasing debts that he had

6     to those parties.

7              So I think it's very germane as part of

8     the damages claim that he claims to owe debts to these

9     parties, to allow us to investigate by proper discovery

10    the Advenovation's documents, as well as (inaudible) he's

11    marketing the code.

12             And more importantly for my client's

13    purposes, Mr. Shafi is seeking to hold Mr. Weidinger

14    responsible personally for converting the property and

15    Mr. Weidinger's entity, his new entity foreclosed on

16    Braintech assets.  So it is really the (inaudible) of the

17    Reliabot software.

18             And to that extent it has the right to

19    know whether or not certain -- Mr. Shafi who is suing Mr.

20    Weidinger is now using the very property that Mr. Shafi

21    says Mr. Weidinger stole from him.

22             So what we can get would be fair and of

23    course proper discovery with the safeguards in place that

24    Ms. Widlak mentioned for those parties, such as an expert

25    to come in and analyze the Advenovation source code and

*Braintech, Inc. v. Adil Shafi, et al.*

1    determine whether or not it is substantially similar to

2    the code that was sold to Reliabot Software that Mr.

3    Shafi says he sold to Braintech.  But unfortunately for

4    Braintech, kept a copy of -- or Mr. Deckow kept a copy of

5    the software, and Mr. Deckow, as parties have said here,

6    is business partners and -- or have some form of

7    independent contractor relationship at a minimum with

8    Advenovation.

9              So those are the points that I wanted to

10    bring to Your Honor's attention in reviewing this matter.

11              THE COURT:  Okay.  So the first part is

12    looking at the source code.  Mr. Shafi has volunteered to

13    permit Weidinger/Braintech to look at the current source

14    code that he's using at his new company; is that correct?

15              MR. MURPHY:  That's correct.

16              THE COURT:  And when he says he's willing

17    to do that, is that to disclose that to an expert or how

18    did he envision this?

19              MR. MURPHY:  Well, the suggestion than an

20    expert needs to come into the picture is brand new.  That

21    has never been suggested before it came out of Mr.

22    Greeve's mouth on the phone.

23              All that has been issued as of today is a

24    subpoena to Aptura and Advenovation.  And just --

25              THE COURT:  For the source --

*Braintech, Inc. v. Adil Shafi, et al.*

1              MR. MURPHY:  For the source code and --

2              THE COURT:  But you said you don't really

3     have a problem with that?

4              MR. MURPHY:  No.  I will produce the

5     source code.  But my problem is, there are all kinds of

6     business records now that have been generated post the

7     divorce of these business -- of the business relationship

8     in a new business venture.

9                   And in my client's new business venture,

10    he has generated this new code.  It's based on --

11             THE COURT:  But I thought you said you --

12    it would be okay if he looked at it?

13             MR. MURPHY:  Absolutely.  We'll produce

14    both of them.

15             THE COURT:  Both the old code and the new

16    code?

17             MR. MURPHY:  My client doesn't have

18    possession of the old code, but Aptura -- and just a

19    little further background.  When my client operated

20    Shafi, Inc., he engaged David Deckow, the owner of

21    Aptura, to help write the code.

22                  He's a -- David Deckow is a software

23    engineer.  David Deckow wrote the Reliabot code.  He has

24    a copy.  And I think that's appropriate in the industry.

25                  So he can produce a copy of the Reliabot

*Braintech, Inc. v. Adil Shafi, et al.*

1    code and he also has possession of the new source code

2    for the new product being marketed by my client.  He can

3    also produce that code.  The idea that now an expert

4    needs to look at this and possibly be deposed is brand

5    new.

6                    And so my original point is, we'll produce

7    all this software and they can look at it to their

8    heart's content.  They need to bring in an expert, that's

9    fine.  I suppose we're going to have to have some more

10   proceedings.

11                   But both attorneys make reference to

12   stealing corporate property, but they've not identified

13   any other property besides the source code.  And

14   actually, the property, Your Honor, was the stock that my

15   client owned in Shafi --

16                   THE COURT:  Well, I thought that part of

17   the reason that he was terminated, or let go, or the

18   relationship came to an end was because Braintech thought

19   that what he brought to the table, the source code and

20   the product, I guess, were worthless.

21                   MR. MURPHY:  That's what they thought.

22                   THE COURT:  And now, all of the sudden

23   they're turning around and saying, "Oh, this is the best

24   thing since sliced bread."

25                   So I have a little bit of concern about

*Braintech, Inc. v. Adil Shafi, et al.*

1    these two apparently contrary positions that Braintech

2    and Mr. Weidinger are taking.  Be that as it may, Mr.

3    Shafi is agreeable to produce the source code through Mr.

4    Deckow, right?

5                    MR. MURPHY:  Yes.  And may I just clarify,

6    we don't want to produce copies of the source code.  We

7    will make the source code available on a computer in my

8    office.

9                    You know, the source code is -- I mean, by

10   definition, source code is proprietary and somebody walks

11   out with a copy of it -- if an expert is necessary, that

12   expert can come to my office, we'll set up the computers

13   and whoever can look at them to their heart's content.

14                   THE COURT:  Okay.  What's wrong with that?

15                   MR. GREEVES:  Your Honor, we would need

16   the opportunity to test the source code in a forensic-

17   friendly environment.

18                   And Mr. Murphy's office -- I've been there

19   -- is not going to be the kind of environment that our

20   (inaudible) would need to do the kinds of things he needs

21   to do to manipulate, you know, the source code to see how

22   -- if it's different from the original source code.

23                   It's not something that can be done simply

24   on someone's office desk computer.  This kind of

25   examination is done all the time in discovery, Your

*Braintech, Inc. v. Adil Shafi, et al.*

1    Honor, by -- you know, there are labs and people set

2    these things up.  They sign nondisclosure agreements,

3    they take a copy of the data, they run the tests that

4    they need to run on the data, they generate a report and

5    the data is either destroyed or returned to the other

6    party.

7            There's no reason in the world to think

8    that a competent and scrupulous third-party forensic

9    engineering outfit or software code outfit would not be

10   able to comply with that.

11           And there's no reason to think that if

12   they go to Mr. Murphy's office and do it there that

13   they're going to be able to do the kind of investigation

14   they need to do.  I mean, certainly as a first step, I

15   think that offer is better than the last offer we got

16   which was for Ms. Widlak and I to come to the office to

17   look to at it, but I certainly don't know anything about

18   machine code.

19           THE COURT:  Well --

20           MR. GREEVES:  But the notion that we need

21   to do this dancing around the issue, is -- will simply be

22   ended if the Court will give us the opportunity in a

23   reasonable period of time to conduct an inspection and

24   generate a report and determine whether the operations

25   and machine codes are substantially similar to that which

*Braintech, Inc. v. Adil Shafi, et al.*

1    Mr. Shafi said he sold to Braintech.

2                    It shouldn't be that complicated and it's

3    done all the time, Your Honor.

4                    THE COURT:  Okay, all right.  I appreciate

5    that.

6                    On the other hand, your subpoena said

7    produced them at Nemeth Burwell, another lawyer's office.

8    So what the heck difference does it make?  I mean, that's

9    what you're subpoena said.

10                    MR. GREEVES:  But it says Nemeth -- oh,

11   yeah, a copy so that we can have it forensically examined

12   by someone not at Nemeth Burwell, but outside of -- you

13   know, outside of their office.

14                    THE COURT:  You didn't say that.

15                    MR. GREEVES:  Well, we haven't, again,

16   identified the person that is going to be doing the work

17   either.

18                    THE COURT:  Well, how do we know that that

19   person doesn't have a conflict?

20                    MR. GREEVES:  I suppose we could give Mr.

21   Murphy the name of the person that we're going to use so

22   that he can determine for himself whether that person

23   would be acceptable and/or has a conflict by consulting

24   with his client.

25                    THE COURT:  So why didn't you try to

*Braintech, Inc. v. Adil Shafi, et al.*

1    discuss this and make these offers?  You know why?

2    Because I let you appear by phone.

3                    And this is why we don't let people appear

4    by phone, because of the fact that if you had had to come

5    here, you would have sat down and you would have worked

6    it out.

7                    And you would have developed an

8    appropriate protocol and provided it to an appropriate

9    expert under procedures that would have protected the new

10   source code.  And now, instead, you're just here and you

11   guys are working it through with me and that's not really

12   how it's supposed to work.

13                   MR. MURPHY:  May I point out that I

14   offered to produce this weeks ago?  I offered to produce

15   the software exactly as I'm offering today.  It's in my

16   papers.

17                   THE COURT:  And if that wasn't acceptable,

18   then you should have suggested an alternative protocol

19   and gone forward on that, because yes, I know that it's

20   done all the time.  We have people do it all the time.

21                   And they don't have these motions all the

22   time because they work it out.  But when we let people

23   appear by telephone there is not that same interest in

24   working it out.

25                   So he's offered to produce the source

*Braintech, Inc. v. Adil Shafi, et al.*

1    code.  You need to develop a protocol, identify the

2    expert just to make sure, because it is a small industry,

3    that this is not somebody who has had previous

4    relationships in the past that might be adverse to Mr.

5    Shafi and go from there.

6                   But, yes, you can have the source code in

7    an appropriate forensic environment, subject to a

8    protocol to be agreed upon between counsel.

9                   MR. MURPHY:  Thank you, Judge.

10                  THE COURT:  But I'm telling you, this is

11   pretty much what you could have done without continuing

12   this motion.

13                  So to the extent that Nemeth Burwell or

14   Washington, D.C. counsel think that somehow you're

15   entitled to money for this, forget about it.  You could

16   have done this ahead of time.  Okay.

17                  So that -- the motion to quash subpoenas

18   is granted in part and denied in part.  Source code can

19   be produced subject to a protocol to be agreed upon

20   between counsel.  Okay?  You don't have a problem with

21   that, do you?

22                  MR. MURPHY:  No, Your Honor.

23                  THE COURT:  Okay.  Now, the source code

24   wasn't the only subject of the subpoena.

25                  There were a lot of other documents,

24

*Braintech, Inc. v. Adil Shafi, et al.*

1    communications, purchase orders, brochures, blah, blah,

2    blah.  Do we have a problem with any of the other items?

3                      MR. MURPHY:  Yes, Your Honor.  All of

4    these things --

5                      THE COURT:  All of the other items.

6                      MR. MURPHY:  All of these things came into

7    existence after the breakup between my client and

8    Braintech.  Many of them came into existence after

9    Braintech went out of business.  This is all

10   post-Braintech activity.  This has nothing to do with

11   property.

12                     And as I said earlier, no one has

13   identified any other property besides the source code

14   that my client supposedly has.  And by the way, I will

15   also point out that I have had, since the start of this

16   case, 83 boxes of business records in my office, which

17   constitutes the business records of Shafi, Inc.

18                     And I represent as an officer of the court

19   that they have been in my office since the start of this

20   case.  I have offered them.  They have been examined by

21   the attorneys.  And no copies have been made.

22                     And just to explain the reason why I have

23   them is that after this transaction was closed, Mr.

24   Weidinger and Braintech had no interest in taking

25   possession of them.  So I have them.  And I will keep

*Braintech, Inc. v. Adil Shafi, et al.*

1    them until somebody wants to come and look at them again.

2                    THE COURT:  These are the documents from

3    --

4                    MR. MURPHY:  Shafi, Inc., the company that

5    was acquired.

6                    THE COURT:  The pre-Braintech company?

7                    MR. MURPHY:  Yes.  I have none them post

8    --

9                    THE COURT:  All right.  Why do you think

10   you need the post-Braintech documents?

11                   MS. WIDLAK:  Judge, as I noted, we believe

12   that it is germane to his claim that Braintech and

13   Weidinger's behavior has hurt his ability to go forward

14   and has harmed his reputation, that he's lost

15   opportunities.

16                   And by examining the nature of his

17   activities, it's -- it appears that he's actually engaged

18   in very robust business activities --

19                   THE COURT:  All right.  Well, let me ask

20   you this.  Is it not his burden to prove that he was

21   damaged?

22                   MS. WIDLAK:  It is.  But I think we --

23                   THE COURT:  Is it not his burden to

24   produce documents that would show sales A, sales A minus,

25   Y, letters, communications?

*Braintech, Inc. v. Adil Shafi, et al.*

1              Isn't this all his burden to produce it?

2      And if he doesn't produce it, then he has no evidence of

3      his damages.

4              Is that your burden, counsel?

5              MR. MURPHY:  It would be my burden if I

6      had a claim for lost reputation.  But there's no claim

7      for lost reputation in this case.

8              There is anecdotal testimony from Adil

9      Shafi that this transaction and the breakup has hurt his

10     reputation in the business, but we don't have a claim for

11     lost reputation.

12             THE COURT:  So there you go.

13             MS. WIDLAK:  My understanding is that was

14     an element of his damages, Judge.

15             THE COURT:  He --

16             MR. GREEVES:  Your Honor, for that point,

17     one of other things that Mr. Shafi has claimed as his

18     damages are the debts allegedly that he has had to pay

19     back to third parties, debts that reverted to him as a

20     result of Braintech being unwilling, or I guess unable to

21     pay those debts according to Mr. Shafi.

22             And, you know, I mean that hasn't really

23     been supported by any evidence, other than testimony that

24     Mr. Shafi -- that he says there's certain debts he pays.

25             We're entitled to have the documentation

*Braintech, Inc. v. Adil Shafi, et al.*

1    that goes along with that debt schedule that shows, for

2    example, that he made payments to the IRS, that he made

3    payments to the bank that was loaning him the money.

4              It's those kinds of things -- while it's

5    nice to say that he may fall on his sword at trial and

6    not claim those things anymore, that's exactly the

7    purpose of discovery is to allow him to get proper

8    discovery of things to allow us to test those assertions

9    so this doesn't become a trial by ambush for documents

10   that we haven't seen yet.

11             MR. MURPHY:  Those kinds of things are not

12   in the list of documents to be produced by the subpoena.

13             My client has testified that he, in fact,

14   has personal liability to certain debts that Braintech

15   agreed to pay as part of the transaction.  But I've never

16   been asked to produce evidence that my client has paid

17   those debts.  That evidence exists --

18             THE COURT:  Well, quite frankly I would

19   think they would come under 26(a)(1) relevant to a claim

20   or defense.  But --

21             MR. MURPHY:  My client has testified that

22   he has paid --

23             MR. GREEVES:  I mean, this is his only

24   employment, Your Honor, is Advenovation.  So they're

25   bound -- I mean, he is Advenovation and Advenovation is

*Braintech, Inc. v. Adil Shafi, et al.*

1        him.

2                        THE COURT:  Yeah, but you --

3                        MR. GREEVES:  We've spent hours in

4        depositions trying to figure out, you know, who took on

5        what debt and who got what shares resulting from the sale

6        of the Advenovation -- you know, or (inaudible) the

7        Advenovation shares to various people who are listed on

8        the Braintech dep schedule.  It would be a lot easier if

9        we were able to get that information.

10                       THE COURT:  Yeah, but that's not what

11       you're asking for in the subpoena.  You're asking for

12       purchase orders.  You're asking for W2s, 1099s,

13       employment applications.  You're asking for

14       communications between the two companies.

15                       You're not asking for anything that

16       supports the debt issues that you two have just been

17       discussing.  If you wanted that, I would give it to you.

18       But that's not what you're asking for; salary, benefit

19       distribution, sales commissions, any type of

20       remuneration.

21                       MR. GREEVES:  Exactly, Your Honor.  And if

22       I may give you an example, part of the reason that is

23       important is because of Mr. Shafi's claim that people are

24       levying on his salary, and on his assets and all this

25       other stuff to pay these debts.

*Braintech, Inc. v. Adil Shafi, et al.*

```
1                      THE COURT:  Well, if you'd asked for --
2                      MR. GREEVES:  (Inaudible) -- in those
3          records, Your Honor.
4                      THE COURT:  Well, if you'd asked for
5          levies, if you'd asked for bills, if you'd asked for
6          payments to the IRS, I'd say yeah, you didn't ask for
7          that.  So the rest of it's denied.
8                      You're still in discovery.  You can issue
9          a new subpoena or you can sit down and come up with an
10         amendment to your Rule 26(f) discovery plan, because I
11         think if he says that, he does need to have evidence of
12         it.  And if it's not produced in some kind of reasonable
13         time that you agree on or before the close of discovery,
14         then he's going to be subject to a motion in limine to
15         preclude it, or a motion to dismiss those claims or
16         you're going to need to dismiss those claims unless you
17         want to go forward and be sanctioned for failure to
18         produce evidence, or summary judgment or partial summary
19         judgment or something like that.
20                     But the subpoena here is overly broad
21         because it does not ask -- it doesn't ask for the things
22         that you've identified, which seem to be appropriate
23         discovery.  But they're not the things that are asked
24         for, so --
25                     MS. WIDLAK:  Thanks, Judge.
```

*Braintech, Inc. v. Adil Shafi, et al.*

```
 1                    THE COURT:  -- I'm denying that part.
 2                    MR. MURPHY:  Thank you, Your Honor.
 3                    THE COURT:  The rest of the motions?
 4                    MR. MURPHY:  I think that covers it.
 5                    THE COURT:  Covers everything?  There's an
 6       amended motion for a protective order.
 7                    MR. MURPHY:  Well, as I said, they're
 8       intertwined.  The protective order was filed by Adil
 9       Shafi, the defendant/counter-claimant in this case.
10                    The motion to quash was filed by
11       Advenovation, but they're --
12                    THE COURT:  Okay.  So we've addressed all
13       the relevant issues?
14                    MS. WIDLAK:  Yes.  With regard to the
15       motion for a protective order disallowing any discovery,
16       any subpoena as to the third party, we do submit to the
17       Court that the cases are very clear that a person like
18       Mr. Shafi has no standing to assert that motion and we
19       ask that it be denied on that ground.
20                    THE COURT:  The amended motion for a
21       protective order.  You mean to --
22                    MS. WIDLAK:  It was, as I understand it,
23       Judge, a protective order that would disallow Braintech
24       and Weidinger serving this subpoena on David Deckow's
25       firm, the third-party, Aptura.
```

*Braintech, Inc. v. Adil Shafi, et al.*

1           And we're saying he doesn't have any --

2   Mr. Deckow has no objection to releasing the materials

3   and we don't believe Mr. Shafi or Advenovation has

4   standing to make the motion in the first instance.  So

5   that would be our position.

6           THE COURT:  So these are the same

7   materials you're requesting from Mr. Deckow?

8           MS. WIDLAK:  Not the same.  They go to his

9   activities and his relationship with Mr. Shafi.  Perhaps

10  some of them overlap, Judge, so I should look at them

11  more carefully.

12          THE COURT:  Well, if he doesn't have a --

13  if they're not -- I'm not sure what the relationship is

14  between the parties.

15          If they're proprietary to Mr. Shafi or

16  Aptura, which is his company, and I guess Advenovation's,

17  if they're proprietary, and he has an interest in that

18  proprietary information, then they don't have to be

19  produced.

20          MS. WIDLAK:  Would the Court consider

21  ordering them to be produced subject to a protective

22  order?  Because we are more than willing to enter into a

23  protective order that would limit the use to our

24  examination in this litigation and --

25          THE COURT:  I really don't understand the

*Braintech, Inc. v. Adil Shafi, et al.*

1    relationship between Mr. Deckow and Mr. Shafi.

2                    Are they partners?  I mean -- and who are

3    you subpoenaing, just --

4                    MS. WIDLAK:  Just Mr. Deckow and Aptura's

5    materials; not Mr. Shafi's.  I mean, it's directed to

6    that entity.  And it's my understanding, Judge, and I'm

7    -- I'm fairly confident of this, that Mr. Shafi is a

8    subcontractor to Aptura.

9                    THE COURT:  If he's given them things --

10                   MR. MURPHY:  Your Honor, I think I can

11   shed light on this relationship.

12                   THE COURT:  Okay.

13                   MR. MURPHY:  In his new business, Mr.

14   Shafi, with Advenovation, is developing software.  He has

15   contacted Aptura to develop the source code for that

16   software.

17                   So my position is that Advenovation has

18   standing to --

19                   THE COURT:  Because the things that

20   they're asking for are really the property of your

21   person?

22                   MR. MURPHY:  Exactly.  And my client, Mr.

23   Shafi, also has standing to make the same argument under

24   the Rule 26 motion for a protective order.

25                   THE COURT:  I think that that's true in

*Braintech, Inc. v. Adil Shafi, et al.*

1    this limited instance.  I also think that it wouldn't --

2    I think you're probably 100 percent correct, and Mr.

3    Deckow doesn't care.

4              Because it's been my experience in the

5    past with people who write software code that they don't

6    draw distinctions between what's theirs and what's

7    somebody else's.  And it's all just there.

8              So what I'm going to do is, I'm going to

9    quash both of these subpoenas except for the source code

10   production.

11             You can do new subpoenas and you will have

12   to produce evidence of debt or whatever is relevant to

13   this.  And with respect to the company, I suppose those

14   things would also apply to those companies if the

15   companies are making payments or liable for debts.

16             MR. MURPHY:  I guess I need to comment on

17   that.  There's been no testimony that Mr. Shafi's company

18   is making payment on debts that he is now personally

19   liable for.

20             And just by way of background, there were

21   unpaid FICA and FUTA taxes at Shafi, Inc., before the

22   transaction.

23             As part of the transaction, Braintech

24   agreed to assume that debt and pay it off over a course

25   of time.  Because Braintech made one or less payments on

34

*Braintech, Inc. v. Adil Shafi, et al.*

1     that debt, it reverted back to Mr. Shafi.  So Mr. Shafi

2     has been paying creditors, including secured creditors,

3     to which he had a guarantee at Comerica Bank.

4               Now, in the course of discovery, there has

5     been not a single document request asking for any

6     documents associated with payments that Mr. Shafi has

7     made to debt that was assumed by Braintech.

8               He has testified that he has made those

9     payments and he has even given numbers.  Discovery closed

10    on the date these subpoenas were issued.

11             THE COURT:  That's true.

12             MR. MURPHY:  So I mean, I'm happy to

13    produce the evidence.  And in fact, I'll bring it to

14    trial, but there's been no discovery request asking for

15    that detail.  And if I'm obligated to supplement my Rule

16    26 disclosure, I will be happy to do that.

17             THE COURT:  All right.  Why don't we treat

18    this as supplementation for the Rule 26 disclosures, --

19             MS. WIDLAK:  Thank you, Judge.

20             THE COURT:  -- rather than extend

21    discovery and quash the subpoenas except for the source

22    code issues.

23             MS. WIDLAK:  All right, Judge.  Thank you

24    very much.

25             THE COURT:  Okay.  And then we're done.

*Braintech, Inc. v. Adil Shafi, et al.*

1                    MR. MURPHY:  Thank you, Your Honor.

2                    MR. GREEVES:  Thank you for your time,

3        Your Honor.

4                    THE COURT:  Thank you, bye.  We'll do the

5        order.

6                    MS. WIDLAK:  Thanks, Judge.

7                         (Court in recess at 2:17 p.m.)

8                              *    *    *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Braintech, Inc. v. Adil Shafi, et al.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18          **C E R T I F I C A T I O N**

19          I certify that the foregoing is a correct

20   transcript from the digital sound recording of the

21   proceedings in the above-entitled matter and has been

22   prepared by me or under my direction.

23

24   \s\Marie J. Metcalf                        02-12-11

25   Marie J. Metcalf, CVR, CM                    (Date)