UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADIL SHAFI,

           Counter-Plaintiff/
           Third-Party Plaintiff,

v.

FREDERICK WEIDINGER AND
BRAINTECH, INC.,

           Third-Party Defendant/
           Counter-Defendant.

Case No. 09-10454

Hon. Victoria A. Roberts

---

**THIRD-PARTY DEFENDANT FREDERICK WEIDINGER'S BRIEF IN OPPOSITION
TO ADIL SHAFI'S MOTION FOR TEMPORARY STAY OF PROCEEDINGS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

ISSUE PRESENTED ......................................................................................................... iii

I.     INTRODUCTION ..................................................................................................... 1

II.    STATEMENT OF FACTS ........................................................................................ 2

    A.   Braintech's 2009 Michigan Complaint Sought Equitable Recission of the Share Purchase Agreement And Essentially Was Voluntarily Dismissed By Braintech As Part of Its Liquidation ....................................................................................................... 2

    B.   In The Michigan Case, Shafi's Fraud-Based, Conversion, and Unjust Enrichment Claims Should Be Dismissed Under Rule 56 ..................................................... 3

    C.   RVT and Weidinger's 2011 Virginia Complaint Asserts Claims That Are Separate and Distinct From Those Asserted in Braintech's Michigan Complaint .......................... 7

III.    ARGUMENT ............................................................................................................ 8

    A.   Shafi is Not Likely to Prevail On The Merits of His Anticipated Motion to Dismiss the Virginia Action ......................................................................................................... 9

        1.   Shafi is Subject to Personal Jurisdiction in Virginia ........................................ 9

        2.   The Virginia Claims are Not Precluded By The Court's Dismissal of Braintech's Original Equitable Claim for Recission ........................................................... 12

        3.   The Virginia Claims are Not Compulsory Counterclaims to Shafi's Fraud-Based and Other Equitable Claims ................................................................................ 15

    B.   Shafi Will Not Suffer Any Irreparable Harm If This Action Proceeds While Shafi Defends the Virginia Action ..................................................................................... 17

    C.   Weidinger Will Be Harmed if A Stay of These Proceedings is Granted And Entry of Summary Judgment is Delayed ................................................................................ 18

    D.   The Public Interest Weighs in Favor of Denying Shafi's Motion for a Temporary Stay of These Proceedings ................................................................................................... 18

IV.    CONCLUSION ....................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Cases**

*Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877 (6th Cir. 1997) .................................. 12

*iDefense v. The Dick Tracy Group,* 58 Va. Cir. 138 (2002) ...................................... 12

*John G. Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 738-39; 180 S.E.2d 664 (1971).... 11

*Knox v. City of Royal Oak*, No. 06-10428, 2007 U.S. Dist. LEXIS 44554 (E.D. Mich. 2007)...... 8

*Lash v. Allstate Insurance Company*, 210 Mich. App. 98, 102; 532 N.W.2d 869 (1995)............ 14

*Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994)...................................... 11

*McMullen v. Joldersma*, 174 Mich. App. 207, 218; 435 N.W.2d 428 (1988).............................. 14

*Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311 (4th Cir. 1982) .......................... 11

*Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*, 761 F. Supp. 423 (E.D. Va. 1991) ................................................................................................................................ 11

*Seldon v. Lehman Brothers, Inc.,* No. 09-13162, 2010 U.S. Dist. LEXIS 63100 (E.D. Mich. June 5, 2010) ........................................................................................................................ 19

*UAW-GM Human Res. Ctr. v. KSL Recreation Corp.,* 228 Mich. App. 486  (1998) ..................... 4

*Van Tassel v. McDonald Corp.*, 159 Mich. App. 745 (1987)......................................................... 5

*Young-Henderson v. Spartanburg Area Mental Health Ctr.*, 945 F.2d 770  (4th Cir. 1991) ....... 13

**Statutes**

Va. Code § 8.01-328.1(A) ............................................................................................................ 11

**Rules**

E.D. Virginia L.R. 7(E), 7(F)(1) & 56 ........................................................................................ 18

Fed. R. Civ. P. 13(a)(1)................................................................................................................ 16

**Treatises**

4-18 Moore's Federal Practice – Civil § 18.02............................................................................ 15

## <u>ISSUE PRESENTED</u>

Is Plaintiff Adil Shafi entitled to a temporary stay of these proceedings where his only asserted ground for the stay is his purported need to devote his resources to seeking a dismissal of the Virginia action and because Shafi has actively evaded service of the Virginia complaint, is purposefully delaying the Virginia action, will not succeed on the merits of his arguments in the Virginia action, will not suffer any harm if these proceedings (including resolution of the pending Joint Motion for Summary Judgment) continue, whereas Weidinger will be harmed by a delay of these proceedings (including resolution of the pending Joint Motion for Summary Judgment) and the public interest will not be served by a stay?

Third-Party Defendant Frederick Weidinger Answers:      No.

## I.  **INTRODUCTION**

Counter/Third-Party Plaintiff Adil Shafi cites no legal authority for the proposition that defense of the newly-filed Virginia case warrants a stay of this case.  Indeed, only the Virginia case should proceed because Shafi's claims in this case should be dismissed under Fed. R. Civ. P. 56.

Even if Shafi's claims could survive summary judgment (which they cannot), Shafi's motion to stay nonetheless should be denied because it essentially asks this Court to devote its resources to issuing an advisory opinion regarding his likelihood of success on the merits of arguments he apparently intends to make at some point in the Eastern District of Virginia.  As a matter of judicial efficiency and comity, those issues should be reserved for the District Court in Virginia to decide.

Moreover, Shafi's own conduct to date with respect to the Virginia action belies any argument that he intends to move swiftly in that jurisdiction.  Shafi's Michigan counsel secured a copy of the Virginia complaint the day after it was filed and has not responded to requests to accept service of process for his client, who meanwhile has actively evaded service.  The Virginia plaintiffs will proceed with a motion for alternate service, properly supported by an affidavit of the process server.  Further, the Eastern District of Virginia operates on a "rocket docket" under which a motion filed by Shafi could be heard and determined *within two weeks.* Rather than unnecessarily drawing upon this Court's time and resources on a needless motion to stay, Shafi should accept service of process of the Virginia complaint and file the motion he presages in his ill-founded motion to stay.

Shafi's motion to stay should be denied under the applicable legal standard – a standard Shafi fails to cite, let alone apply.

1

## II. STATEMENT OF FACTS

**A.**   **Braintech's 2009 Michigan Complaint Sought Equitable Recission of the Share Purchase Agreement And Essentially Was Voluntarily Dismissed By Braintech As Part of Its Liquidation**

Braintech commenced this action seeking recission of the Share Purchase Agreement ("SPA") pursuant to which Braintech acquired Shafi's companies, Shafi, Inc., and Shafi Innovation, Inc.  *See* Compl., Dkt. #1.  In support of its claim for recission, Braintech alleged fraud in the inducement of the SPA and subsequent material breaches of that agreement.

In early 2010, largely as a result of the deal-gone-bad with Shafi, Braintech (a publicly traded company) failed and began winding down through public auction foreclosure.  At the time, Braintech had no employees, no officers, no board of directors, and no decision makers to direct counsel, as well as little or no money or cash assets with which to pay counsel.  As a result, in early March 2010, Braintech's original counsel, Pepper Hamilton, which represented Braintech both in relation to its complaint for recission and in defense of Shafi's counter-claims, filed an emergency motion to withdraw.  *See* Mot. to Withdraw, Dkt. #27.  The Court temporarily stayed the action to provide Braintech time to retain new counsel.  *See* 4/7/2010 Order, Dkt. #29.

During a teleconference with the Court on May 18, 2010, insurance counsel, Attorneys Susan Koval and Anne Widlack of Nemeth Burwell, informed the court that they would be appearing as counsel for Braintech *only in relation to the defense of Shafi's counter-claims against the company*.  *See* 5/19/2010 Order, Dkt. #32.  Braintech's insurer retained Nemeth Burwell pursuant to an Employment Practices Liability policy triggered by Shafi's claims under his employment agreement with Braintech (Counter-Claim Counts I and II).  The EPL policy provides only for defense of the claims.  There is no coverage for any other loss, including any judgment against Braintech in relation to Shafi's claims, if any.  During the same teleconference,

2

Attorney Geoffrey Greeves of Pillsbury Winthrop Shaw Pittman LLP informed the Court that he would be appearing as defense counsel for Weidinger personally *only in relation to the defense of Shafi's third-party claims. See id.* At the same time, Braintech's outside foreclosure counsel informed the Court that the CEO and General Counsel had resigned some months prior, leaving Braintech with no in-house corporate counsel.

Only a few days later, on May 24, 2010, all of Braintech's assets were sold at public auction to Robotic VISION Technologies, LLC ("RVT").[1] In connection with this liquidation, Braintech determined not to obtain new counsel or to proceed with its complaint for recission.

Based upon Braintech's decision not to pursue its claim for recission in light of the foreclosure and public sale, on June 3, 2010, the Court dismissed Braintech's complaint, leaving only Shafi's Second Amended Counter-Claims against Braintech and Weidinger.[2] *See* Order of Dismissal, Dkt. # 36.

**B.      In The Michigan Case, Shafi's Fraud-Based, Conversion, and Unjust Enrichment Claims Should Be Dismissed Under Rule 56**

Since dismissal of Braintech's claim for recission, this matter has proceeded on Shafi's counter-claims for breach of his employment agreement, common law and securities fraud, conversion and unjust enrichment. *See* 2d Am. Counter-Claim, Dkt. #19. Shafi's counter-claims consist of two counts against Braintech in which he seeks a declaratory judgment that Braintech breached his Employment Agreement by terminating him without good cause and failing to pay him severance benefits under the agreement, as well as damages equal to the amount he believes he is due under the Employment Agreement as a result of the alleged breaches. *See id.*, Counts I & II. Shafi's other claims for common law fraud, breach of federal and state securities laws,

---

[1] RVT purchased only Braintech's assets. RVT did not assume Braintech's liabilities.

[2] The Order does not state that the dismissal of Braintech's claims is "with prejudice."

3

conversion, and unjust enrichment against both Braintech and Weidinger are based upon his contention that through various *pre-closing representations*, Weidinger fraudulently induced him into entering into the SPA and then essentially did not pay him the agreed-upon consideration thereunder, essentially "stealing" his companies and related intellectual property. *See id.*, Counts III-VII. Shafi seeks damages equal to either the value of his companies at the time of the transfer or the value he believes the stock he received under the agreement should have had at the time. *See id.*

All of Shafi's counter-claims should be dismissed with prejudice for the reasons set forth in Weidinger's Joint Motion for Summary Judgment. *See* Jt. Mot. Summ. J., Dkt. # 66. Indeed, Shafi's motion to stay this action should be considered moot with respect to Weidinger because each of his claims against Weidinger in his personal capacity fail both legally and factually, as explained in the pending Joint Motion for Summary Judgment.

First, as a matter of well-established black-letter law, Shafi's fraud-based claims are barred by the express integration provision in the SPA, under which Shafi expressly acknowledged that the SPA contained the entire agreement between the parties and that in entering into and consummating the SPA, he *"[was] not relying on any representation, warranty, covenant, obligation or agreement not expressly stated in this Agreement or in the certificates of or agreements among the Parties contemplated by or referred to herein."* *See* Exhibit A to Jt. Mot. Summ. J., Dkt. #66, at 37 ¶ 9.2 (emphasis added); *UAW-GM Human Res. Ctr. v. KSL Recreation Corp.*, 228 Mich. App. 486, 503-04 (1998). To establish fraud where there is an integration clause, the injured party must show that the other party induced him to execute *an incomplete agreement or to believe that the antecedent promise was included in the writing.* *UAW-GM*, 228 Mich. App. at 503-04. Shafi makes no such allegation in this case.

4

Instead, Shafi admits in his response to the joint motion for summary judgment that "[p]recisely the same pre-contract representations and omissions made it into in the SPA," referring to the allegedly fraudulent representations supporting his claims. *See* Shafi Resp. Mot. Summ. J., Dkt. #77, at 39.  Moreover, Shafi does not seek to invalidate or rescind the agreements (in fact, Shafi is pursuing an affirmative claim under his Employment Agreement, which stems from the SPA). These admissions and facts are fatal to his fraud-based claims.

Second, it is a matter of well-established black-letter law that statements legally constituting mere "puffing," such as those cited and relied on by Shafi, are not actionable. *See Van Tassel v. McDonald Corp.*, 159 Mich. App. 745 (1987) ("[a]n action for fraud may not be predicated upon the expression of an opinion or salesman's talk in promoting a sale, referred to as puffing").  The statements Shafi relies on in support of his claims are similar in nature to those courts have routinely dismissed as involving mere puffing. *See* Prop. Supp. Br. Supp. Jt. Mot. Summ. J., attached as Exhibit A to Dkt. #93, Mot. For Leave to File Supp. Br.; *see also* Jt. Mot. Summ. J. at 20-21.

Third, Shafi has not established, and cannot establish, the scienter necessary to prevail on his Federal securities claim, *see* Jt. Mot. Summ. J. at 21-22.  Moreover, he received the exact same stock as everyone else in the company received, could have offered his securities for sale under the SEC's Rule 144 safe harbor, but did not, and cannot prove any "loss causation" between his inability to sell his Braintech Stock and his alleged damages related thereto, i.e., the repayment of his personal debts. *See id.* at 22-25.

Fourth, Weidinger is entitled to summary judgment on Shafi's securities fraud claim under Michigan law because he has not identified, and cannot identify, any material information that Weidinger allegedly failed to disclose to him in relation to the transaction and again, because

5

the statements he relies upon in support of his claim are not actionable as fraud under Michigan law. *See id.* at 25-27.

Fifth, Shafi cannot establish claim a claim for unjust enrichment against Weidinger because there is an express contract covering the same subject matter. *See id.* at 28-29. Moreover, Weidinger undeniably did not personally receive anything from the transaction at issue. *See id.*

Sixth, Shafi's conversion claim fails as a matter of law because he conveyed to Braintech in the SPA, the assets over which he now claims that Braintech and Weidinger unlawfully exercised dominion and control. *See id.* at 28-29. It is axiomatic that a party cannot convert its own property.

As established by the Joint Motion for Summary Judgment, there is no need to stay this action. Rather, summary judgment should be entered in Weidinger's (and Braintech's) favor and the parties should proceed only in the Virginia Federal court and only with respect to the claims asserted in the Virginia complaint.

If Shaif's counter-claims are not disposed of on summary judgment (which Weidinger contends they should be), Shafi seeks a stay of the following in this case: (1) the settlement conference set for March 23, 2010; (2) Weidinger's motion to compel source code that the Court already ordered Shafi to produce, *see* Motion to Compel, Dkt. #91; (3) motions in limine and entry of the Joint Final Pretrial Order currently due April 6, 2011; (4) the final pretrial conference currently set for April 20, 2011; and (5) trial, currently set to begin May 10, 2011 (but which the parties previously agreed to adjourn to June 2011, subject to the Court's approval).

**C.**     **RVT and Weidinger's 2011 Virginia Complaint Asserts Claims
That Are Separate and Distinct From Those Asserted in
Braintech's Michigan Complaint**

On March 14, 2011, RVT (which purchased all of Braintech's assets) and Weidinger

filed an action in the Eastern District of Virginia asserting legal claims that are separate and

distinct from both the original equitable recission claim filed by Braintech in this Court and

Shafi's counter-claims.  Although some of the background factual allegations are the same, such

as the allegation regarding the Letter of Intent cited on page 4 of Shafi's Motion for Stay, it is

clear that the legal claims asserted in the Virginia action are separate and distinct from those

originally filed by Braintech in this action, as well as Shafi's counter-claims.

In the Virginia action, RVT and Weidinger allege five claims.  *See* Virginia Complaint

attached as Exhibit 1 to Mot. Stay, Dkt. #92.  Count I is a legal claim seeking monetary damages

for Shafi's breach of the representations and warranties in the SPA.  *See id.*, Count I.  Unlike the

original Michigan action, Count I is legal, not equitable, in nature, seeks monetary damages, and

perhaps most importantly, affirms the existence of the SPA, unlike Braintech's original

complaint for equitable recission.

Count II involves a statutory claim against Shafi for breach of his duties as an officer and

director of Braintech.  This claim does not involve Shafi's Employment Agreement, but rather, is

based entirely upon a breach of Shafi's statutory duties.  *See id.*, Count II.

Count III sets forth a claim for breach of the non-compete and non-disparagement

provisions of Shafi's Non-Competition Agreement.  *See id.*, Count III.  The Non-Competition

Agreement is not, and has never been, at issue in the Michigan action.  Moreover, the majority of

the conduct alleged in support of this claim occurred after Shafi's employment with Braintech

ended and does not involve any alleged misrepresentations by Shafi or breach of his employment

duties.  *See id.*

7

Count IV alleges a claim for common law defamation that has no relation to Shafi's claims in the Michigan action.

Finally, Count V asserts a claim for common law unfair competition based upon Shafi's conduct after Braintech terminated his employment and in relation to his new company, Advenovation, and his work for Aptura. *See id.*, Count VI. Like the other Virginia claims, this claim has no relation to Shafi's claims based on breach of his employment agreement or allegedly fraudulent pre-contractual statements made by Weidinger.

RVT and Weidinger did not to seek to assert their new claims as part of this action precisely because, as illustrated above, they are separate and distinct from the Michigan claims and because they did not wish to delay adjudication or resolution of the Michigan matter. Discovery already has closed in the Michigan action, a joint motion for summary judgment is pending (which should be granted), and the final settlement conference and final pretrial proceedings are only days and weeks away.

## III.    ARGUMENT

Shafi cites no authority for his contention that he is entitled to a stay of this matter so that he can seek dismissal of the proceedings in the Eastern District of Virginia; nor does there appear to be any such authority. On the contrary, in addressing whether a stay is warranted, courts generally consider the same four factors traditionally considered in addressing whether a preliminary injunction is warranted. *See, e.g., Knox v. City of Royal Oak*, No. 06-10428, 2007 U.S. Dist. LEXIS 44554 (E.D. Mich. 2007) (addressing whether to grant a stay pending appeal). These factors include:

> (1)  The likelihood that the party seeking the stay will prevail on the merits of the appeal (or in this case, the cited grounds for dismissal of the Virginia action);

8

(2) The likelihood that the moving party, i.e., Shafi, will be irreparably harmed absent a stay;

(3) The prospect that others, i.e., Weidinger, will be harmed if the court grants the stay; and

(4) The public interest in granting the stay.

*See id.* at *3-*4 (citing *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). Although these factors are not prerequisites, it is well-established that "'[t]he movant must address each factor, regardless of its relative strength, providing specific facts and affidavits supporting assertions that these factors exist.'" *Id.* (quoting *Michigan Coalition of Radioactive Material Users,* 945 F.2d at 154)).

Shafi falls woefully short of meeting his burden. In fact, Shafi makes no attempt to identify, let alone apply, the proper standard for obtaining a stay. The reason is not surprising. When applied, it is apparent that no stay is warranted in this matter.

A.    **Shafi is Not Likely to Prevail On The Merits of His Anticipated Motion to Dismiss the Virginia Action**

It appears that Shafi intends to raise three grounds for dismissal in the Virginia action: (1) lack of personal jurisdiction over Shafi in Virginia; (2) *res judicata* by virtue of the dismissal of Braintech's original complaint for recission in Michigan; and (3) that the Virginia claims are barred as compulsory counter-claims to Shafi's breach of employment, fraud-based, and other equitable claims in Michigan. *See* Br. Supp. Mot. Stay at 6-8. Shafi is not likely to succeed on any of his asserted grounds for dismissal in the Virginia action.

### 1.    Shafi is Subject to Personal Jurisdiction in Virginia

Shafi fails to provide any substantive argument or authority for his contention that he is not subject to personal jurisdiction in Virginia. In fact, Shafi's motion is devoid of any citation or reference to Virginia's long-arm statute, let alone specific facts and affidavits supporting his

9

assertions – the burden he shoulders as the party moving for a stay.  Instead, Shafi's argument regarding personal jurisdiction appears to rest on the wan assertion that because, in the 2009 Michigan complaint, Braintech alleged that Shafi is subject to personal jurisdiction in Michigan, that is the *only* judicial district in which Shafi may properly be sued.  *See* Br. Supp. Mot. Stay at 7.  Of course, this ignores that under the expansive reach of the Federal Constitution's Due Process Clause, a party may be subject to personal jurisdiction in more than one district.

Although not entirely clear from his papers, Shafi apparently also intends to argue to the Virginia court that at most, it only has specific jurisdiction over him in relation to claims that have a "nexus with Braintech" because his only contacts with Virginia were with respect to his transactions and work for Braintech.  *See id.* at 7-8.  Under Shafi's own theory, he is unquestionably subject to personal jurisdiction in Virginia in relation to Counts I (Breach of the Share Purchase Agreement Warranties), II (Breach of Fiduciary Duties), and III (Breach of Non-Compete Agreement) in the Virginia complaint, which all have a "nexus with Braintech."

In fact, Shafi is subject to personal jurisdiction in Virginia on all of the claims in the Virginia action.  In relevant part, Virginia's long-arm statute provides that:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:
>
> 1. Transacting any business in this Commonwealth;
>
> . . .
>
> 3. Causing tortious injury by an act or omission in this Commonwealth;
>
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth.

VA. CODE § 8.01-328.1(A).  The purpose of the Virginia long-arm statute is to extend the Virginia court's jurisdiction to the limits of the Due Process Clause.  *See Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982).  Pursuant to the long-arm statute, a Virginia court's authority to exercise personal jurisdiction encompasses all nonresidents who transact any business within Virginia so long as the cause of action arises from the nonresidents' transaction of business.  *Id.* at 313-14.  It is well-established that even "[o]ne act of transacting business will suffice."  *Id. See also, John G. Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 738-39; 180 S.E.2d 664 (1971).

According to the Fourth Circuit's interpretation of Supreme Court precedent, "[t]he touchstone of minimum contacts analysis remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state."  *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994).  When examining a defendant's contacts to determine whether his activities were purposefully directed towards residents of the forum-state, Virginia courts consider "who benefited from the contacts, who initiated them and why, whether the contacts involved any person's physical presence in the state, and what further conduct in the forum state was contemplated by the parties."  *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*, 761 F. Supp. 423, 426 (E.D. Va. 1991).  When determining the proper exercise of jurisdiction under Virginia's long-arm statute, no single factor is dispositive.  *Id.* Rather, the court is to examine "the quantity and the quality of the contacts."  *Id.*

Shafi has not met his burden of establishing a likelihood of success on this issue in the Viriginia court.  Shafi fails to even mention Virginia's long-arm statute in his motion to stay, let alone provide any analysis of his contacts with Virginia, stating only that he resides in Michigan and principally performed his duties for Braintech in Michigan.  *See* Br. Supp. Mot. Stay at 7.

RVT and Weidinger have alleged sufficient facts to establish personal jurisdiction over Shafi in the Virginia court – allegations that stand unrebutted by Shafi for purposes of the motion to stay. *See* Virginia Compl. ¶ 12, attached as Exhibit 1 to Mot. to Stay, Dkt. #92. He was an officer of Braintech, which had its principal place of business in Virginia, and received substantial payments and benefits from Braintech initiated from Virginia. Shafi initiated contact with Weidinger in Virginia and traveled to Virginia to discuss and negotiate the Share Purchase Agreement and other related agreements, which give rise, in part, to the Virginia claims. He traveled to Virginia in relation to his prior employment as an officer and director of Braintech, a Virginia-based corporation. Shafi's representations and warranties in the Share Purchase Agreement were directed toward and made to a Virginia-based corporation, i.e., Braintech. And Shafi's unfair competitive conduct and disparaging and defamatory statements were directed toward, and damaged, not only two Virginia-based corporations, Braintech and RVT, but a Virginia resident, Weidinger. This conduct is sufficient to establish personal jurisdiction over Shafi in the Eastern District of Virginia. *See, e.g., iDefense v. The Dick Tracy Group,* 58 Va. Cir. 138 (2002) (finding one purposeful trip to Virginia for purposes of transacting business was sufficient to exercise jurisdiction over British company under Virginia's long-arm statute).

## 2. The Virginia Claims are Not Precluded By The Court's Dismissal of Braintech's Original Equitable Claim for Recission

Shafi is also wrong in his assertion that RVT and Weidinger's claims in the Virginia action are subject to *res judicata* by virtue of the dismissal of Braintech's original complaint for recission in this action. Federal law, not state law (as cited by Shafi on page 6 of his motion), controls the application of *res judicata* in this action. *See Bittinger v. Tecumseh Prods. Co.,* 123 F.3d 877, 880 (6th Cir. 1997). As the Sixth Circuit has explained with respect the *res judicata* effect of prior litigation:

12

> Under this Court's articulation of *res judicata*, a claim will be barred by prior litigation if the following elements are present: (1) a final judgment on the merits by a court of competent jurisdiction; (2) a subsequent suit between the same parties or their "privies;" (3) an issue in the subsequent action which was, or could have been, litigated in the prior action (4) involving the identical cause of action.

*Id.* at 880.[3]

First, Shafi provides no argument or authority that the Court's dismissal of Braintech's original complaint for recission operated as a "final judgment on the merits" of either the original equitable claim for recission or any claim or issue in the Virginia complaint. And, given the circumstances of the dismissal, i.e., Braintech essentially voluntarily dismissed its claim by choosing not to obtain new counsel in light of its liquidation and wind down, and lack of personnel to proceed, RVT and Weidinger would contend that the dismissal was more akin to voluntary dismissal without prejudice that does not preclude the claims in the Virginia action.

Resolution of the first factor, however, is not necessary as analysis of the third and fourth factors alone illustrate that Shafi is not likely to prevail on his *res judicata* arguments in the Virginia court. First, there can be no legitimate dispute that RVT and Weidinger's claims for breach of the Non-Competition Agreement, Defamation, and Unfair Competition, do not involve either issues that were or could have been litigated as part of Braintech's original equitable claim for recission or "the identical cause of action" raised in Braintech's original complaint for recission of the Share Purchase Agreement. These claims are based upon Shafi's post-employment conduct in connection with his new company, Advenovation, starting in February

---

[3] *See also Young-Henderson v. Spartanburg Area Mental Health Ctr.*, 945 F.2d 770, 773 (4th Cir. 1991) ("It is well-established in this circuit that the application of *res judicata* requires a showing of the following three elements: "(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits.").

2009, and work as a sales representative for Aptura starting in 2010, conduct that post-dated Braintech's filing of its original complaint. None of the issues surrounding Shafi's post-employment conduct were even remotely relevant to Braintech's original complaint for recission.

Moreover, rescission of a contract is an equitable remedy that "returns the parties to the status quo, i.e. it places the parties in the position they occupied before the transaction in question." *McMullen v. Joldersma*, 174 Mich. App. 207, 218; 435 N.W.2d 428 (1988). It is, however, different from breach of contract. As the Michigan Court of Appeals stated in *Adell Broadcasting v. Apex Media Sale*, 269 Mich. App. 6, 13-14; 708 N.W.2d 778 (2005):

> Failure of consideration warranting rescission is different from, and greater than, a mere breach of contract warranting an action for damages... 'Rather rescission is permissible when there is failure to perform a substantial part of the contract or one of its essential items, or where the contract would not have been made if default in that particular had been expected or contemplated.'

*Id.* Further, rescission requires the party claiming it to show that equity requires that the parties be returned to the status quo. *Lash v. Allstate Insurance Company*, 210 Mich. App. 98, 102; 532 N.W.2d 869 (1995). "Rescission necessarily involves a repudiation of the contract and a refusal of the moving party to be further bound by it. But this by itself would constitute no more than a breach of contract or a refusal of performance, while the idea of rescission involves the additional and distinguishing element of a restoration of the status quo." *Id.* (citing *Cunningham v Citizens Ins. Co. of America*, 133 Mich. App. 471, 479; 350 N.W.2d 283 (1984)).

Even if Shafi could meet his burden with respect to the first two elements of a *res judicata* claim (which he cannot, as Weidinger will establish in the Virginia court), *res judicata* does not apply because, under the fourth prong of *Bittinger,* the causes of action raised in Virginia are not "identical" to Braintech's original equitable claim for recission.

To the extent that Shafi generally asserts that Braintech should nonetheless have brought all of its claims at the time it brought its original recission action, Shafi's argument fails as there is no compulsory joinder rule under Federal law.[4]  Under the Federal Rules, "[j]oinder of claims is permissive, not compulsory."  4-18 Moore's Federal Practice – Civil § 18.02.  "Nothing in the claim joinder rule requires all claims to be asserted by a party."  *Id.* (citing *Headley v. Bacon*, 828 F.2d 1272, 1275 (8th Cir. 1987) ("That [plaintiff] could have joined the suits does not necessarily mean she was required to do so, however.  The decision to bring separate actions was a tactical choice allowed by the Federal Rules of Civil Procedure; Rules 18(a) and 20(a) refer only to permissive joinder, at the party's option.")).

For these reasons, Shafi will not succeed on the merits of this argument in the Virginia court.

### 3.   The   Virginia   Claims   are   Not   Compulsory Counterclaims to Shafi's Fraud-Based and Other Equitable Claims

Finally, Shafi is wrong that the claims in the Virginia complaint are compulsory counter-claims to his fraud-based and equitable claims against Weidinger in Michigan.[5]  Compulsory counterclaims are governed by Rule 13 of the Federal Rules of Civil Procedure.   Rule 13 provides:

> A pleading must state as a counterclaim any claim that - at the time of its service - the pleader has against an opposing party if the claim:
>
> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and

---

[4]  Moreover, it would have been fundamentally inconsistent for Braintech to simultaneously seek equitable recission of the SPA on the one hand and on the other embrace and ratify the SPA transaction to assert legal claims for Shafi's misconduct in furtherance of that transaction.

[5]  Shafi does not assert a compulsory counter-claim argument with respect to RVT's claims in the Virginia complaint. *See* Br. Supp. Mot. Stay, Dkt. #92, at 8.

>   (B) does not require adding another party over whom the court
>   cannot acquire jurisdiction.

Fed. R. Civ. P. 13(a)(1).

Weidinger's personal claims for disparagement and defamation in the Virginia action unquestionably do not arise from the same transaction or occurrences as Shafi's claims against him in the Michigan action.  Shafi's counter-claims against Weidinger in the Michigan action arise out of Weidinger's *alleged pre-contractual representations* made in relation to the Share Purchase Agreement in 2008.  Weidinger's claims in the Virginia action relate to disparaging and defamatory statements made by Shafi in 2008, 2009, 2010, and continuing today.  Shafi simply has not met his burden on this argument and it should be rejected.

To the extent Shafi now contends that RVT's claims in the Virginia are somehow compulsory to the Michigan claims, he is likewise wrong.  Again, Shafi's claims against Braintech in the Michigan action arise from:  (1) his Employment Agreement and (2) *alleged pre-contractual representations* made by Weidinger.  As already discussed, it is beyond question that RVT's non-competition, non-disparagement, defamation, and unfair competition claims do not involve Shafi's employment agreement or any alleged breach of the employment agreement; nor do they involve the alleged pre-contractual representations made by Weidinger forming the basis of Shafi's other claims against Braintech.[6]

Similarly, RVT's claims for breach of the warranties in the Share Purchase Agreement do not involve either Shafi's employment agreement or any alleged pre-contractual representations made by Weidinger.  Rather, RVT's claims relate to express representations and warranties made *by Shafi* in the Share Purchase Agreement.  Likewise, RVT's claims for breach of Shafi's

---

[6] Only one issue related to Shafi's Breach of Employment Agreement claim in the Michigan action is even arguably relevant to the Virginia breach of Non-Competition Agreement claim, i.e., whether Shafi was terminated for good cause, as it may determine the applicable non-competition period.

statutory duties as COO of Braintech do not involve or arise from either Weidinger's alleged pre-contractual representations or Shafi's claim that Braintech breached his employment agreement by firing him without good cause. For these reasons, will not prevail on his compulsory counter-claim argument in the Viriginia court.

**B.     Shafi Will Not Suffer Any Irreparable Harm If This Action Proceeds While Shafi Defends the Virginia Action**

Shafi will not be prejudiced if this case proceeds as scheduled. The only justification Shafi provides for a stay of these proceedings is his contention that he must "divert" his resources to filing a motion to dismiss or transfer venue of the Virginia action. Shafi, however, cites no authority that expending resources to two pending actions constitutes irreparable harm warranting a stay. Moreover, Shafi's conduct in seeking to stay this action, rather than simply accepting service of the Virginia complaint and proceeding to file his motion in Virginia, evidences his own bad faith and vexatious motives.

In fact, despite being aware of the Virginia action, as evidenced by this motion, and even indicating that he is working on a motion to dismiss the Virginia action, Shafi actively has been evading service of the Virginia complaint. Further, counsel for RVT and Weidinger specifically requested that Shafi's counsel accept service on behalf of his client, arrange for a date and time for Shafi to accept service of the Virginia complaint, or concur in a motion for alternate service in Virginia. *See* Exhibit 1. Counsel for Shafi has not responded. Shafi and his counsel's apparent intention to impede or stall proceedings in Virginia seriously calls into question their intention to expeditiously file a motion in Virginia.

Moreover, the Eastern District of Virginia is noted for its "rocket docket," under which Shafi could seek a disposition of his promised motion *within two weeks* of filing. The Local Rules for the Eastern District of Viriginia specifically provide for an expedited briefing schedule

17

and actually require the movant to ensure the motion is set for hearing within thirty days of its filing or it is deemed withdrawn. *See* E.D. Virginia L.R. 7(E), 7(F)(1) & 56.

Simply put, Shafi will not suffer any irreparable harm if this action and the Virginia action proceed concurrently.

**C.    Weidinger Will Be Harmed if A Stay of These Proceedings is Granted And Entry of Summary Judgment is Delayed**

Issuing a stay of these proceedings would needlessly delay a decision on the pending Joint Motion for Summary Judgment.  Contrary to his assertions in his motion to stay, it is Shafi, not RVT or Weidinger, that has acted vexatiously by asserting legally and factually baseless claims against Weidinger personally and then continuing to disparage him and defame him in the industry, thus damaging both Weidinger and RVT.  As set forth in the Joint Motion for Summary Judgment, and summarized above, Shafi's claims against Weidinger fail legally and factually, and Weidinger is entitled to summary judgment.  Shafi has not cited, and cannot cite, any legitimate grounds for delaying entry of summary judgment so that he can, some day, move to dismiss a separate action in another jurisdiction.  For these reasons, this factor ways heavily in favor of denying a stay of these proceedings.

**D.    The Public Interest Weighs in Favor of Denying Shafi's Motion for a Temporary Stay of These Proceedings**

Denying Shafi's motion for a temporary stay of these proceedings will advance the public interest in the timely adjudication of claims, deterring litigants from actively evading service of process, and against advisory opinions.  The public interest favors the just and speedy resolution of claims, especially baseless claims, such as those Shafi has lodged against Weidinger.

Moreover, Weidinger respectfully submits that it is the Federal court in Virginia that should decide whether Shafi is subject to personal jurisdiction in Virginia, whether venue is proper there, and whether, under Fed. R. Civ. P. 12(b), RVT and Weidinger have asserted legally

cognizable claims in the Virginia complaint.  It is well-settled that Federal courts should not be engaged in the business of issuing advisory opinions.  *See, e.g., Seldon v. Lehman Brothers, Inc.,* No. 09-13162, 2010 U.S. Dist. LEXIS 63100, at *9 (E.D. Mich. June 5, 2010) ("Without reaching the propriety of Plaintiff's specific requests, the Court notes that it has long been established that federal courts do not issue advisory opinions").  Yet, that is exactly what Shafi requests this Court to do under the guise of a motion to stay.  The public interest, comity between courts, and the Federal courts' interest against advisory opinions weighs heavily in favor of denying Shafi's motion for stay.

### IV.    CONCLUSION

For all of the reasons discussed above, Shafi's motion to stay should be denied.

Respectfully submitted,

DICKINSON WRIGHT PLLC

By:    s/ Michelle L. Alamo
Thomas G. McNeill (P36895)
TmcNeill@dickinsonwright.com
Michelle L. Alamo (P60684)
Malamo@dickinsonwright.com
Attorneys for Frederick Weidinger, Only
500 Woodward Ave, Suite 4000
Detroit, Michigan 48226
Tel:  313.223.3500
Fax:  313.223.3598

Geoffrey J. Greeves
PILLSBURY    WINTHROP    SHAW
PITTMAN
LLP
Co-Counsel for Frederick Weidinger, Only
2300 N Street, N.W.
Washington, DC 20037-1122
(202) 663-9228
geoffrey.greeves@pillsburylaw.com

Dated:  March 22, 2011

I hereby certify that on March 22, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.

/s/ Michelle L. Alamo (P60684)
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226
(313) 223-3500
malamo@dickinsonwright.com

DETROIT 49763-1 1197143v3

20