UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADIL SHAFI, an individual,

    Defendant/Counterclaim Plaintiff

v.

BRAINTECH, INC, a Nevada corporation,

    Counterclaim Defendant,

and

FREDERICK WEIDINGER, an individual,

    Additional Counterclaim Defendant.
_____/

Case No. 09-10454

Hon. Victoria A. Roberts

**RESPONSE OF ADIL SHAFI TO THIRD-PARTY DEFENDANT FREDERICK WEIDINGER'S FED R. CIV. P. 37(b) MOTION TO COMPEL COUNTER-PLAINTIFF ADIL SHAFI TO PRODUCE CERTAIN SOURCE CODE REQUIRED BY THE COURT'S DECEMBER 17, 2010 ORDER**

# I.　TABLE OF CONTENTS

II. INDEX OF AUTHORITIES....................................................................................iii

III.  INTRODUCTION.................................................................................................1

IV.  ARGUMENT.........................................................................................................7

    Point 1 – As a Result of the Passage of Time, Braintech and Weidinger
          Have Waived Discovery of the Software Code............................................7

    Point 2 – New Developments Warrant Delay of Any Inspection of Software.............8

    Point 3 – The Protocol Presented By Weidinger is Deficient.....................................9

    Point 4 – The Claim That Shafi Refuses to Discuss Protocol is Simply False..........11

V. CONCLUSION......................................................................................................12

## II.   INDEX OF AUTHORITIES

<u>Case(s)</u>                                                                                                                  <u>Page(s)</u>

*Schimke v. Scott,* 361 Mich. 654 (1960)..................................................................4

## III.   INTRODUCTION

The present "dispute" if that is what it is to be called, began on October 29 2010, the last day of discovery in this case. On the last day of discovery, the attorneys for Braintech (not Weidinger) served two subpoenas which sought the production of software owned by Shafi Inc. and proprietary software developed by Adil Shafi's new company, Advenovation. In seeking production of the software, Braintech speculated that Mr. Shafi, in connection with developing the new proprietary software for Advenovation, copied in whole or in part the proprietary property owned by Shafi Inc. (now owned by Braintech). Braintech concedes this entire exercise is relevant only to one claim – Shafi's conversion claim.

Braintech claims that it owns the proprietary software known as RELIABOT developed and sold by Shafi Inc. over a period of almost 20 years prior to the sale of Shafi Inc. to Braintech. The speculative theory is that Mr. Shafi copied the RELIABOT software and incorporated parts or all of it into new software developed with his new company, Advenovation. This theory occurred to the lawyers for Braintech[1] on the last day of discovery.

As noted during the hearing which occurred on December 17, 2010, the original subpoena required "production" of the software in the offices of counsel for Braintech in Detroit, Michigan. It was not until the hearing that the idea came about of using an expert to develop a "protocol" to allow the software to be inspected in an appropriate

---

[1] As noted in prior filings related to this issue. Braintech no longer exists. The lawyers for Braintech are being paid by an insurance company under an EPLI policy which provides for cost of defense only. Thus, the notion that Braintech as an entity is involved in this matter is purely metaphysical.

{00016046;v1 }                                    1

"forensic environment." This idea originated from Magistrate Judge Morgan. On the same day of the hearing, the Court entered its orders requiring the parties to agree on a procedure for production and review of the software.

After approximately two weeks, Mr. Shafi's counsel followed up with Braintech's attorneys and requested Braintech's input on a proposed procedure to review/inspect the software. See email to Anne Widlak dated December 30, 2010, annexed as Exhibit A. No response was ever received. On February 23, 2011, Shafi's attorneys followed up and sent a second email inquiring as to whether any progress had been made in proposing a protocol to review/inspect the software. Shortly thereafter, Mr. McNeill and his firm filed their appearance for counterclaim defendant Weidinger. A week later, on March 3, 2011, Weidinger's counsel expanded upon the initial subpoena request and "demanded" a copy of the Advenovation software "as sold and deployed" to an Advenovation customer, Hutchinson Inc.

In the first email, Mr. McNeill expressed an "expectation" that Shafi's counsel would already have a copy of the Advenovation software in its "as sold and as deployed" state in possession and ready to immediately turn over to Weidinger's expert. This being the first time this issue was revisited since December 17, 2010, there should have been no surprise that copies of the software were not in hand. The so called "protocol" delivered by Mr. McNeill came more than five months after the initial discovery request, more than two and one half months after this Court had its initial hearing and entered the Order and two months following Shafi's counsel's request for a proposed protocol.

The initial request came from a subpoena served by Braintech. Although Weidinger participated in the underlying discovery motion, Braintech had yet to say anything regarding protocol until its "response" to Weidinger's motion was filed on March 14, 2011. Accordingly, as a result of the passage of time, Shafi submits that Braintech (and Weidinger) have waived any issue concern regarding Advenovation software.

In the absence of a finding of waiver, Weidinger's recent activities should give this Court pause for heightened scrutiny of the software inspection. On the same day this motion was filed, Weidinger and his new company, purportedly a successor to Braintech, Robotic Vision Technologies ("RVT"), sued Shafi in the Eastern District of Virginia federal court. See Complaint of Weidinger and RVT annexed as Exhibit B. Therefore, it is important to understand the distinction between the "Braintech" entity which made the initial request for production of the software, and Weidinger, who is now driving the request for the production.

As it stands now, Braintech is a completely defunct company with no assets, no employees, no offices and no operations. Braintech terminated its operations when its secured lender, Silicon Valley Bank, declared Braintech in default of its loan obligations and exercised its remedies with respect to certain collateral which was posted in exchange for the loan. Although the bank had a first lien on all Braintech assets, in order to arrange for the loan, Weidinger and his associates posted cash to be held by the bank as security for the loan. See Weidinger Tr. pp. 163-164, annexed as Exhibit C. In connection with posting the cash collateral, Weidinger and his associates obtained a

second all asset lien on Braintech assets. Once the bank declared the default and took the cash posted by Weidinger, Weidinger stepped into a first position secured interest in all Braintech assets.[2]

On May 24, 2010, Weidinger and RVT held an auction of Braintech's assets and, not surprisingly, RVT was the only bidder at the sale. The sale notice is annexed as Exhibit D. The general description of the Braintech assets offered for sale included all "tangible and intangible" property but the notice also included a *specific* list of intellectual property. RELIABOT software (which was trademarked by Shafi Inc.) was not sold to RVT at the auction sale.

On the date of the sale, Braintech's claim for rescission in this Court was still pending in this Court. It is black letter law that a party claiming rescission must hold and offer to return that which was received – which in this case is the RELIABOT software. *See, Schimke v. Scott,* 361 Mich. 654 (1960). Braintech's complaint was not dismissed until a month after the sale, on June 4, 2010. Thus, the software could not have been sold to RVT and Weidinger by virtue of the Braintech auction. The U.S. Patent and Trademark Office still lists Shafi Inc. as the owner and the trademark has been cancelled. See Exhibit E. Braintech never even transferred the trademark, but rather let it lapse. Importantly, the Court must assume that the Shafi Inc. assets, including any RELIABOT software in possession of Braintech was not included in the sale of assets to RVT and Weidinger.

---

[2] It appears that Weidinger and/or his associates assigned all of their rights in the collateral to Weidinger's new company, Robotic Vision Tech.

{00016046;v1 }                                    4

Meanwhile, on the same day this motion was filed in this Court, RVT and Weidinger filed the new case in the Eastern District of Virginia based upon the same transaction or occurrence which is at issue in this case, but also seeking damages and injunctive relief for, among other things, unfair competition and breach of the Share Purchase Agreement. In the new Complaint, RVT and Weidinger allege that the same intellectual property they wish to inspect here "had no continuing economic value," was "never adopted nor utilized by Braintech," "written in an old unsupported programming language," lacked "requisite documentation," and lacked "manufacturer communication interfaces." See RVT and Weidinger Complaint at Exhibit B, p. 18 paragraph 83(e). Indeed, RVT and Braintech allege "no single piece of RELIABOT source code was ever deemed sufficient and therefore, never adopted nor utilized by Braintech."

Turning to the so called "protocol" proposed by Mr. McNeill, it is obviously and facially deficient. It begins with an improper and unsupported premise: "Adil Shafi and his counsel have not provided examiners with further information concerning the source code structure, whether and to what extent there exist different versions of the software and whether there may exist any auxiliary files that may be required in conjunction with the software source code." This is an entirely untrue statement. Despite the passage of 3 months from the December 17, 2010, hearing, Shafi has never been asked to provide *any* information about any software.

Moreover, shortly after the transaction giving rise to this case, Braintech engineers scrutinized the RELIABOT software from every possible angle and generated a 22 page report concerning their analysis of the RELIABOT source code. See Report

of Braintech Engineers annexed as Exhibit F.  Contrary to Mr. McNeill's representation, RVT and Weidinger have a virtual roadmap of all of the characteristics, modules, etc., of the RELIABOT software.  Further, to the extent that Mr. McNeill complains that no information has been provided with respect to Advenovation software, no information was requested.  Rather, following Mr. McNeill's appearance, he simply demanded that a full and complete copy in its "as sold and as deployed" mold be turned over unconditionally.

It is not standard "protocol" to simply turn over valuable, proprietary and confidential software source code to individuals represented to be "experts."  In recognition of this, several days after the so called "protocol" was presented, Mr. McNeill presented an equally deficient proposed protective order.

Given the vast amount of information already in constructive possession of Mr. McNeill and his so called "expert" concerning the RELIABOT software code and its characteristics, it is and was Mr. McNeill and his client's burden to develop a protocol for examination of the characteristics, modules and other aspects of the RELIABOT software.  The so called protocol contains no such information.  Such information would necessarily include necessary software or software platforms the expert will utilize to examine and run tests on the RELIABOT code.  A fine example of an appropriate protocol is found in a recent case involving Google source code.  A copy of a protective order which establishes the protocol for examination of the Google source code is annexed as Exhibit G.  To make a long story short, in the Google litigation, the parties agreed that the Google source code would be loaded onto multiple laptops in a secure

office location, without access to the internet, without access to thumb drive or disk drive copying, under supervision and also loaded with software the examiner intended to utilize to run tests on the Google source code.  The testing was to occur in a supervised environment in a closed room within a law office.  This is precisely what was proposed to Mr. McNeill.  Unfortunately, Mr. McNeill rejected it out of hand and simply demanded unconditionally that Shafi turn over the Advenovation source code.  The protocol proposed by Mr. McNeill is deficient in every possible way.

Over the course of three months prior to Mr. McNeill's demand there were zero communications, zero requests for information, zero requests for details regarding either RELIABOT or Advenovation source code, and such dilatory conduct apparently left Mr. McNeill with no choice but to simply make a series of demands from which he could claim that Shafi and his counsel were not complying with the Court's order.

### IV.   ARGUMENT
### Point 1
### As a Result of the Passage of Time, Braintech and Weidinger Have Waived Discovery of the Software Code

As noted above, despite counsel for Shafi's inquiries, no proposal for the protocol ordered by magistrate Judge Morgan on December 17, 2010, was made until months later.  When finally made, the proposed protocol simply demanded that Shafi turnover his proprietary software to an individual retained by Weidinger.  Clearly, by virtue of the passage of time, Braintech and Weidinger have waived any claim that the inspection of the software developed by Mr. Shafi at his new company, Advenovation is relevant to this case.

**Point 2**

**New Developments Warrant Delay of Any Inspection of Software**

The only basis asserted for inspection of the software by Braintech is Shafi's claim of conversion. This court recently held a settlement conference and informed the parties that the court will be ruling shortly on motions for summary judgment filed by Braintech and Weidinger.

More importantly, RVT and Weidinger have filed suit against Shafi in the Eastern District of Virginia, claiming among other things, that Shafi is engaged in unfair competition with RVT and Weidinger. RVT and Weidinger are in the same business as Shafi. RVT and Weidinger seek to sell proprietary vision guided robotics software. RVT and Weidinger claim that Shafi is in violation of a covenant not to compete. Up until this new case was filed, Weidinger and Braintech made absolutely no effort to inspect Mr. Shafi's new proprietary software. Only after this new case has been filed, has Weidinger made any attempt to inspect Mr. Shafi's new software. Clearly, the timing of the "demand" to simply turn over the software to an expert retained by Weidinger is suspect.

At the settlement conference, the Court adjourned the previously established May 10, 2011 trial date. The court "penciled in" a possible trial date beginning on June 28, 2010. Due to the fact that Weidinger and Braintech have delayed the inspection of the software over the course of the last several months, Shafi submits that the inspection ought to be delayed further until the Court rules on the pending motions for summary judgment. It is possible that the Court will dismiss Shafi's claim for

conversion. If the conversion claim is dismissed, there is no further basis for any right to inspect the software.

## Point 3

## The Protocol Presented By Weidinger Is Deficient

Rather than presenting a viable protocol, Mr. McNeil simply demanded Shafi unconditionally turn over copies of his new software.  In addition, rather than attempting to gain any understanding of either the RELIABOT software or Mr. Shafi's new software, Mr. McNeil wrote his proposed protocol as if he had been denied information relative to the software. As demonstrated herein, Mr. McNeil was denied no information. Rather, neither Mr. McNeil nor the attorneys for Braintech requested any information at any time regarding either the RELIABOT software or Mr. Shafi's new software.

Mr. McNeil made no effort to inform Shafi's attorneys as to what software platforms might be necessary to examine and compare the two software source codes. Mr. Shafi's new software is proprietary.  As the Court was informed at the December 17, 2010 hearing, Shafi stands ready and willing to allow the new software to be inspected and/or compared to the RELIABOT software.

The order in the Google litigation clearly shows how simple it is to come up with a workable protocol.  The fact is (and Mr. McNeil is aware of this) the RELIABOT software code is written on an antiquated Microsoft program which is no longer supported by Microsoft. See Exhibit G.  Braintech and Weidinger have known this since before this case was filed.  Shafi has informed Mr. McNeil that his new software is written on a

Microsoft program platform called VB.net. It appears that Mr. McNeil has not even provided this most basic information to Weidinger's purported expert.

Shafi should not be forced to simply hand over copies of his proprietary software merely because Mr. McNeil has failed to do his homework and understand the most basic information about the software and what other software platforms the purported expert will utilize to compare RELIABOT with Mr. Shafi's new software code. In fact, when the so-called protocol was delivered, it was not even associated with a protective order. Only after Shafi's counsel complained that the expert would not even be subject to a court order, was a protective order belatedly drafted and forwarded to Shafi's counsel.

Even if the Court accepts the protocol presented by Weidinger and Braintech, there should be absolutely no circumstances under which anyone associated with Braintech, RVT or Weidinger will be exposed to any information regarding Mr. Shafi's new software. RVT and Weidinger are competitors of Mr. Shafi's new venture. Accordingly, any information related to the software inspection must be designated as "attorneys eyes only."

There are other issues related to the protocol which Mr. McNeil has failed to address. For example, establishing a deadline for a Rule 26 expert report, in the absence of which, there should be an understanding that no testimony will offered at trial concerning the software. This request was simply ignored as Mr. McNeil repeated his demand to simply turn over the software.

## Point 4

**The Claim That Shafi Refuses To Discuss Protocol Is Simply False**

Weidinger and Braintech argue that Shafi has refused to discuss the protocol of the software inspection. This is simply not true. The protocol which was "presented" to Mr. Shafi's counsel - was simply a demand to turn over the software. No effort whatsoever was made to gather any information. Shafi, through his counsel, suggested that the software would be produced in a controlled environment, loaded onto secure laptops and supervised at the offices of Berry Moorman PC or any other convenient location. This was vastly different than the offer made at the hearing to simply produce the software code at the law office of Berry Moorman. Rather, this is an appropriate and recognized procedure and it is Weidinger and his counsel who have refused to discuss the "appropriate forensic environment."

In its "response" Braintech makes a number of allegations which are also false. Braintech claims it has diligently pursued the software issue. Braintech claims this issue came up in a deposition in July, 2010. However, the request to produce the software was not made until the last day of discovery on October 29, 2010. Shafi did not dodge any questions at his deposition. Had counsel believed Mr. Shafi was not being forthright in his deposition, there was ample time to file a discovery motion. No such motion has been filed. If the so-called "diligence" to pursue the software issue began in July, 2010, fully eight months have elapsed between the period where such diligence began and the presentation of a so-called "protocol."

In their new complaint, Weidinger and RVT repeat the underlying allegations first made in the complaint filed in this case. In both complaints, Braintech and Weidinger have alleged that the RELIABOT software sold along with Shafi Inc. was obsolete and of no value. Braintech essentially disposed of the RELIABOT software, took no efforts to transfer the trademark registration from Shafi to Braintech and allowed the trademark registration to lapse. The RELIABOT software was not in the specific list of intellectual property sold in the Braintech auction.

Thus it is apparent that neither Braintech, RVT or Weidinger even have possession of a copy of RELIABOT software. If there was a copy of software in their possession, a copy could have been turned over to the purported expert and this process would have been much farther along by now. To the extent that Braintech complains that the original developer of RELIABOT maintained a copy of the software code, this is standard practice in the industry. No questions were posed to Mr. Shafi as to why the developer maintained a copy of the RELIABOT software code.

Braintech also makes an odd claim that it was unable to make any response to the protocol issue because it needed the transcript and the transcription was delayed. Brainech fails to explain why it needed a transcript or what portion of Magistrate Judge Morgan's order it did not understand in the absence of a transcript. Braintech also claims that Shafi "reneged" on a position expressed to Magistrate Judge Morgan during the December 17, 2010 hearing. Shafi has not reneged on anything. Shafi repeats here that no claim is made in this case for damages to his reputation or lost opportunity. Such claims were set forth in Shafi's initial disclosures. During the hearing Shafi was

ordered to amend the portion of the initial disclosures dealing with personal liability for Shafi Inc. debts due to Braintech's failure to pay such debts as promised. Apparently because Shafi did not delete other portions of the initial disclosures no longer of relevance, Braintech believes something has been reneged. This kind of petty, time wasting, irrelevant drum beating could have been solved by a simple request for clarification. It is clarified here, Shafi seeks no damages for lost reputation or lost opportunity.

## V. CONCLUSION

Based upon the foregoing, the real scenario which is emerging from this effort to inspect the software is that neither Braintech, RVT nor Weidinger have any access to RELIABOT software, and as competitors, are now desperate to obtain access to not only RELIABOT but also new proprietary software developed by Mr. Shafi. Braintech also questions how Mr. Shafi could have possibly created new software within a period of months following his departure from Braintech. The answer is that Mr. Shafi has been in the vision guided robotics software business for over 20 years. This is what made Mr. Shafi and his company such an attractive target for acquisition by Braintech in the first place. Unfortunately, Braintech was mismanaged by Mr. Weidinger, who has absolutely no background in technology, robots or vision guided software. This is precisely the reason why Braintech failed. But because it failed and due to the fact that Braintech terminated Mr. Shafi, it should come as no surprise to anyone that Mr. Shafi returned to the same market from which he has made a living his entire adult life. Shafi

will make his software available pursuant to an appropriate protocol when one is presented by Mr. McNeill.

        Respectfully submitted,

        BERRY MOORMAN P.C.

        By:   s/James P. Murphy
             James P. Murphy (P36728)
             Attorneys for Defendant/Counterclaim Plaintiff
             535 Griswold, Suite 1900
             Detroit, Michigan 48226
             (313) 496-1200
             murph@berrymoorman.com

Dated: March 28, 2011

## CERTIFICATE OF SERVICE

STATE OF MICHIGAN )
                        )ss
COUNTY OF WAYNE )

     I hereby certify that on the 28th day of March, 2011, a copy of the foregoing Response of Adil Shafi to Third-Party Defendant Frederick Weidinger's Fed R. Civ. P. 37(B) Motion to Compel Counter-Plaintiff Adil Shafi to Produce Certain Source Code Required By the Court's December 17, 2010 Order was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                      Respectfully submitted,

                                      BERRY MOORMAN P.C.

                                      By:   s/James P. Murphy
                                              James P. Murphy (P36728)
                                              Attorneys for Defendant/Counterclaim Plaintiff
                                              535 Griswold, Suite 1900
                                              Detroit, Michigan 48226
                                              (313) 496-1200
                                              murph@berrymoorman.com