UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADIL SHAFI.,

    Counter-Plaintiff/ Third Party Plaintiff,

v.

FREDERICK WEIDINGER and
BRAINTECH, INC.,

    Third Party Defendant/ Counter-Defendant.

_____/

Hon. Victoria A. Roberts

Case No. 09-10454

## ORDER

**I.     INTRODUCTION & PROCEDURAL HISTORY**

This matter is before the Court on Counter Defendant Braintech, Inc.'s Motion for Partial Reconsideration of the Court's April 5, 2011 Order Denying Braintech Summary Judgment on Shafi's Claim for Breach of Employment Agreement. (Doc. 105).

On February 6, 2009, Braintech filed suit against Shafi, asking the Court to rescind an acquisition between Braintech and Shafi.  In response, Shafi brought a counterclaim against Braintech and Weidinger, Braintech's former director, alleging several claims, including breach of employment contact.  The Court dismissed the original suit filed by Braintech on June 3, 2010, leaving only Shafi's counterclaims against Braintech and Weidinger.

On November 19, 2010, Braintech and Weidinger filed a joint motion for summary judgment, asking the Court to dismiss all of Shafi's claim.   The Court entered

an Order on April 5, 2011 granting the motion in part. The Court dismissed all of Shafi's claims except for his breach of employment contract claims. Braintech now asks the Court to reconsider that ruling and dismiss Shafi's remaining claims.

## II.     STANDARD OF REVIEW

A court will grant a motion for reconsideration if the movant can (1) "demonstrate a palpable defect by which the court and the parties . . . have been misled," and (2) "show that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(h)(3).  "A 'palpable defect' is 'a defect that is obvious, clear, unmistakable, manifest, or plain.'" *United States v. Lockett*, 328 F. Supp. 2d 682, 684 (E.D. Mich. 2004) (citing *United States v. Cican*, 156 F. Supp. 2d 661, 668 (E.D. Mich. 2001)).  A motion for reconsideration that presents "the same issues ruled upon by the court, either expressly or by reasonable implication," will not be granted. E.D. Mich. LR 7.1(h)(3); *see Czajkowski v. Tindall & Assocs., P.C.*, 967 F. Supp. 951, 952 (E.D. Mich. 1997).

## III.    APPLICABLE LAW AND ANALYSIS

Shafi claims Braintech breached his employment contract because Braintech terminated him without notice or good cause, and failed to pay him a severance. In its motion for summary judgment, Braintech said there was no question that it had good cause to terminate Shafi. The Court disagreed, and ruled that summary judgment was inappropriate for Shafi's breach of employment contract claims because there were genuine issues of material fact as to whether Shafi was terminated with 30 days notice and for good cause.

Defendants also argued, in the alternative, that even if there were genuine issues

of fact as to good cause, Shafi was not entitled to severance because he did not execute a full release as required by the contract as a prerequisite to receiving severance. The Court ruled summary judgment was inappropriate because the issue was not clear.  The Court wrote:

> Clearly, the Agreement requires Shafi to sign a release after he is terminated, and before he receives severance; however, the Agreement states the release will be "in the form of a severance agreement." Employment Agreement, ¶ 12(g).  Generally, it is not incumbent upon an employee to draft a severance agreement, and Defendants have not argued that they presented a severance agreement with a release to Shafi, or that he declined to sign it.  Indeed, this argument appears illogical under the circumstances, as Defendants contend that Shafi is not entitled to severance.

Braintech now says the Court failed to address Defendants' argument that Shafi's decision to bring claims against Braintech and Weidinger precluded him from entitlement to severance in any event, because bringing the claims clearly signaled that Shafi would not sign a release if presented to him. Braintech says that disregarding this argument created a palpable defect which misled the Court.  The Court disagrees.

First, the Court notes that the argument on which Braintech currently relies was raised only in its reply brief.  Moreover, the entirety of the argument was one sentence: "Shafi's failure to execute a release and his filing of tort claims against Braintech and Weidinger preclude any possible right to a severance payment."  In contrast, the argument section of Braintech's brief supporting the motion currently before the Court is in excess of 3 pages and relies on cases and sub-arguments Braintech failed to present to the Court in its motion for summary judgment.  To the extent these arguments are new, are presented in more detail than in the prior motion, or rely on cases and law not in the prior motion, the Court is not inclined to consider them.

> Motions to reconsider must rely on new evidence and not information readily available during the prior proceedings. Motions for reconsideration are limited in purpose to correcting errors of law or to present newly discovered evidence. Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during [the] pendency of the summary judgment motion.

*American Marietta Corp. v. Essroc Cement Corp.*, 59 Fed. Appx. 668, 672 (6th Cir. 2003) (quotes and omitted).

Moreover, were the Court to consider these arguments in the detail presented in the motion to reconsider, the outcome does not change. The thrust of Braintech's argument is that Shafi, by filing his countersuit, rejected any entitlement he had to severance, repudiated the contract, committed an anticipatory breach of the contract, and caused a failure of consideration. As the Court already stated, these arguments are illogical under the circumstances. Braintech says Shafi is not entitled to severance in any case, so it cannot be that he rejected his entitlement to severance by suing Braintech to obtain it. By this logic, any suit to enforce the terms of the contract automatically revokes Shafi's entitlement to severance, even if Braintech blatantly breached the severance provision.

Moreover, Braintech's arguments are not supported by the plain language of the provision on which it relies. As the Court already determined, Delaware law applies to the employment agreement.

"Under Delaware law, the proper interpretation of language in a contract is a question of law." *Allied Capital Corp. v. GC-Sun Holdings, L.P.,* 910 A.2d 1020, 1030 (Del. Ch. 2006). If the language of a contract is plain and unambiguous, the Court should enforce the contract's plain meaning. *Id.* "Only where the contract's language is

susceptible of more than one reasonable interpretation may a court look to parol evidence; otherwise, only the language of the contract itself is considered in determining the intentions of the parties." *Id.*; *see also Citadel Holding Corp. v. Roven,* 603 A.2d 818, 822 (Del. 1992).

Paragraph 12(g) of the Agreement entitles Shafi to a severance package if he is terminated without good cause:

> In the event of a termination of this Agreement by the Company without Good Cause, . . . then Shafi . . . will be entitled to:
>
> i.  unpaid compensation and benefits described hereunder earned up to the termination date to be paid within 10 business days of the termination; and
>
> ii. a lump sum payment (less all deductions required by law such as income taxes) equal to the remainder of the then Base Salary remaining in the three year employment term set out in paragraph 5 to be paid within 20 business days after the Termination Date. [Shafi] agrees that after the Termination Date, but prior to payment of the severance pay and any outstanding bonus monies called for herein, [Shafi] shall execute a release, in the form of a severance agreement, of any and all claims he may have against the Company and its officers, employees, directors, parents and affiliates. [Shafi] understands and agrees that the payment of the severance pay and bonus called for by this paragraph are contingent on his execution of the previously described release of claims.  For avoidance of doubt, if severance is paid to [Shafi] then non-compete will be effective.

The plain language of the provision requiring Shafi to execute a release of all claims against Braintech also requires Braintech to pay the severance within 20 business days after Shafi's termination.  Since the release, in the form of a severance agreement, must be executed prior to this payment, the only way the Court could construe Shafi's countersuit against Braintech as a rejection/ repudiation/ anticipatory breach/ failure of consideration of the severance, is if Shafi filed the suit before those 20

days were up. Braintech does not contend Shafi did so, and, because Shafi's countersuit was filed April 9, 2009–more than four months after Braintech says it terminated Shafi on November 24, 2008 due to his alleged failure to perform his job duties–there is no evidence Shafi filed his countersuit before the 20 days expired. Moreover, there is no reason to believe Shafi was required to draft his own severance agreement with a release, nor does Braintech argue it planned to present the severance agreement and release to Shafi at any point before he filed the countersuit, let alone within the 20 days, or that he declined to sign it. And, had Shafi filed his countersuit before the 20 days ended, there might still remain genuine issues of material fact as to whether Braintech breached the contract first by communicating to Shafi that it would not pay severance.

### III.   CONCLUSION

Braintech's motion to reconsider is **DENIED.**

**IT IS ORDERED.**

　　　　　　　　　　　　　　　　　　　　s/Victoria A. Roberts
　　　　　　　　　　　　　　　　　　　　Victoria A. Roberts
　　　　　　　　　　　　　　　　　　　　United States District Judge

Dated:  May 25, 2011

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 25, 2011.<br><br>s/Linda Vertriest<br>Deputy Clerk |