UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADIL SHAFI,
Counter-Plaintiff/ Third-Party Plaintiff,

v.                                                                          Case No: 09-10454
                                                                            Honorable Victoria A. Roberts
FREDERICK WEIDINGER AND
BRAINTECH, INC.,
Third-Party Defendant/Counter-Defendant.

_____

**BRAINTECH, INC.'S REPLY BRIEF TO SHAFI'S RESPONSE TO
MOTION IN LIMINE TO EXCLUDE INTRODUCTION
<u>OF THE SHARE PURCHASE AGREEMENT</u>**

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES PRESENTED ............................................................................. ii

INDEX OF CONTROLLING AUTHORITIES ........................................................................... iii

INTRODUCTION ...........................................................................................................................1

STATEMENT OF FACTS ..............................................................................................................2

ARGUMENT ..................................................................................................................................4

CONCLUSION .............................................................................................................................12

## STATEMENT OF THE ISSUE PRESENTED

I. WHETHER THE INTEGRATION CLAUSE IN PARAGRAPH 20 OF THE EMPLOYMENT AGREEMENT PROVIDES THAT THE AGREEMENT CONTAINS THE COMPLETE AGREEMENT CONCERNING THE EMPLOYMENT ARRANGEMENT BETWEEN THE PARTIES AND BARS SHAFI FROM INTRODUCING EXTRINSIC EVIDENCE SUCH AS THE SHARE PURCHASE AGREEMENT TO ADD NOTICE PROVISIONS WHICH DO NOT EXIST IN THE EMPLOYMENT AGREEMENT.

   Braintech answers yes.

II. WHETHER SHAFI IS WITHOUT A REMEDY IF THE JURY FINDS HE WAS TERMINATED FOR "GOOD CAUSE" BUT WITHOUT "NOTICE," BECAUSE THE SEVERANCE PROVISION DOES NOT REQUIRE THAT SHAFI BE GIVEN NOTICE OF THE REASON FOR HIS TERMINATION OR WHETHER IT WAS FOR GOOD CAUSE, AND LACK OF NOTICE DOES NOT TRIGGER SHAFI'S RIGHT TO SEVERANCE PAY.

   Braintech answers yes.

# INDEX OF CONTROLLING AUTHORITIES

Cases                                                                                                                    Page

*Carey v. Shellburne, Inc.*, 224 A.2d 400, 402 (Del.1966)……………………………...5

*Griep v. Yamaha Motor Corporation U.S.A.*,
    120 F.Supp.2d 1196 (D. Minn. 2000)……………………………………………..8

*Knight v. Interco Incorporation,* 873 F.2d. 1125 (8th Cir. 1989)………………………11

*Lorillard Tobacco Company v. American Legacy Foundation,*
    903 A.2d 728 (Del. Supr., 2006)…………………………………………………..7

*Malloy v. Judge's Foster Home Program, Inc.,*
    229 Mont. 317, 321-322 (1987)…………………………………………………...8

*Maltby v. J.F. Images, Inc.,* 632 P.2d 646 (Colo Ct App 1981)……………………….11

*Odell et al. v. Humble Oil & Refining Co.,*
    201 F.2d 123, 128 (10th Cir. 1953)……………………………………………….10

*Paul v Deloitte & Touche, LLP,* 974 A.2d 140 (SCt Del 2009)………………….…11

*Science Accessories Corp. v. Summagraphics Corp.,*
    425 A.2d 957, 962 (Del 1980)……………….……………………………………9

*T.P. Inc. of Delaware v. J & D's Pets, Inc.,*
    1999 WL 135243, at *5 (Del.Ch.1999)………..…………………………………..5

*Tracinda Corp. v. DaimlerChrysler A G,*
    364 F.Supp.2d 362, 401 (D.Del.2005)...........................................................................5

Rules

Federal Rules of Evidence 401, 402……………………………………………...… 12

## INTRODUCTION

In response to Braintech's Motion in Limine to exclude introduction of the Share Purchase Agreement, Shafi once again attempts to mislead the Court by suggesting that the Share Purchase Agreement contains a "notice" provision which is applicable to the Employment Agreement. According to Shafi, the notice provision in the Share Purchase Agreement required Braintech to give written notice of good cause to Shafi.

Shafi's entire argument should be rejected by the Court for two simple reasons:

1. The Employment Agreement contains an integration clause which provides that it contains <u>the complete agreement concerning the employment arrangement between the parties</u>. (Ex.A; Employment Agreement, ¶20 emphasis added)  The integration clause bars the introduction of extrinsic evidence, including the notice provision in the Share Purchase Agreement. It simply does not apply to the Employment Agreement, the employment arrangement between the parties, or any issue to be tried in this case.

2. The Employment Agreement does not require Braintech to give Shafi written or verbal notice of good cause or reason for termination. (Ex.A; Employment Agreement, ¶12(d) and (g))

Moreover, if the jury determines that Shafi was terminated for good cause,[1] but without the "notice" of termination contemplated in Paragraph 12(d) of the Employment Agreement,[2]

---

[1] Shafi apparently now concedes that there was good cause for termination, or at least has abandoned the issue, inasmuch as he represents in his Response Brief that "[t]he sole issue to be litigated is whether Shafi was provided 'notice' of termination for any reason (good cause or not)." (Shafi Response Brief, p.2)  Buttressing this point, Shafi has now submitted a proposed verdict form which limits the jury question to whether he received written notice informing him that his termination was for good cause. Consequently, the Court should now enter judgment in favor of Braintech because no reasonable jury could find that the Employment Agreement requires Braintech to give Shafi written notice that his termination was for good cause.

[2] Shafi was, in fact, given notice of termination under Paragraph 12(d) of the Employment Agreement. As will be shown in the Statement of Facts, by communications delivered to Shafi on November 19 and 24, 2008, Shafi was instructed to discontinue performing his job duties and Braintech stopped paying him.

there is no remedy for Shafi because the severance pay provision in Paragraph 12(g) does not compel payment of severance pay simply because Shafi did not receive notice of termination under Paragraph 12(d) of the Employment Agreement. Shafi only seeks severance pay under Paragraph 12(g) of the Employment Agreement in this case and no other damages.

Additionally, if it is determined that Shafi was entitled to be paid during the notice period under Paragraph 12(d), Shafi's continued misconduct, including the destruction of Braintech property and deletion of email following his suspension with pay, relieves Braintech from the 30-day notice requirement. And, even if the Employment Agreement required Braintech to give 30 day notice which was not nullified by Shafi's misconduct, his remedy is limited to a maximum of 30 days pay, less amounts paid to him after November 19, 2008.

As will be shown more fully below, Shafi is simply trying to re-write the Employment Agreement by suggesting that the Share Purchase Agreement imposed some greater obligations on Braintech that existed under the Employment Agreement.

## STATEMENT OF FACTS

Shafi's entitlement to severance pay is strictly based on the express language of the Employment Agreement, and his efforts to re-write the agreement must be rejected. Provisions relevant to the issues the Court has asked the parties to brief include the following:

1. <u>TERMINATION</u>: Termination shall mean the cessation of EXECUTIVE employment by Braintech… which is not promptly…followed by re-employment of the EXECUTIVE by BRAINTECH…." (Ex.A; Employment Agreement, ¶12)

2. <u>Termination By BRAINTECH</u>: BRAINTECH may terminate the employment of the EXECUTIVE with 30 day notice for any reason…. (Ex.A; Employment Agreement, ¶12(d))

3. <u>Termination By The EXECUTIVE</u>: The EXECUTIVE may terminate this Agreement for

    any reason by giving CEO 30 day's <u>prior written notice</u>. (Ex.A; Employment Agreement, ¶12(e)) (emphasis added)

4. <u>Severance Pay</u>: In the event of a termination of this Agreement by the Company without Good Cause…then the EXECUTIVE or the EXECUTIVE heirs will be entitled to…[severance pay]…. (Ex.A; Employment Agreement, ¶12(g))

5. <u>COMPLETE AGREEMENT</u>: This Agreement (including the Non-Disclosure and Confidentiality Agreement referenced herein) **contains the complete agreement concerning the employment arrangement between the parties** and shall, as of the effective date hereof, supersede all other agreements between the parties. The parties stipulate that neither of them has made any representation with respect to the subject matter of this Agreement or any representation including the execution and delivery of this Agreement except such representations as are specifically set forth in this Agreement and each of the parties acknowledges that [he or she] or it has relied on its own judgment in entering into this Agreement. (Ex.A; Employment Agreement, ¶20(g)) (emphasis added)

Shafi has admitted numerous times in this case that his employment at Braintech was terminated in November 2008:

    Q. Mr. Shafi, just to identify this, I'm handing a letter to you from Mr. Weidinger that appears at tab seven of Shafi Exhibit 1, the big collection of documents, and I just wonder if you could identify that as your termination letter from Mr. Weidinger?

    A. Yes.

    Q. What's the date on that, please?

    A. November 19, 2008. (Ex.B; Shafi at 304-305)[3]

Moreover, just a few weeks ago, Shafi again provided sworn testimony in the Virginia litigation that Braintech terminated his employment on November 19, 2008. Shafi specifically declared

---

[3] Consistent with his admissions that he was terminated on November 19, 2008, Shafi testified that the termination released him from his noncompetition agreement with Braintech and allowed him to start a new company in March 2009 (Advenovation) which competed with Braintech. (Ex.B; Shafi at 26-27) Shafi caused the new company to be incorporated in December 2008, just a few weeks after he was informed of his termination.

under oath, "I was terminated from Braintech on November 19, 2008." (Ex.C; Shafi Declaration, ¶¶2 and 6). Indeed, on November 19, 2008, Shafi was told in person and given written notice that good cause existed to terminate his employment and that Braintech would not accept any further performance from him under the Employment Agreement. (Ex.D; Weidinger 11/19/08 letter)[4] At that time, Shafi was placed on administrative leave with pay and benefits, but, as he has admitted throughout this case and in the Virginia litigation, he knew the Employment Agreement was terminated effective November 19, 2008.

Shortly thereafter, Shafi began destroying company e-mails and other documents, and deleting computer files, thus, causing further harm to the company. (Ex.E; Shafi Response to Request to Admit Nos. 62&63). As a result, on November 24, 2008, Mr. Milton gave Shafi written notice of the misconduct and informed him that Braintech would cease paying him. (Ex.F; Milton 11/24/08 email)

Shafi's efforts to misrepresent the facts in this case are belied by the record evidence, including his own admissions.

## ARGUMENT

I. **THE INTEGRATION CLAUSE IN PARAGRAPH 20 OF THE EMPLOYMENT AGREEMENT PROVIDES THAT THE EMPLOYMENT AGREEMENT CONTAINS THE COMPLETE AGREEMENT CONCERNING THE EMPLOYMENT ARRANGEMENT BETWEEN THE PARTIES AND BARS SHAFI FROM INTRODUCING EXTRINSIC EVIDENCE SUCH AS THE SHARE PURCHASE AGREEMENT TO ADD NOTICE PROVISIONS WHICH DO NOT EXIST IN THE EMPLOYMENT AGREEMENT.**

As set forth in the Statement of Facts, the integration clause in paragraph 20 of the

---

[4] On November 19, 2008, Shafi met in person with Rick Weidinger and Jeff Milton, Braintech's counsel, in Virginia.

Employment Agreement provides that it is the complete agreement <u>concerning the employment arrangement between the parties</u>. Shafi withheld this fact from the Court in his Response Brief.

Delaware courts consistently uphold integration clauses. *See T.P. Inc. of Delaware v. J & D's Pets, Inc.*, 1999 WL 135243, at *5 (Del.Ch.1999)(Ex.G) ("The final contract reflects the totality of the parties' agreement and "purports to be a fully integrated agreement."); *Tracinda Corp. v. DaimlerChrysler A G*, 364 F.Supp.2d 362, 401 (D.Del.2005) (written documents governing the transaction contain integration clauses which precludes "parties from incorporating any oral representations into the parties' agreements.").

It is universally recognized that evidence of prior or contemporaneous agreements that contradict or add to the terms of an integrated and complete writing is inadmissible. *Carey v. Shellburne, Inc.*, 224 A.2d 400, 402 (Del.1966). Shafi's contention that extrinsic evidence contained in the Share Purchase Agreement should be admitted to establish proper notice under the Employment Agreement must be rejected. The Employment Agreement is a completely integrated writing which specifically states that "[t]his Agreement…contains the complete agreement concerning the employment arrangement between the parties and shall…supersede all other agreements between the parties."  This integration clause is in no way vague or ambiguous.

Accordingly, the Employment Agreement is a fully integrated contract regarding the employment arrangement between the parties and supersedes any other notice provision contained in the Share Purchase Agreement or any other document or verbal understandings between the parties. Consequently, Defendant's Motion in Limine to Exclude the Share Purchase Agreement should be granted and Shafi should be precluded from referring to, introducing, or presenting evidence of the Share Purchase Agreement.

> **II. THE EMPLOYMENT AGREEMENT DOES NOT REQUIRE BRAINTECH TO GIVE WRITTEN OR VERBAL NOTICE OF GOOD CAUSE OR THE REASON FOR TERMINATION, AND SHAFI IS NOT ENTITLED TO SEVERANCE PAY UNDER PARAGRAPH 12(g) OF THE EMPLOYMENT AGREEMENT IF THE JURY FINDS HE WAS TERMINATED FOR "GOOD CAUSE" BUT WITH LESS THAN 30 DAY NOTICE BECAUSE LACK OF NOTICE DOES NOT TRIGGER SHAFI'S RIGHT TO SEVERANCE PAY.**

The plain language of the Employment Agreement makes clear that Braintech was not required to give notice of good cause or the reason for termination. Paragraph 12(g) unambiguously states: "In the event of a termination of this Agreement by the Company without Good Cause…then EXECUTIVE is entitled to…[severance pay]…." It does not say that Shafi is entitled to severance pay if the Company fails to give notice of the reason for termination (or even fails to give notice of termination).

Rather, the Employment Agreement provides that Braintech may terminate the employment of Shafi with 30 day notice for any reason. (Ex.A; Employment Agreement, ¶12(d)). Braintech was not required to give <u>written</u> notice or <u>prior</u> notice. In stark contrast to the notice required by Braintech, Shafi was required to give "<u>30 day's prior written notice</u>." (Ex.A; Employment Agreement, ¶12(e)) (emphasis added).

Paragraph 12 of the contract expressly defines the word termination: "(t)ermination shall mean the <u>cessation of EXECUTIVE employment</u> by Braintech … which is not promptly…followed by re-employment of the EXECUTIVE by BRAINTECH…." (Ex.A; Employment Agreement, ¶12) Although the word "cessation" is not defined in the Employment Agreement, Merriam-Webster's Collegiate Dictionary defines "cessation" as a "temporary or final ceasing (as of action): Stop." *Merriam-Webster's Collegiate Dictionary*, 203 (Eleventh

6

Edition, 2003)[5]

> Shafi's "employment" is defined in the Employment Agreement:
>
> "BRAINTECH, as of August 16, 2008, hereby employs EXECUTIVE to perform the duties and render services customarily required for the position hereinafter set forth, and EXECUTIVE hereby accepts said employment and agrees faithfully to perform said duties and render said services, subject to the terms and conditions of this Agreement." (Ex.A; Employment Agreement, ¶1)

As admitted by Shafi, his employment was terminated when Braintech instructed him to discontinue performing his job duties on November 19, 2008.

### III. SHAFI'S DESTRUCTION AND THEFT OF BRAINTECH'S PROPERTY CONSTITUTED INTENTIONAL MISCONDUCT THAT ENTITLED BRAINTECH TO IMMEDIATELY TERMINATE HIM WITHOUT PAY.

Following the termination letter given to Shafi on November 19, 2008, Braintech became aware that Shafi had been deleting and/or destroying a significant number of emails from Braintech's server. On November 24, 2008, Shafi was notified in an email from Jeff Milton, Special Counsel to Braintech, that Braintech considered that behavior to constitute intentional misconduct. He was directed to cease and desist the destruction and theft of Braintech and/or Shafi, Inc. documents, whether electronic or paper, and further admonished to return all Braintech and Shafi, Inc. documents, including documents and emails that he deleted, and all other property and equipment including computers and cell phone. (Ex. F; Milton email). In that same email, Mr. Milton advised Shafi that Braintech would no longer pay his salary or benefits. *Id.* Under well established principles of contract law, Shafi's improper and outrageous

---

[5] Under well-settled case law, Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract. *Lorillard Tobacco Company v. American Legacy Foundation,* 903 A.2d 728 (Del. Supr., 2006).

7

destruction of Braintech's property gave Braintech the right to immediately sever its employment relationship with him, including any duty to continue to pay him during the 30 day notice period which started on November 19, 2008.

In *Griep v. Yamaha Motor Corporation U.S.A.,* 120 F.Supp.2d 1196 (D. Minn. 2000), Geoffrey Griep, a former employee, brought an action against Yamaha for breach of a provision of their employment contract that required 60 days' notice prior to termination. Yamaha had summarily terminated Griep after, on a dare, he unzipped his pants and exposed himself to a woman at a company banquet. Griep argued that Yamaha had failed to warn him that egregious conduct at a company event could result in immediate discharge without the requisite contractual notice. Rejecting that argument, the court held that such an employment term is implied by law. The court further held as follows:

> Fundamental principles of contract law gave Yamaha the legal right to terminate Griep's employment under these outrageous circumstances. All employees owe a duty of loyalty to their employers…Consistent with the duty of loyalty, employees owe an obligation not to engage in conduct detrimental to their employer's interests…Thus, an implied contractual obligation exists on the part of an employee to observe rudimentary principles of appropriate behavior. *Griep, supra,* 120 F.Supp.2d at 1199-1200 (citations omitted).[6]

---

[6] It is also a well-settled rule of contract law that one who commits the initial breach cannot complain of a subsequent breach by the other party. "The general rule is that a party committing a substantial breach of a contract cannot maintain an action against the other contracting party…for a subsequent failure to perform if the promises are dependent. 17 Am.Jur.2d Contracts, Sec 366 p. 807. A substantial or material breach is one which touches the fundamental purposes of the contract and defeats the object of the parties making the contract." *Malloy v. Judge's Foster Home Program, Inc.,* 229 Mont. 317, 321-322 (1987). In the instant case, Braintech will establish at trial that Shafi abjectly refused to perform his job duties under the Employment Agreement. This initial breach by Shafi caused Braintech to sever its employment relationship with him. Shafi's subsequent egregious destruction of company documents constituted another breach of the agreement which prevents Shafi from complaining that Braintech breached the Employment Agreement by failing to give 30 day notice or continuing his salary for 30 days.

The court thus concluded that Yamaha had no duty to provide Griep with the 60 days' notice prior to ending his employment and therefore had committed no breach. The court went on to observe that even if it were to hold that Yamaha did breach the employment agreement by not giving the notice, Griep would only be entitled to an award of salary prorated to the length of the notice period, i.e., 60 days' pay. *Id.*

Delaware, likewise, recognizes an employee's duty of loyalty to his employer. Heeding principles of agency law, "an agent owes his principal a duty of good faith, loyalty and fair dealing." *Science Accessories Corp. v. Summagraphics Corp.*, 425 A.2d 957, 962 (Del 1980). An agent must not place himself "in a position antagonistic to his principal concerning the subject matter of his agency." *Id.* The duty of loyalty applies not only to directors and officers but also to key management personnel. *Id.*

IV. **BRAINTECH PROPERLY PROVIDED SHAFI WITH NOTICE UNDER THE EMPLOYMENT AGREEMENT ON NOVEMBER 19, 2008 AND CONTINUED HIS SALARY FOR THE 30 DAY NOTICE PERIOD UNTIL IT WAS DISCOVERED THAT SHAFI ENGAGED IN INTENTIONAL MISCONDUCT THAT ENTITLED BRAINTECH TO IMMEDIATELY SEVER THE EMPLOYMENT RELATIONSHIP AND TO STOP PAYING HIM ON NOVEMBER 24, 2008.**

Although Shafi now takes the position that he was never given notice of his termination by Braintech, his own sworn testimony directly contradicts that assertion and demonstrates that he was given such notice on November 19, 2008. In his declaration filed in the Virginia litigation, Shafi admits at Paragraph 2 that "(a)fter I was terminated from Braintech in November, 2008, I formed a Michigan corporation known as Advenovation." (Ex.C; Shafi Declaration). Similarly at Paragraph 6 he admits "(s)ince the day I was terminated from

9

Braintech on November 19, 2008…" *Id.*  Shafi also acknowledged in his deposition that he was given a termination letter signed by Rick Weidinger on November 19, 2008. (Ex.B; Shafi at 304-305).

As noted above, Braintech continued to pay Shafi after November 19, 2008 (during what clearly was the 30 day notice period).  It was not until Braintech abruptly discovered on or about November 24, 2008 Shafi's egregious misconduct in destroying company documents that it exercised its right to immediately terminate his employment for that misconduct, thus also suspending its obligation to pay him out for the balance of the notice period.  Thus, Shafi's new position that he was never given written notice of termination for good cause should be rejected.

**V. EVEN IF SHAFI'S INTENTIONAL MISCONDUCT DID NOT EXTINGUISH THE OBLIGATION TO GIVE 30 DAY NOTICE OF TERMINATION, SHAFI'S REMEDY IS LIMITED TO 30 DAYS PAY, LESS ANY AMOUNTS HE RECEIVED AFTER NOVEMBER 19, 2008, BUT THE ONLY REMEDY SHAFI SEEKS IN THIS ACTION IS SEVERANCE PAY, NOT BACK WAGES FOR FAILURE TO GIVE PROPER NOTICE.**

Even if Shafi could persuade the Court that his intentional misconduct did not relieve Braintech of the 30 day notice requirement, he cannot unring the bell which he set in motion in his sworn testimony here and in Virginia. He clearly was given notice of termination on November 19, 2008, and construed that to be his "letter of termination." Accordingly, his only remedy is the equivalent of 30 days' pay, less all amounts he already was paid after November 19, 2008.

It has long been held that where a contract of employment "…expressly empowers an employer to terminate the contract upon giving notice, recovery for wrongful breach is limited to the notice period." *Odell et al. v. Humble Oil & Refining Co.,* 201 F.2d 123, 128 (10th Cir. 1953).

10

In *Odell, supra,* the contract at issue provided that either party could terminate the contract upon 30 days' written notice. The court found that under the provisions of the contract, the maximum amount recoverable for breach of the contract was one month's salary. *Id.*

Similarly, in *Knight v. Interco Incorporation,* 873 F.2d. 1125 (8th Cir. 1989), the plaintiff was a manufacturer's representative who sued his employer for breach of contract after he was terminated without being given the 30 days' notice required under the parties' contract. The court upheld the jury's verdict in favor of the employee, finding that the employer had breached the contract because it had not provided the required notice. However, it affirmed the finding of the jury that the plaintiff's damages were limited to the net commissions the plaintiff would have earned during the thirty day notice period. 873 F.2d 1125, 1128. *See also, Maltby v. J.F. Images, Inc.,* 632 P.2d 646 (Colo Ct App 1981)(holding that where employment contract gave employer right to terminate employee upon ten days' written notice and employee received oral actual notice of termination, employee was entitled to ten days' pay from date of actual oral notice); *Paul v Deloitte & Touche, LLP,* 974 A.2d 140 (SCt Del 2009)(employee not entitled to "expectation" damages under severance agreement where employee's reasonable expectations under the severance agreement had been met and he had therefore suffered no damage).

Based on the foregoing, even if Shafi was entitled to 30 day notice of termination and the jury finds that he did not receive 30 days notice, or that Braintech was justified in giving less than 30 days notice, Shafi is entitled to a maximum amount of 30 days' pay less the amounts paid to him after November 19, 2008.

### VI. THE EMPLOYMENT AGREEMENT DOES NOT NEED TO BE PLACED IN CONTEXT, AND EVEN IF IT DOES, THE CONTEXT IS ESTABLISHED BY THE PARTIES' STIPULATION OF FACT THAT IT WAS PART OF A LARGER TRANSACTION.

In addition to the specious argument that the Share Purchase Agreement is relevant to notice in this case, Plaintiff suggests that he needs to place it in front of the jury <u>to place the Employment Agreement in context</u>. Surely, a 200-page document is not needed to place an 8-page document in context.

Equally important, the parties have stipulated to a fact that places the Employment Agreement in context:

> As part of a larger transaction on August 12, 2008, Shafi sold his company's, Shafi Inc., and Shafi Innovation Inc., to Braintech for a combination of cash, stock in Braintech, and a three-year Employment Agreement.

The Share Purchase Agreement is simply not relevant. It does not make the existence of any fact in this case more probable or less probable. <u>FRE 401</u>. "Evidence which is not relevant is not admissible." <u>FRE 402</u>.

### CONCLUSION

WHEREFORE Braintech requests that this Honorable Court grant its Motion in Limine and exclude the introduction of the Share Purchase Agreement which is identified as Plaintiff's Exhibit 500. Moreover, because Shafi insists that the sole issue for the jury to decide in this case is whether he received written notice informing him that his termination was for good cause, the Court should enter judgment for Braintech because the plain and unambiguous language of the Employment Agreement does not require written notice informing him that his termination was for good cause, and even if it did, lack of notice does not trigger entitlement to severance pay.


       Respectfully submitted,

       NEMETH BURWELL, P.C.

By:    s/Susan D. Koval
       Anne Widlak (P35763)
       Susan D. Koval (P59297)
       Attorneys for Braintech, Inc.
       200 Talon Centre Drive, Suite 200
       Detroit, Michigan 48207
       (313) 567-5921
       awidlak@nemethburwell.com
       skoval@nemethburwell.com

June 16, 2011

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2011, I electronically filed the foregoing paper (Braintech Inc's Reply Brief to Shafi's Response to Motion in Limine to Exclude Share Purchase Agreement) with the Clerk of the Court using the ECF system, which will send notification of such filing and service of such documents to all parties via their counsel of record at the e-mail addresses disclosed on the Notice of Electronic Filing receipt.

                s/Susan D. Koval
                Susan D. Koval (P59297)
                NEMETH BURWELL, PC
                Attorney for Braintech, Inc.
                200 Talon Centre Drive, Suite 200
                Detroit, Michigan 48207
                (313) 567-5921
                skoval@nemethburwell.com
                P59297