**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ADIL SHAFI, an individual,

      Counter-Plaintiff,

                                      Case No. 09-10454
vs                                         Hon. Victoria A. Roberts

BRAINTECH, INC,

      Counter-Defendant,

_____/

AND

ROBOTIC VISION TECHNOLOGIES, LLC, and
FREDERICK WEIDINGER, an individual,

                                        Case No. 11-12909
      Plaintiff                               Hon. Victoria A. Roberts
vs

ADIL SHAFI,

      Defendant.

_____/

**SHAFI'S SUR REPLY TO BRAINTECH'S MOTION IN LIMINE REGARDING**
**INTRODUCTION OF THE SHARE PURCHASE AGREEMENT**

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES……………………………………………………………………..iii

ARGUMENT……………………………………………………………….……………….……1

    A.    THE "NOTICE PROVISION" WITHIN THE SHARE PURCHASE
          AGREEMENT WILL CLARIFY THE AMBIGUOUSLY WORDED
          EMPLOYMENT AGREEMENT."                         1

    B.    IN THE EVENT THAT BRAINTECH HAD GOOD CAUSE TO
          TERMINATE SHAFI, BRAINTECH'S FAILURE TO
          PROPERLY NOTICE SHAFI'S TERMINATION COULD
          TRIGGER A SEVERANCE PAY AWARD.                 3

# INDEX OF AUTHORITIES

Cases                                                                                    Page(s)

*Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232
 (Del. 1997)..................................................................................................3

*Microstrategy Inc. v. Acacia Research Corp.*, 2010 Del. Ch. LEXIS 254
 (Del. Ch. Dec. 30, 2010) ...........................................................................3

*Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d
 1192, 1196 (Del. 1992) ..............................................................................4

*United States ex rel. B & R, Inc. v. Donald Lane Constr.*, 19 F. Supp. 2d 217 (D. Del.
 1998)………………………………………………………………………………….4

*Radio Corp. of Am. v. Philadelphia Storage Battery Co.*, 23 Del. Ch. 289, 6 A.2d 329,
 334 (1939) …………………………………………………………….………….5

*Wyckoff v. Garrison*, 43 Del. Ch. 465, 237 A.2d 139, 142 (1967). ……………..….……5

## I.   ARGUMENT

Braintech asserted, "The Employment Agreement does not require Braintech to give written or verbal notice of good cause or the reason for termination…" and "…lack of notice does not trigger Shafi's right to severance pay." Herein lies the two issues this Court has asked the parties to address.

**A.    THE "NOTICE PROVISION" WITHIN THE SHARE PURCHASE AGREEMENT WILL CLARIFY THE AMBIGUOUSLY WORDED EMPLOYMENT AGREEMENT.**

12(d) of the Employment Agreement states, "BRAINTECH may terminate the employment of the EXECUTIVE with 30 day notice for any reason." 12(e) states, "The EXECUTIVE may terminate this Agreement for any reason by giving CEO 30 day's prior written notice." The discernible difference between 12(d) and 12(e) is that 12(e) specifies that the required 30-day notice must be in writing and 12(d) leaves the form of notice up for interpretation.

Braintech's Reply Brief concedes that 12(e) required Shafi "to give 30 day's prior written notice." If hypothetically, Shafi had failed to give a *written* termination notice within *30 days* of his actual termination, his termination would have been invalid. That hypothetical introduces the logical disconnect in this matter regarding whether paragraph 12(d)'s 30-day notice was similarly required to be in writing. Braintech argues that 12(d) does not require them to give "written notice or prior notice," even though they admit that 12(e) required written *and* prior notice. Braintech's argument is flawed.

First, the Court should observe that the word "prior" in 12(e) offers no assistance in interpreting the termination form required. The word "prior" does not give "30 days" legs nor does its absence in 12(d) effect the duration of the notice. The period of "30 days" means the same in both paragraphs. "30 days" means that notice was required

30 days prior to when termination could take effect.

The only other difference between 12(d) and 12(e) is "for any reason" versus "written notice." The phrase "for any reason" is of little significance here as it does not modify anything in the paragraph. "For any reason" simply stands for the intention that 30 days notice before an effective termination was required no matter what the given reason for Shafi's termination may have been.

By this reasoning, the Agreement is still ambiguous as to what form, whether it be written or otherwise, the 30 days notice was required to be put forth. For that reason the "notice" provision in the Share Purchase Agreement should come in for the limited purpose of explaining the type of notice required in the event of termination.

The notice provision in the Share Purchase Agreement is fair game to clarify the Employment Agreement for two reasons. First, the Employment Agreement is attached as Exhibit 5 of the Share Purchase Agreement and is thereby incorporated by reference and integrated into the Share Purchase Agreement. The notice provision simply clarifies that if "notice" is pertinent other places in the Agreement, including its exhibits, there is a particular form for notice to be served. The "notice" provision instructs, "All notices and other communications hereunder shall be in writing and shall be deemed given if sent by facsimile, delivered by hand, sent by a reputable nationwide courier service, or mailed…at the following address." "Seller" address is then listed as Adil Shafi, 7517 Radcliffe in Brighton, Michigan.

Second, the notice provision is fair game because 12(d) is ambiguous. Particularly in light of 12(e)'s clear wording, 12(d) leaves the exact form to deliver termination notice open to interpretation. Delaware law prefers that "unambiguous written agreements should be enforced according to their terms." *Eagle Indus., Inc. v.*

*DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997). However, a contract is ambiguous when the language "in controversy [is] reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Microstrategy Inc. v. Acacia Research Corp.*, 2010 Del. Ch. LEXIS 254 (Del. Ch. Dec. 30, 2010). In this case, the termination notice form is ambiguous in that it is absent altogether. In light of the very clear "written notice" requirement of 12(e), the Share Purchase Agreement's "notice" provision is thereby necessary to explain 12(d)'s ambiguity.

Accordingly, this Court should allow the Share Purchase Agreement for the limited purpose of contesting the type of form required to serve notice of termination.

**B. IN THE EVENT THAT BRAINTECH HAD GOOD CAUSE TO TERMINATE SHAFI, BRAINTECH'S FAILURE TO PROPERLY NOTICE SHAFI'S TERMINATION COULD TRIGGER A SEVERANCE PAY AWARD.**

The Employment Agreement leaves no doubt that Shafi was entitled to "30 day notice" in the event of termination for "*any reason*." As a result, there are still questions of fact in this matter as to whether Shafi was (a) terminated for good cause; (b) terminated without proper notice; or (c) terminated at all.

In its Reply Brief, Braintech now erroneously claims that Shafi's termination notice was provided in a November 19, 2008 letter. In fact, the letter (attached to Braintech's Response) informed Shafi that, "Braintech, Inc. has decided to rescind the August 12, 2008 acquisition of Shafi Inc. and 80% of the stock of Shafi Innovation Inc." Moreover, the letter explicitly states, "We specifically reserve our rights to terminate your Employment Agreement based upon the Good Cause that exists as of today." Moreover, Braintech's November 24, 2008 letter similarly confirms that Shafi was not terminated for good cause because Braintech's foremost intent was to ***rescind*** Shafi's

entire Agreement. The November 24 letter, instructed Shafi, "Effective as of the close of business on November 24, 2008, your status with Braintech, Inc. is changed to administrative leave without pay or benefits."

Braintech's November letters conclusively show that Braintech elected to rescind Shafi's Agreement, rather than terminate him for good cause. Thus, the "Severance Pay" clause must take effect. However, even if somehow, as Braintech alleges, Shafi was terminated for "good cause," proper 30 day notice was not given.

As a matter of contract construction, no 12(d) "Termination By BRAINTECH" occurred if the 30 day notice was not given. The "30 day notice" language in 12(d) constituted a condition precedent to a good cause termination. "A condition precedent is a condition which must happen or be performed before…some right dependent thereon accrues…." *United States ex rel. B & R, Inc. v. Donald Lane Constr.*, 19 F. Supp. 2d 217 (D. Del. 1998) (*Quoting* Black's Law Dictionary at 266 (5th ed. 1979). Even if Braintech's November 19 letter apprised Shafi of his termination, Braintech alleges that it actually terminated Shafi on November 24, short of the 30 day requirement.

Therefore, to answer this Court's question[1], if Braintech failed to properly notify Shafi of his termination and a good cause termination never occurred, Shafi is entitled to the "lump sum payment" severance. The "Severance Pay" paragraph in the Employment Agreement reads, "In the event of a *termination* of this Agreement by the Company without Good Cause…" By imposing Delaware's strict contract construction laws that require "Words [to] be given their ordinary meaning,"[2] the word "termination" used in the Severance Pay paragraph should have the same meaning as "termination" used in paragraph 12(d) and similarly require a "30 day notice for any reason." It is a

---

[1] "What remedy is appropriate should a jury find that Shafi was terminated for 'good cause,' but without 'notice?'"
[2] *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992).

well recognized rule of construction that "Words used in one sense in one part of a contract are presumed to have been used in the same sense in another part of the same document." *Radio Corp. of Am. v. Philadelphia Storage Battery Co.*, 23 Del. Ch. 289, 6 A.2d 329, 334 (1939); *Wyckoff v. Garrison*, 43 Del. Ch. 465, 237 A.2d 139, 142 (1967). If Braintech failed to adequately terminate Shafi with the requisite 30 day notice, then Shafi was not subject to a good cause termination. Furthermore, if no good cause termination occurred, Shafi is entitled to an amount in line with the "lump sum" severance pay, which is ultimately for the jury to decide.

Accordingly, this Court should deny Braintech's Motion in Limine regarding the Share Purchase Agreement, leave any judgment regarding Shafi's potential to recoup "Severance Pay" to the jury, and allow this matter to proceed to trial.

<br>

Respectfully submitted,
BERRY MOORMAN P.C.

By:  s/ Noah S. Hurwitz
    Sheryl A. Laughren (P34697)
    David M. Foy (P42574)
    Noah S. Hurwitz (P74063)
    Attorneys for Adil Shafi
    535 Griswold, Suite 1900

Dated: November 4, 2011         Detroit, Michigan 48226
    (313) 496-1200

## CERTIFICATE OF SERVICE

STATE OF MICHIGAN )
                                  )ss
COUNTY OF WAYNE  )

I hereby certify that on the 4th day of November, 2011, a copy of the foregoing Sur Reply Brief to Braintech's Motion in Limine Regarding the Share Purchase Agreement was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Respectfully submitted,

BERRY MOORMAN P.C.

By:   s/ Noah S. Hurwitz
        Sheryl A. Laughren (P34697)
        David M. Foy (P42574)
        Noah S. Hurwitz (P74063)
        Attorneys for Adil Shafi
        535 Griswold, Suite 1900
        Detroit, Michigan 48226
        (313) 496-1200

{00037384;v1 }                                6