# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ADIL SHAFI, an individual,

      Counter-Plaintiff/Third Party Plaintiff,

                                            Case No. 09-10454

vs                                      Hon. Victoria A. Roberts

FREDERICK WEIDINGER and
BRAINTECH, INC,

      Third Party Defendant/Counter-Defendant,

_____/

AND

ROBOTIC VISION TECHNOLOGIES, LLC, and
FREDERICK WEIDINGER, an individual,       Case No. 11-12909

                                            Hon. Victoria A. Roberts

      Plaintiff

vs

ADIL SHAFI,

      Defendant.

_____/

## DEFENDANT/COUNTERCLAIM PLAINTIFF'S, ADIL SHAFI'S,
## RULE 12(b)(6) MOTION TO DISMISS CASE 11-12909 AND REQUEST FOR COSTS

      NOW COMES Defendant in Case No. 11-12909, Adil Shafi ("defendant" or "Shafi"), by

and through his attorneys, Berry Moorman P.C., and for his Motion to Dismiss pursuant to Fed.

R. Civ. P. 12(b)(6) states as follows:

      As explained more fully in the accompanying brief, which is incorporated herein by

reference, Shafi is entitled to dismissal of the Complaint made by Frederick Weidinger

("Weidinger") and Robotic Vision Technologies, LLC ("RVT") because their claims, in case 11-

12909, are barred by *res judicata,* collateral estoppel, other facial deficiencies.

{00037409;v1 }

**WHEREFORE**, Defendant requests that the Court dismiss the Complaint in case 11-12909 with prejudice and award Shafi attorney fees for having to defend the vexatious action filed by Weidinger and RVT.

Respectfully submitted,

/s/  Noah S. Hurwitz                          _____
Sheryl A. Laughren (P34697)
David M. Foy (P42574)
Noah S. Hurwitz (P74063)
BERRY MOORMAN P.C.
Attorneys for Adil Shafi
535 Griswold, Suite 1900
Detroit, Michigan 48226
(313) 496-1200

Dated: November 4, 2011

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ADIL SHAFI, an individual,

      Counter-Plaintiff/Third Party Plaintiff,

                               Case No. 09-10454

vs                                  Hon. Victoria A. Roberts

FREDERICK WEIDINGER and
BRAINTECH, INC,

      Third Party Defendant/Counter-Defendant,

_____/

AND

ROBOTIC VISION TECHNOLOGIES, LLC, and
FREDERICK WEIDINGER, an individual,      Case No. 11-12909
                                  Hon. Victoria A. Roberts

      Plaintiff

vs

ADIL SHAFI,

      Defendant.

_____/

## DEFENDANT/COUNTERCLAIM PLAINTIFF'S, ADIL SHAFI'S, BRIEF IN SUPPORT OF HIS RULE 12(b)(6) MOTION TO DISMISS CASE 11-12909 AND REQUEST FOR COSTS

## INTRODUCTION

In support of his 12(b)(6) motion to dismiss case No. 11-12909 (the "2011 case") and request for costs, Adil Shafi, ("defendant" or "Shafi") provides this Brief addressing the issues presented.

## INTRODUCTION AND TIMELINE

The 2011 case, in a slightly different form, was dismissed by this Court on June 3, 2010 in case 09-10454 (the "2009 case"). The dismissal was, as a matter of law, with prejudice. The claims made in the 2011 case duplicate the claims which were dismissed in the 2009 case and are barred by the principles of res judicata, collateral estoppel and related doctrines. The 2011 case arises from the same underlying facts as the 2009 case.

The claims of Weidinger in the 2011 case are also subject to dismissal because he was a party to the 2009 case and was therefore subject to the compulsory counterclaim rule. Fed. R. Civ. P. 13. The claims asserted by Weidinger in the 2011 case were known to him while he was a party in the 2009 case, but not asserted by him for tactical reasons at that time. This Court dismissed Weidinger from the 2009 case on his motion for summary judgment on April 5, 2001. That order, granting summary judgment, bars the claims Weidinger asserts in the 2011 case because under Rule 13, Weidinger should have raised the claim in the 2009 case. This case vexatiously subjects Shafi to identical litigation following dismissal of the claims in the 2009 case. Mr. Shafi respectfully asks this Court to award costs under 28 USC 1927 and sanctions for this frivolous and purposefully recycled and improper litigation.

{00037409;v1 }

The key dates and parties are as follows:

Feb. 6, 2009       Braintech Inc., a publicly traded robotic software technology company sues Shafi in the 2009 case in the United States District Court for the Eastern District of Michigan, Case No. 09-10454 ("2009 case").

Frederick Weidinger ("Weidinger") was Braintech's Chief Executive Officer and Chairman of Braintech's Board of Directors.

July 22, 2009      Shafi files counterclaim (amended) against Braintech and Weidinger in the 2009 case. [Doc 19]

Aug. 12, 2009      Braintech and Weidinger file answers to the counterclaim in the 2009 case. [Doc 20]

May 10, 2010       Weidinger forms Robotic Vision Technologies ("RVT") and is its Managing Partner.

May 24, 2010       RVT purchases Braintech's assets at public auction.

June 3, 2010       This Court dismisses all claims made by Braintech and Weidinger in the 2009 case.  Shafi's employment counterclaims remain pending before this Court.

March 14, 2011     RVT and Weidinger file a case in the United States District Court in Virginia, Case No. 1:11cv 250 (TSE/TRJ) ("2011 case").  The 2011 case alleges virtually identical claims as those dismissed by this Court on June 3, 2010.

April 5, 2011      This Court issues Order on counter-defendant's Braintech's and Weidinger's motion for summary judgment in the 2009 case. [Doc 103]   Shafi's claims against Weidinger are dismissed.   Shafi's "Employment Agreement claims" will proceed.  [Doc 103, p 8]

May 23, 2011       Shafi files Rule 12(b)(6) Motion to dismiss the 2011 case.

Even the most cursory examination of the allegations made in the 2011 case reveals that the claims arose from the very same facts, transactions and occurrences as in the 2009 case.  RVT's and Weidinger's run to Virginia followed this Court's final decision on the merits against them issued nearly one year earlier. For these reasons, the claims in the 2011 case have no right to be in this Court.

Weidinger's claims in the 2011 case are also precluded by Fed. R. Civ. P. 13, the compulsory counterclaim rule. Weidinger was both a plaintiff and counterclaim defendant in the 2009 case. He was the former Braintech CEO and Chairman of its Board of Directors. Because Weidinger never asserted a claim against Shafi in the 2009 case, he waived his right to bring any future claims against Shafi that arose out of the substantially same transactions or occurrences.

Moreover, Plaintiffs' claims in the 2011 are facially deficient because (1) the statute of limitations expired on the breach of fiduciary duty claim; (2) defamation was not been pleaded with specificity; and (3) RBT's/Weidinger's claims of unfair competition fail to allege that Shafi made false statements wrongly passed off another's goods as his own, or acted unethically to the competitive disadvantage to defendants.

This Court should not allow RVT and Weidinger to thumb their nose at this Court, its decisions, the court rules and controlling law. This Court must now dismiss their vexatious claims against Shafi and award costs and sanctions pursuant to 28 USC § 1927.

**STATEMENT OF FACTS**

Braintech filed its Complaint in the 2009 case on February 6, 2009 [Doc 1].  Shafi filed counterclaims against Braintech and added Weidinger as a third party defendant [Docs 8, 19]. Dickinson Wright attorneys McNeill and Alamo handled the matter for Weidinger.  Weidinger never asserted a single claim against Shafi in the 2009 case.

Pepper Hamilton LLP represented Braintech until its withdrawal of representation on March 8, 2010 [Doc 27].  On May 24, 2010, Robotic Vision Technologies, LLC ("RVT") purchased Braintech's assets at public auction.

On June 3, 2010, this Court dismissed the Complaints of Braintech for failure to prosecute [Doc 36].  On April 5, 2011, the court granted and denied, in part, Weidinger's and Braintech's motion for summary judgment.  All claims against Weidinger were dismissed as were all claims against Braintech except the employment claims in Counts I and II of the 2009 case [Doc 103].

Approximately a year later, on March 14, 2011, RVT and Weidinger, through the same attorneys, filed a Complaint against Shafi in the Eastern District of Virginia, alleging virtually identical underlying facts and claims. (**Ex. B**.)  On July 1, 2011, the Virginia Court granted Shafi's Motion to transfer the case here.

**A.  The Remaining 2009 Case**

Count I of Shafi's counterclaim in the 2009 case alleges that he was terminated without good cause, in violation of his contract and that he is entitled to a severance benefit of $700,000. Count II seeks damages for breach of his Employment Agreement and the Share Purchase Agreement.  The back-story is that after serving three months as Braintech's COO, Shafi was placed on administrative leave. Shafi alleges that Braintech failed to terminate him in accordance

with his agreements with Braintech.

**B.  The 2009 Case and the 2011 Case**

An examination of the Complaint in the 2009 case [**Ex. A**, Doc 1] and the Complaint in the 2011 case [**Ex. B**, Doc 1] reveals that they have the substantially same identity. For example, **Ex. A** ¶ 16 and **Ex. B** ¶ 7 inform, "Prior to August 12, 2008, Shafi was the President and sole owner of SHAFI Inc ('SI')." **Ex. A** ¶7; **Ex. B** at ¶16.) Continuing on, we learn that Shafi owned a related company, SHAFI Innovation Inc. ("SII"), and that Shafi's companies sold "simplified software solutions for vision guided robots." (**Ex. A**. at ¶9; **Ex. B**. at ¶16.)

"On or about June 19, 2008, Braintech and Shafi entered into a non-binding confidential letter of intent…setting forth Braintech's proposal to purchase all of outstanding stock" of Shafi's companies. (**Ex. A**. at ¶9; **Ex. B** at ¶18.) "Shafi [allegedly] misappropriated $7500 from these funds for his own personal use." (**Ex. A**. at ¶11; **Ex. B**. at ¶19.)

Despite Shafi's alleged "misappropriation," Braintech acquired all SI and SII stock on August 12, 2008. (**Ex. A** at ¶19; **Ex. B** at ¶20.) The transaction generated a (1) Share Purchase Agreement; (2) Lock-Up Agreement; (3) Employment Agreement; (4) Non-Competition Agreement; (5) Letter Agreement regarding indebtedness of SI and SII; and (6) Promissory Notes. (**Ex. A** at ¶19; **Ex. B** at ¶20.) "The purchase price consisted of 2,999,700 shares in capital stock of Braintech to be issued at closing and 1,000,000 to be issued upon the achievement of specified performance criteria." (**Ex. A** at ¶22; **Ex. B** at ¶24.) As part of the transaction, Shafi became Braintech's Chief Operating Officer. (**Ex. A** at ¶10; **Ex. B** at ¶30.)

The 2009 and 2011 Complaints also describe, in identical fashion, the purported misrepresentations by Shafi that Braintech allegedly relied upon in consummating the transaction. For example, Braintech alleges that Shafi Inc. software was not market-ready. (**Ex.**

A at ¶13, 60; **Ex. B** at ¶33.) Shafi Inc., did not have accounts receivables or revenue. (**Ex. A** at ¶59, 60, 61; **Ex. B** at ¶33.) Shafi did not personally produce the technology source codes to operate Reliabot. (**Ex. A** at ¶13,; **Ex. B** at ¶36.)

Both complaints further allege that Shafi failed to fulfill his responsibilities as Braintech's COO. (**Ex. A** at ¶73; **Ex. B** at ¶45.) As a result, "[b]y letter dated November 19, 2008, while reserving their right to terminate for good cause…Braintech notified Shafi that he was being placed on administrative leave with pay and benefits." (**Ex. A** at ¶74; **Ex. B** at ¶46.) According to Braintech (and subsequently RVT and Weidinger), "[s]hortly thereafter, Shafi began destroying company e-mails and other documents and deleting employee computer files, thus causing further harm to the company." (**Ex. A** at ¶75; **Ex. B** at ¶47.) "As a result, on November 24, 2008, Braintech moved Shafi's status to administrative leave without pay and benefits." (**Ex. A** at ¶76; **Ex. B** at ¶48.)

Rather than comparing every allegation, see the comparison chart exhibit. (**Ex. C**, Comparison Chart.) However, the 2011 Complaint added a new allegation, wherein RVT alleged that Braintech "thereby terminate[d] [Shafi] for good cause," the 2009 complaint intentionally omitted the "good cause" allegation because Braintech was attempting to rescind Shafi's contract. Terminating Shafi would have precluded rescission. Of course, after Braintech became defunct and its claims seeking rescission against Shafi were dismissed, plaintiffs decided to file a nearly identical action and to pursue *damages* in the 2011 case. The only material difference between the 2009 case and the 2011 case is the relief sought.

## C. Weidinger and Braintech/RVT were Apprised of the Claims in the 2011 Case in Time to File Them in the 2009 Case

Braintech filed the 2009 case on February 6, 2009 and Shafi filed his second amended counterclaim [Doc 19 "counterclaim"] against Braintech and Weidinger on July 22, 2009. After

answering Shafi's counterclaim on August 12, 2009, neither Braintech nor Weidinger asserted a claim against Shafi even though they were both then cognizant of the claims that they would later assert in the 2011 case.

On August 21, 2009, Braintech and Weidinger's counsel wrote:

> If Mr. Shafi has not resigned from Braintech's Board of Directors, effective November 2008, then Mr. Shafi's actions are, at a minimum, a breach of his fiduciary duties to Braintech, a breach of loyalty to Braintech, self-dealing, misappropriation of corporate opportunity, and improper competition with Braintech.

(**Ex. D**, 8/21/09 VandeWyngearde to Shafi.) Plaintiffs' counsel specifically mentioned Shafi's other entity, "Advenovation," adding "Those actions include, but are not limited to, those taken by Mr. Shafi on behalf of his entity, Advenovation, Inc., which appears to compete with Braintech, Inc., and Mr. Shafi's disparagement of Braintech in the marketplace." *Id.*

## D.  2011 Case Counts I & II: Breach of Share Purchase Agreement Warranties and Breach of Fiduciary Duty

Plaintiffs' Count I in the 2011 case claims that Shafi breached the Share Purchase Agreement warranties.  Braintech alleged the same facts in the 2009 case but pursued rescission instead of damages

Plaintiffs' Count II in the 2011 case alleges breach of fiduciary duty due to Shafi's failure to perform employment duties under his Employment Agreement. Count II is the mirror image of Braintech's defense to Shafi's counterclaims in the 2009 case, which are set for trial.

## E.  2011 Case Count III: Breach of Non-Competition Agreement

Shafi's Non-Competition Agreement provided:

> THIS NON-COMPETITION AGREEMENT (this "Agreement") is being executed and delivered as of August 12, 2008 by ADIL SHAFI (the "Seller") in favor of, and for the benefit of *BRAINTECH*, INC., a Nevada Corporation ("Buyer"), SHAFI, INC., a Michigan corporation ("SI"), and SHAFI INNOVATION, INC., a Michigan corporation ("SII") (SI and SII are also

referred to here in each as a "Company" and together, the "Companies") and each of the Buyer's and each Company's present and future *Affiliates* (as defined below), successors and direct and indirect subsidiaries (including the Buyer and the Companies, collectively the "Covered Parties" and each a "Covered Party")

Plaintiffs' allegations in Count III of the 2011 case alleging Breach of Non-Competition Agreement arise out of the same issues contested in the 2009 case. Plaintiff's claim that Shafi's new company, Advenovation, directly competed with RVT (formerly Braintech); and, that Shafi and his company, Advenovation, competed directly with Braintech prior to its demise and prior to its public auction sale. (**Ex. B** at ¶57.) Plaintiffs also claim that Shafi's association with Aptura Machine Vision Solutions violated the Non-Competition Agreement. (**Ex. B** at ¶67.)

Shafi's Employment Agreement[1] is intertwined with the Non-Competition Agreement[2]. Both agreements were part of the Share Purchase Agreement and are subject to an integration clause that provided:

> Unless otherwise herein specifically provided, this Agreement, including the preamble, recitals, Schedules and Exhibits, and the documents and instruments and other agreements among the Parties as contemplated by were referred to herein constitute the entire agreement among the parties with respect to the subject matter hereof...

The Employment Agreement refers specifically to the Non-Competition Agreement. Section 12 (g) entitles Shafi to a "lump-sum payment" of the remainder of his base salary through the term of the agreement if he is terminated from Braintech. Severance pay is conditioned upon Shafi executing a release as provided in Section 12 (g). That release, or lack thereof, is at issue in the 2009 case because no release was ever tendered to Shafi.

Braintech's failure to tender Shafi's release was consistent with its rescission claim. However, failing to pay Shafi severance nullified the Non-Competition Agreement. Section 12(g) states, "For avoidance of doubt, if severance is paid to EXECUTIVE then the non-compete

---

[1] **Ex. E,** Employment Agreement.
[2] **Ex. F**, Non-Competition Agreement.

*will be effective*." Braintech is dubiously and ironically trying to enforce the Non-Competition

Agreement in the 2011 case, even though it never paid the severance.

## F.  Count IV: Defamation

The Non-Competition Agreement specifically contained a non-disparagement provision,

which read:

> The seller agrees that, during the Restricted Period, the Seller will not knowingly
> engage in any conduct that involves the making or publishing of written or oral
> remarks (including, without limitation, the repetition or distribution of derogatory
> rumors, allegations, negative reports, or comments) that are disparaging,
> deleterious or damaging to the integrity, reputation or good will of one or more
> Covered Parties.  [Ex. F]

The 2011 case complaint conceded that defamatory statements by Shafi would have breached the

Non-Competition Agreement. (**Ex. B** at ¶112.)

Similar to the broad reach of the Non-Competition Agreement, the Non-Disparagement

clause applied to "Covered Parties," defined as Braintech and its "Affiliates." RVT, as

Braintech's putative successor, is a Covered Party. So too is Weidinger, as an "Affiliate."

Affiliate is defined as:

> Any person or entity that, directly or in directly, Controls, is Controlled by, or is
> under common Control with or of, such entity." The term "Control" (including,
> with correlative meaning, the terms "Controlled by" and "under common Control
> with"), as used with respect to any entity, means the possession, directly or in
> directly, of the power to direct or cause the direction of the management and
> policies of such entity, whether through the ownership of voting securities, by
> contract or otherwise.

Braintech's 2009 Annual Report showed Weidinger as the President, Chief Executive

Officer, Chairman of the Board of Directors, and owner of over 31 percent of Braintech's voting

securities. (**Ex. G**, 2009 Annual Report.) Therefore, Weidinger is undeniably an "Affiliate" and

may have had a viable cause of action against Shafi in 2009.  However, Weidinger failed to

assert a claim for Defamation or Breach of Non-Competition Agreement in 2009 because it

could have undercut Braintech's rescission claim. Weidinger's mood obviously changed in Virginia.

## <u>STANDARD OF REVIEW</u>

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co.*, 78 F.3d at 1134 (6th Cir. 1996). As the Supreme Court recently held in *Iqbal*, "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In conducting this analysis, the Court may consider the pleadings, exhibits attached thereto, and documents referred to in the complaint that are central to the plaintiff's claims. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

A complaint may also be dismissed where *res judicata*, a final judgment on the merits, bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 973.  If the issues raised by plaintiffs in this suit were raised or should have been raised in a previous suit, such claims must be dismissed.

## ARGUMENT

Plaintiffs' claims in the 2011 case are barred by the doctrine of collateral estoppel and *res judicata* because they mirror those which were actually litigated in the 2009 case or could have been reasonably pursued. As a result of plaintiffs' transparently duplicative lawsuits, this Court should dismiss Plaintiffs' Complaint and award Shafi attorney fees.

### I.    *RES JUDICATA* BARS PLAINTIFFS' NEW CLAIMS

Plaintiffs' claims in the 2011 case arose from the exact same transactions or occurrences that were litigated in the 2009 case and should be barred by *res judicata*. *Res judicata*, or "claim preclusion," holds that any claim that could have been raised in a prior lawsuit should have been raised then and cannot be raised in a subsequent lawsuit. *White v. Colgan Electric Co., Inc.*, 781 F.2d 1214, 1216 (6th Cir. 1986).

Under the Supreme Court's holding in *Montana v. United States*, 440 U.S. 147, 153; 99 S. Ct. 970 (1979), *res judicata* bars relitigation of all claims that were actually litigated or could have been litigated in the prior action. *Westwood Chemical Co., Inc. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981). Indeed, the long standing general rule set down by the U. S. Supreme Court in 1894 is that a party has no right to maintain two distinct cases involving the same subject matter in the same court. *United States v. Haytian Republic*, 154 U.S. 118, 123-24, 14 S. Ct. 992 (1894).

For its part, the Michigan Supreme Court has taken a "broad approach" to *res judicata*, holding that the doctrine "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair v. State,* 470 Mich. 105, 121; 680 N.W.2d 386 (2004).

There are four requirements for establishing *res judicata*: (1) a final decision on the

merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997).

### 1.   This Court Previously Reached a Final Decision on the Merits Against Weidinger and Braintech/RVT.

On June 3, 2010, this Court dismissed Braintech's 2009 claims for failure to prosecute. The Order did not indicate whether dismissal was with or without prejudice. However, Federal Rule of Civil Procedure, Rule 41(b) makes it clear that the Court's prior dismissal in this case was a judgment on the merits which precludes any subsequent action on the claim. Rule 41(b) provides:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, or improper venue, or for failure to join a party under Rule 19, *operates as an <u>adjudication on the merits</u>*.

Fed. R. Civ. p. 41 (b).

Furthermore, the Sixth Circuit interprets such orders as having preclusive effect. The *Stelts* court dismissed a former employee's suit for lack of prosecution. The Sixth Circuit held that the dismissal constituted a final judgment on the merits. *Stelts v. Univ. Emergency Specialists, Inc.,* 20 F. App'x 448 (6th Cir. 2001); *See Proctor v. Millar Elevator Service Co.*, 303 U.S. App. D.C. 420; 8 F.3d 824 (1993) (dismissal for **failure to prosecute** pursuant to Fed. R. Civ. P. 41(b) operates as an adjudication upon the merits unless the district court in the order otherwise specifies); *NAACP v. Hunt*, 891 F.2d 1555 (11th Cir. 1990) (order which dismissed claims was a final **adjudication on the merits** for *res judicata* purposes even though it was not

clear if the court dismissed the claims under Rule 12(b)(6) or Rule 41(b)); *Holder v. City of Cleveland*, 287 Fed. App'x. 468, 470 (6th Cir. 2008) (the district court's decision to dismiss was a final decision on the merits). Thus, this Court's dismissal for failure to prosecute constituted a final judgment on the merits.

### 2.    A Subsequent Action Between the Same Parties or their Privies.

Second, this case undoubtedly involves the same parties or their privies who were involved in the 2009 case. To be in "privity" is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert. The outer limit of the doctrine traditionally requires both a "substantial identity of interests" and a "working functional relationship" in which the interests of the nonparty are presented and protected by the party in the litigation. *Adair v. State*, 470 Mich. 105, 122 (2004). Weidinger was a "same party" counterclaim defendant in the 2009 case and RVT claims to be privy to Braintech by virtue of purchasing Braintech and stepping into its shoes. Both parties satisfied the second *res judicata* factor.

### 3.    An Issue in the Subsequent Action which was Litigated or Which Should have Been Litigated in the Prior Action.

Plaintiffs could have and should have litigated their claims raised in the 2011 case in the 2009 litigation. Shafi was terminated in 2008. By February 6, 2009, Braintech was sufficiently apprised of Shafi's Share Purchase Agreement, Non-Competition Agreement, and alleged breach of fiduciary duty so as to pursue Shafi in this Court. By August 12, 2009, Weidinger was similarly apprised when he answered Shafi's counterclaim and his counsel confronted Shafi with the claims that were ultimately raised in the 2011 case (**Ex. B**).

Plaintiffs cannot explain or try to excuse their lack of initiative to this Court with an assertion that the claims were unknown to them during the 2009 case litigation. Plaintiffs'

counsel's letter dated August 21, 2009 (nine days after Shafi's counterclaim was filed) threatened "Mr. Shafi's actions are, at a minimum, a breach of his fiduciary duties to Braintech, a breach of loyalty to Braintech, self-dealing, misappropriation of corporate opportunity, and improper competition with Braintech." Yet, Braintech and Weidinger left those claims unpled.

As for those 2011 case claims directed toward Shafi's dealings with Advenovation and disparagement of Weidinger, the letter states, "Those actions include, but are not limited to, those taken by Mr. Shafi on behalf of this entity, Advenovation, Inc., which appears to compete with Braintech, Inc., and Mr. Shafi's disparagement of Braintech in the marketplace." The August 21, 2009 letter conclusively establishes plaintiffs' awareness of the claims made in the 2011 case during the 2009 litigation and their knowing election not to file them.

Accordingly, plaintiffs have brought litigation in the 2011 case that was previously known to them and ripe for litigation in the 2009 case.

### 4.    There is an "identity" between the causes of action.

There is an identity between the causes of action if the claims arose out of the same transaction or series of transactions, or arose out of the same core of operative facts. *Browning v. Levy*, 283 F.3d 761, 773-74 (6th Cir. 2002). The evidence overwhelmingly demonstrates that both cases arose from the same transaction.

The majority of facts in the 2009 case were copied and pasted to the complaint in the 2011 case.

The Sixth Circuit has described *res judicata* as "extinguish[ing] all rights of the plaintiff to remedies against the defendant  with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Walker v. General Tel. Co.*, 25 F. App'x 332, 336 (6th Cir. 2001). The complaint in the 2011 case unquestionably arose from the

transaction, or series of connected transactions, out of which the 2009 action arose. In reality, there could be no clearer case of identity of causes. "Identity of causes of action means an identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981). There can be no mistaking the common origin of the 2009 case and the 2011 case.

For the reason that all the factors warranting *res judicata* have been met, this Court must dismiss plaintiffs' claims. Moreover, because plaintiffs' vexatious intent is so self-evident from the pleadings, defendant is entitled to attorney fees under 28 USC § 1927 for bringing such transparently duplicative pleadings.

## II.   COLLATERAL ESTOPPEL BARS PLAINTIFFS' CLAIMS

Plaintiffs' claims in the 2011 case that were previously raised in the 2009 case are barred by the doctrine of collateral estoppel or issue preclusion. Collateral estoppel precludes litigation of a specific issue where (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. *NAACP, Detroit Branch v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987).

The requirements for applying collateral estoppel have been met in this case in regards to plaintiffs' Counts I and II. Count I claims Shafi breached the Share Purchase Agreement warranties. This issue was alleged in the 2009 case. However, where plaintiffs sought rescission in that case, plaintiffs now want damages. Similarly, Count II alleges breach of fiduciary duty due to Shafi's failure to perform employment duties under his Employment Agreement. Count II

is the mirror image of Braintech's (who RVT claims to be in the shoes of) defense to Shafi's counterclaims in the 2009 case.

Collateral estoppel is further warranted because plaintiffs' claims arising out of alleged misinterpretations, fraud and breach of the Sale Agreements were adjudicated against them on the merits.

Both plaintiffs had a full and fair opportunity to litigate the issues as parties to the 2009 action. As this Court is well aware, Weidinger became a party to the 2009 case via Shafi's counterclaim. As for RVT, collateral estoppel extends to privies of the party to a prior suit. *Hamilton's Bogarts, Inc. v. Mich.*, 501 F.3d 644, 651 (6th Cir. 2007). As it claims to be Braintech's successor entity, RVT is Braintech's privy. Therefore, Counts I and II of plaintiffs' complaint in the 2011 case must be dismissed.

### III.   THE PARTIES ARE ESTOPPED FROM ASSERTING ANY CLAIMS AGAINST SHAFI WHICH SHOULD HAVE BEEN PLED AS COMPULSORY COUNTERCLAIMS

Plaintiffs' various claims against Shafi in the 2011 case all arose from the same transaction or occurrence as the 2009 case, where they failed to assert a single claim against Shafi.

Fed. R. Civ. P. 13(a) governs compulsory counterclaims and provides that a claim is a compulsory counterclaim, "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Courts consider whether (1) a logical relationship between the two claims exists; (2) issues of fact and law raised by the claim and counterclaim are largely the same; (3) *res judicata* would bar a subsequent suit on the counterclaim if the court were not to take jurisdiction; and (4) substantially similar evidence

would support or refute both the claim and the counterclaim. *Maddox v. Kentucky Finance Co., Inc.,* 736 F.2d 380, 382 (6th Cir. 1984).

Applying the four-part test in this matter leaves no doubt that plaintiffs' claims in the 2011 case were subject to the compulsory counterclaim rule and were required to be pled in the 2009 case.

First, the cases are more than "logically related," they are nearly identical.

Second, there is no question that issues of fact and law are largely the same. This Court is referred to the chart comparing the complaints in the 2009 case and 2011 case.  (**Ex. C**)

Third, *res judicata* precludes plaintiffs' 2011 case claims.  Fourth, it is manifest that the claims in the 2009 case and the 2011 case would have elicited substantially similar evidence to support and refute the claims.

Accordingly, the claims of Weidinger and RTV (who claims to be in the shoes of Braintech) must be dismissed because they should have been the subject of a compulsory counterclaim in the 2009 case. The clear and overwhelming relationship between both cases merits a Rule 12(b)(6) dismissal.

IV.     **PLAINTIFFS' REMAINING CLAIMS EITHER FAIL TO STATE A CAUSE OF ACTION UNDER MICHIGAN LAW OR ARE BARRED BY THE STATUTE OF LIMITATIONS.**

Independently from the doctrine of *res judicata* and collateral estoppel, Plaintiffs' claims fail because they are barred by the statute of limitations or insufficiently plead.

A.      **There is No Breach of Fiduciary Duty Because the Statute of Limitations has Expired.**

Plaintiffs' breach of fiduciary duty claim is stale. Michigan's M.C.L.A. § 450.1541a(4) provides, "An action against a director or officer for failure to perform the duties imposes by this section shall be commenced within 3 years after the cause of action has accrued, or within 2

years after the time when the cause of action is discovered or should reasonably be discovered, by the complainant, whichever occurs first."

In this case, Braintech terminated Shafi in November 2008 and the cause of action was discovered, at the latest, on February 6, 2009 when Braintech filed suit. However, Plaintiffs waited more than two years to file the 2011 case. Therefore, Plaintiffs' Count II is stale and must be dismissed.

**B.     Breach of Non-Competition Agreement Claim is Precluded.**

As discussed in the Statement of Facts, plaintiffs' Breach of Non-Competition Agreement claim must also be dismissed.

Section 12(g) of Shafi's employment contract (**Ex.** E) clearly provides that the only way that Shafi could be held to a non-complete with Braintech was if he was paid severance. It is uncontested that Shafi has not been paid severance. Thus, there is no viable argument that Shafi is subject to a non-compete. The language of the Agreement provides, "For avoidance of doubt, if severance is paid to EXECUTIVE then the non-compete will be effective." Plaintiffs' decision to withhold severance nullified the Non-Competition Agreement and precluded plaintiffs' breach of non-competition agreement claim.

**C.     Defamation is Inadequately Pled**

Plaintiffs' Count IV in the 2011 case fails to state with particularity the statements that constituted defamation and identify the speaker and the circumstances of the publication. In Michigan, defamation requires: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault amount to *at least negligence* on the part of the publisher; and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication. *Mitan v. Campbell*,

474 Mich. 21, 24, 706 N.W.2d 420, 422 (2005). Moreover, Michigan defamation "elements must be specifically pleaded, including the allegations with respect to the defamatory words, the connection between the plaintiff and the defamatory words, and the publication of the alleged defamatory words." *Gonyea v Motor Parts Federal Credit Union*, 192 Mich. App. 74, 77; 480 N.W.2d 297 (1991). In that regard, the defamation allegation in Count IV does not specifically allege to whom a single specific defamatory statement was made. Plaintiffs merely state that various negative statements were made and provide an unverified laundry list of those who allegedly heard these statements. This alone will not overcome *Gonyea*'s pleading requirements and the defamation claim should be dismissed.

### D.    Plaintiffs Fail to State a Claim for Unfair Competition

In Michigan, the common law of unfair competition "prohibits unfair and unethical trade practices that are harmful to one's competitors or to the general public." *ATCO Indus., Inc. v. Sentek Corp.*, 2003 Mich. App. LEXIS 1670, 2003 WL 21582962, at 3 (Mich. Ct. App. July 10, 2003). In their claims of "unfair competition" in Court V of the 2011 case, plaintiffs claim that Shafi used "misleading statements" on the Advenovation website. They do not assert that the Advenovation website in any way references or mentions either of the plaintiffs. Instead, plaintiffs simply want to gag Shafi and prohibit him from discussing his intellectual achievements. They also contend, interestingly, that certain statements on the Advenovation website are false as applied to Advenovation "and are actually based on Reliabot and SI and SII's[3] alleged commercial success, commercial relationships, good will, and brand, "*which were transferred to Braintech.*" **(Ex. B, ¶ 122.)**

Braintech claimed, as a condition precedent to its claim of recession, it is not using and returned to Shafi **all** consideration that he contributed to Braintech.

---

[3] Shafi's business enterprises before the Braintech Sale Agreements. **(Ex. B, ¶¶ 16 and 34.)**

Braintech maintains that it possesses the right to rescind the Sale Agreements **and has tendered back all consideration it received pursuant to the Sale Agreements**.  (**Ex. A** ¶ 97.)

Thus, even if the allegation of plaintiffs in its "unfair competition" claim are true – that Shafi is using his experience and the development of Relibot, SI and SII and the "commercial success, commercial relationships, good will and brand" of those entities plaintiff has admitted in pleadings filed in this Court, with this Judge, that they are not using or entitled to those assets. Thus, even if the allegation of plaintiffs in their "unfair competition" claim are true (which Shafi does not concede), plaintiffs have made admissions that defeat their claim of unfair competition.

Unfair competition does not serve to impose a gag order on every one-time business owner and the law imposes no restriction on Shafi to withhold his professional experiences from the world. Plaintiffs have not alleged any unethical trade practices "that are harmful to one's competitors or to the general public."  *See, e.g. Clairol v Boston Disc Ctr, Inc.,* 608 F2d 1114, 1120 (6th Cir 1979).  This claim should be dismissed under Rule 12(b)(6).

### V.      SHAFI IS ENTITLED TO COSTS UNDER 28 USC § 1927.

By filing the 2011 case, Plaintiffs disregarded the orderly process of justice and now find themselves caught with their hand in the cookie jar. 28 U.S.C. § 1927 states that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. *Res judicata* exists for the very purpose of preventing this type of frivolous litigation and 28 U.S.C. § 1927 gives the doctrine teeth.

Plaintiffs and their counsel have acted sufficiently irresponsible in this case. First, the law is abundantly clear that the dismissal of the 2009 claims constituted an adjudication on the merits.  Despite the dismissal and with full knowledge of it, plaintiffs went venue hopping to

Virginia – and, in bad faith filed claims that this Court had already disposed of; and, which, if not pled in the 2009 case, were estopped,  Plaintiffs' goal was and is to force Shafi to expend substantial and unnecessary resources of time and money.

This Court possesses the inherent power to sanction a party, the party's attorney or both. *See Tropf v. Fid. Nat'l Title Ins. Co.,* 289 F.3d 929, 2002 (6th Cir. 2002) (court ordered plaintiff's attorney to personally pay any excess costs, expenses or attorneys' fees incurred by the defendants because of conduct that multiplied the proceedings in the case unreasonably and vexatiously). Plaintiffs and their counsel multiplied the proceedings in this case either to get two bites at the apple or frustrate Shafi's financial means to pursue his 2009 claims. Either way, Shafi is entitled to an award of costs and attorneys' fees.

## CONCLUSION

The dismissal of the 2011 case is warranted, as is an award of costs.

**Respectfully submitted,**

/s/  Noah S. Hurwitz_____
Sheryl A. Laughren (P34697)
David M. Foy (P42574)
Noah S. Hurwitz (P74063)
BERRY MOORMAN P.C.
Attorneys for Adil Shafi
535 Griswold, Suite 1900
Detroit, Michigan 48226
(313) 496-1200

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 4, 2011, I electronically filed the foregoing with the

Clerk of the Court using the CM/EMF system, which will send notification of such filing (NEF)

to the following:

Sheryl A. Laughren (P34697)
David M. Foy (P42574)
**BERRY MOORMAN P.C.**
Attorneys for Adil Shafi
535 Griswold, Suite 1900
Detroit, Michigan 48226
(313) 496-1200

Anne Widlak (P35763)
Susan D. Koval (P59297)
**NEMETH BURWELL, P.C.**
Attorneys for Braintech, Inc.
200 Talon Centre Drive, Suite 200
Detroit, Michigan 48207
(313) 567-5921

 Thomas G. McNeill (P36895)
**Attorney for Weidinger, Robotic Vision Technologies**
500 Woodward Ave, Suite 4000
Detroit, Michigan 48226
Tel: 313.223.3500
tmcneill@dickinsonwright.com

{00037409;v1 }

23