## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ADIL SHAFI, an Individual,

      Counter-Plaintiff/Third-Party Plaintiff,        Case No.: 09-10454
                                          Hon. Victoria A. Roberts

v.

BRAINTECH, INC.,

      Third-Party Defendant/Counter-Defendant.
      _____/

ROBOTIC VISION TECHNOLOGIES LLC, a
Nevada Limited Liability Company, and
FREDERICK WEIDINGER, an Individual,        Case No.: 11-12909
                                          Hon. Victoria A. Roberts

      Plaintiffs,

v.

ADIL SHAFI, an Individual,

      Defendant.
      _____/

## PLAINTIFFS' BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ II

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF FACTS ..................................................................................... 2

   **A.**  Braintech's 2008 Acquisition of Shafi's Companies. ......................................... 2

   **B.**  The 2009 Action -- Braintech's Claim for Rescission and Shafi's Counterclaims for
   Damages. .................................................................................................................... 3

   **C.**  The 2009 Action -- The Foreclosure of Braintech and the Dismissal of its Complaint. ........ 4

   **D.**  In Spring, 2011, Shafi's Claims Against Braintech were Poised for Trial. ............ 5

   **E.**  RVT and Weidinger Filed the 2011 Action Asserting Post-Transaction Claims that are
   Separate and Distinct from Braintech's Rescission Claim in the 2009 Action. ............... 6

III.    ARGUMENT ......................................................................................................... 7

   **A.**  Plaintiffs' Claims in the 2011 Action Are Not Precluded by the Court's Dismissal of
   Braintech's Equitable Claim for Rescission in the 2009 Action. ................................ 7

   **B.**  Collateral Estoppel Does Not Bar Plaintiffs' Claims in the 2011 Action. ........... 11

   **C.**  Plaintiffs' Claims in the 2011 Action Are Not Compulsory Counterclaims to Shafi's
   Claims in the 2009 Action. ..................................................................................... 12

      **1.** Weidinger's Claims Bear No Legal Relationship to Shafi's 2009 Claims Against Him. .... 13

      **2.** RVT's Claims Bear No Legal Relationship to Shafi's 2009 Claims Against Braintech. .... 15

   **D.**  Shafi's Substantive Arguments Seeking Dismissal of Plaintiffs' Claims Fail. .............. 17

   **E.**  Shafi's Motion for Sanctions Should be Denied. ............................................... 19

IV.     CONCLUSION .................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adell Broadcasting v. Apex Media Sale*, 708 N.W.2d 778 (Mich. Ct. App. 2005)............................10

*Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545 (6th Cir. 2007). ....................18

*Clairol, Inc. v. Boston Disc. Ctr., Inc.*, 608 F.2d 1114 (6th Cir. 1979) ...............................18

*Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d 624  (6th Cir. 2009)......................................19

*Good Housekeeping Shop v. Smitter*, 236 N.W. 872 (Mich. 1931) ....................................18

*Hayes-Albion v. Kuberski*, 364 N.W.2d 609 (Mich. 1984)...................................................18

*Heritage Optical Center, Inc. v. Levine*, 359 N.W.2d 210 (Mich. Ct. App. 1984)...........................19

*Lash v. Allstate Insurance Company*, 532 N.W.2d 869 (Mich. Ct. App. 1995) ...............................10

*Maddox v. Kentucky Finance Co.*, 736 F.2d 380 (6th Cir. 1984). ......................................13

*McCoy v. Michigan*, 369 Fed. App'x 646 (6th Cir. 2010) ...................................................7, 9, 11, 13

*McMullen v. Joldersma*, 435 N.W.2d 428 (Mich. Ct. App. 1988).......................................10

*U.S. v. Southern Construction Co.*, 293 F.2d 493 (6th Cir. 1961). ....................................12

*Verizon North, Inc. v. Strand*, 367 F.3d 577 (6th Cir. 2004). .............................................11

**Statutes**

28 U.S.C. § 1927 .......................................................................................................2, 19, 20

**Rules**

Fed.R.Civ.P. 13 .......................................................................................................passim

Fed.R.Civ.P. 18 ..............................................................................................................1

**Treatises**

4-18 Moore's Federal Practice – Civil § 18.02 ................................................................11

## I.  <u>INTRODUCTION</u>

In all respects, Plaintiffs properly filed this second lawsuit and properly have pleaded all of their claims.

On February 6, 2009, Braintech, Inc. filed a Complaint for Rescission against Adil Shafi (the "2009 Action"). On May 24, 2010, in a traditional public foreclosure auction, Braintech sold to Robotic Vision Technologies, LLC ("RVT") substantially all of its assets, including Braintech's legal claims. As in any traditional asset sale, RVT did not assume any of Braintech's liabilities. As discussed in more detail below, on June 3, 2010, this Court dismissed Braintech's Complaint, leaving only Shafi's Counterclaims against Braintech and Third Party Claims against Frederick Weidinger (Weidinger"), which Shafi originally filed on April 9, 2009 (and which he twice amended).

On March 14, 2011, RVT and Weidinger commenced this action in the Eastern District of Virginia (the "2011 Action").  RVT asserts claims acquired from Braintech which Braintech did not previously assert against Shafi.  On July 1, 2011, the federal court in Virginia transferred the 2011 Action to this Court.

Federal principles of *res judicata* do not bar ***any*** of the four claims which RVT and Weidinger assert in the 2011 Action. Under the permissive joinder rules of Fed.R.Civ.P. 18(a) and 20(a), Braintech was not required to assert in the 2009 Action any of the claims which RVT has asserted in the 2011 Action. Under Fed.R.Civ.P. 13(a), in the 2009 Action, Braintech and Weidinger were not required to assert as "counter-counterclaims" the claims that RVT and Weidinger now assert in the 2011 Action.

Plaintiffs properly have pleaded all of the necessary elements, and the factual predicate required by *Iqbal* and *Twombly*, for each of their four claims.

Finally, Plaintiffs submit that Defendant's shrill hyperbole employed throughout its brief

1

is intended to mask, or draw this Court's attention from, the deficiencies in his own legal arguments. Under 28 U.S.C. § 1927, Defendant's motion for costs is without merit and should be denied.

Plaintiffs request that this Court deny Defendant's motion(s) in all respects.

## II. <u>STATEMENT OF FACTS</u>

### A. <u>Braintech's 2008 Acquisition of Shafi's Companies.</u>

Plaintiff Robotic VISION Technologies, LLC ("RVT") designs and sells software and services for vision-guided robotics. Dkt. No. 2, 1st Am. Compl., ¶ 2.[1] Plaintiff Rick Weidinger is the CEO of RVT. *Id.* ¶ 4.

On May 24, 2010, RVT purchased at public auction all of the assets of Braintech, Inc., a public company which prior to its failure and foreclosure also participated in the vision-guided robotics industry. *Id.* ¶¶ 3, 15. The Braintech assets which RVT acquired include all claims then possessed by Braintech against its former COO and Director, Defendant Adil Shafi ("Shafi"). *Id.* ¶ 3.

Shafi is the former president and sole shareholder of SHAFI, Inc., ("SI") and SHAFI Innovation, Inc. ("SII"), which designed and sold software solutions and services for vision-guided robotics. *Id.* ¶¶ 16-17. Today, Shafi is the president, CEO and majority shareholder of Advenovation, Inc., which also participates in the vision-guided robotics industry in competition against RVT. *Id.* ¶¶ 6-8, 50-56.

The genesis of the 2009 Action and the preamble for the 2011 Action is Braintech's 2008 acquisition of Shafi's predecessor companies, SI and SII. Specifically, on August 12, 2008, after months of negotiation, Braintech and Shafi executed a Stock Purchase Agreement ("SPA") and

---

[1] On June 6, 2011, as a matter of right under Fed.R.Civ.P. 15(a)(1)(B), RVT and Weidinger filed an Amended Complaint withdrawing the breach of fiduciary duty claim, Count II to the original Complaint. Shafi's renewed motion to dismiss that claim is moot.

five related agreements, by which Braintech acquired 100% of the stock of SI and 80% of the stock of SII. *Id.* ¶¶ 18, 20,-22.[2]   As part of the transaction, Shafi became the Chief Operating Officer of Braintech and a director of the company, and SI and SII became separate Braintech subsidiaries. *Id.* ¶ 18.   As consideration for the transaction, Shafi received 2,999,700 shares in the capital stock of Braintech to be issued at closing and an additional 1,000,000 shares to be issued upon the achievement of specified personal performance criteria.   *Id.* ¶ 24. Shafi also received approximately $100,000 cash.

Braintech's acquisition of SI and SII was a complete failure as a result of numerous misrepresentations by Shafi. *Id.* ¶¶ 25-43.  Three months after the deal closed, on November 24, 2008, Braintech terminated Shafi's employment for good cause. *Id.* ¶ 48.

**B.**     **The 2009 Action -- Braintech's Claim for Rescission and Shafi's Counterclaims for Damages.**

Two months after terminating Shafi's employment, on February 6, 2009, Braintech commenced an action in the U.S. District Court for the Eastern District of Michigan (the "2009 Action") seeking equitable rescission of the transaction, including a return of the consideration conveyed.  *See* Mot. Dismiss, Ex. A, 2009 Michigan Complaint.

In response, over the course of four months, Shafi filed an original, amended and second amended counterclaims against Braintech and added Weidinger as an additional counterclaim (or third party) defendant in the second amended counterclaim.  *See* Dkt. Nos. 5, 8, and 19, respectively.  In the Second Amended Counterclaim filed on July 22, 2009 (Dkt. No. 19), Shafi asserted a total of seven counterclaims in the 2009 Action:

- Breach of Employment Agreement Claims (Counts I & II) Against Braintech Only:  Counts I and II are asserted solely against Braintech and relate to Shafi's claim that Braintech

---

[2]   In addition to the SPA, the parties executed: (1) a Lock-Up Agreement, (2) an Employment Agreement between Braintech and Shafi, (3) a Non-Competition Agreement between Braintech and Shafi, (4) a Letter Regarding Indebtedness of SI and SII, and (5) a Promissory Note from SI and SII.  *Id.* ¶ 20.

3

breached his Employment Agreement by terminating him without good cause and failing to pay him his contractual severance pay under the Agreement. In Count I, Shafi seeks a declaratory judgment that Braintech breached the Employment Agreement and in Count II, Shafi seeks monetary damages for such alleged breach.

- Fraud/Fraud in the Inducement (Count III) Against Braintech and Weidinger:  In Count III, Shafi alleged that Braintech and Weidinger fraudulently induced him to enter into the Share Purchase Agreement.  Shafi's fraud claim was premised on *precontractual representations allegedly made by Weidinger on behalf of Braintech.* **Instead of seeking rescission of the Share Purchase Agreement, however, Shafi sought monetary damages**.

- Securities Fraud Claims (Counts IV & V) Against Braintech and Weidinger:  In Counts IV and V, Shafi asserted both federal and state securities fraud claims against Braintech. Shafi's securities fraud claims are essentially a repeat of his fraud/fraudulent inducement claims, with the added assertion that Braintech and Weidinger either made fraudulent *precontractual representations* or failed to disclose material information *during contractual negotiations* in order to dupe him into selling his companies in exchange for worthless stock.

- Conversion (Count VI) against Braintech and Weidinger:  Count VI asserted a claim for conversion against Braintech and Weidinger. Like his fraud and securities fraud claims, Shafi asserts in his conversion claim that Weidinger made allegedly fraudulent *precontractual representations and omissions* in order to dupe him into selling his companies to Braintech without compensating him.

- Unjust Enrichment (Count VII) against Braintech and Weidinger:  Finally, Count VII asserts an unjust enrichment claim, again based on Shafi's contention that Weidinger made allegedly fraudulent *precontractual representations and omissions* in order to dupe him into selling his companies to Braintech without compensating him.

As the preceding illustrates, in the 2009 Action, Shafi's counterclaims were based entirely upon (a) his Employment Agreement with Braintech, and (b) his assertion that Weidinger had made allegedly fraudulent *precontractual representations* on behalf of Braintech in order to induce the SPA in exchange for what he deemed "worthless stock" in Braintech.

## C.   The 2009 Action -- The Foreclosure of Braintech and the Dismissal of its Complaint.

In early 2010, as a result of the deal-gone-bad with Shafi, Braintech failed and began winding down through public auction foreclosure. Also in early 2010, Weidinger resigned as an officer and director of Braintech. Soon thereafter, Braintech had no decision makers (all officers and employees had subsequently resigned) and the company did not have the resources to pay litigation counsel. As a result, on March 8, 2010, Braintech's counsel, Pepper Hamilton, filed an emergency motion to withdraw. *See* Dkt. No. 27.  On April 7, 2010, this Court granted that

4

motion and temporarily stayed the action to provide Braintech an opportunity to retain counsel.

Braintech previously had purchased from Chubb an Employment Practices Liability ("EPL") insurance policy. During a teleconference with the Court on May 18, 2010, counsel retained by Chubb informed the Court that they would be appearing as counsel for Braintech *only in relation to the defense of Shafi's counterclaims against the company*. *See* Dkt. No. 32. The EPL policy, however, only provides for defense of the claims (subject to a reservation of rights) -- there is no coverage for any other loss, including any potential judgment against Braintech.

During that same May 18, 2010 teleconference, the law firm of Pillsbury Winthrop advised the Court that they would be appearing as defense counsel for Weidinger personally *only in relation to the defense of Shafi's third-party claims. Id.*

At the same time, Braintech's outside foreclosure counsel informed the Court that the Company's CEO and General Counsel had resigned, leaving Braintech with no in-house corporate counsel and no outside counsel to prosecute the Complaint for rescission.

On May 24, 2010, at public auction Braintech sold all of its assets to RVT, which neither acquired nor assumed any Braintech liabilities.

On June 3, 2010, without the appearance of successor counsel, this Court dismissed defunct Braintech's complaint, leaving only Shafi's Second Amended Counterclaims against Braintech and Weidinger.  *See* Dkt. No. 36. The Order dismissing Braintech's Complaint does not include "with prejudice" language.

**D.**     **In Spring, 2011, Shafi's Claims Against Braintech were Poised for Trial.**

In the 2009 Action, the parties completed discovery and on November 19, 2010, Braintech and Weidinger filed a joint motion for Summary Judgment on all of Shafi's counterclaims.  Briefing was completed on that motion on January 24, 2011.

5

On March 23, 2011, the Court convened a settlement conference which did not resolve the 2009 Action. Thereafter, on April 5, 2011, the Court entered an order dismissing Weidinger entirely from the case and dismissing all claims against Braintech, except for the two breach of employment claims. Dkt. No. 103. The Court scheduled the final pretrial conference for April 20, 2011 and set trial to commence on May 10, 2011. *See* Dkt. No. 42 (Scheduling Order - Phase II).

### E.      RVT and Weidinger Filed the 2011 Action Asserting Post-Transaction Claims that are Separate and Distinct from Braintech's Rescission Claim in the 2009 Action.

As the 2009 Action approached the 12th hour, on March 14, 2011, RVT and Weidinger filed the 2011 Action. Not unexpectedly, the ***background*** factual allegations in RVT and Weidinger's Complaint in the 2011 Action are substantially similar to the background facts alleged in Braintech's Complaint in the 2009 Action, such as the allegations regarding the parties' respective businesses, general background regarding the SPA and related agreements and general background regarding Shafi's termination from employment at Braintech. Motion to Dismiss, Exhibit B, ¶¶ 1-9, 12, 22 and 25. It is equally clear, however, that the legal claims asserted in this action are separate and distinct from those asserted in the 2009 Action, Braintech's original rescission claim and Shafi's amended counterclaims.

In this 2011 Action, RVT and Weidinger allege four claims:

- Count I, Breach of Contract (the SPA), a *legal claim seeking monetary damages* for Shafi's *post*-transaction breach of representations and warranties. Unlike the 2009 Action, Count I is legal, not equitable, in nature, seeks monetary damages, and perhaps most importantly, affirms the existence of the SPA, unlike Braintech's original complaint which sought rescission of the SPA.
- Count II, Breach of the Non-Competition Agreement. *The Non-Competition Agreement is not, and has never been, at issue in the Michigan Action.* Moreover, the majority of the conduct alleged in support of this claim occurred after Shafi's employment with Braintech ended and does not involve any alleged misrepresentations by Weidinger (such as form the basis of Shafi's counterclaims), nor does it involve any alleged misrepresentations by Shafi related to the SPA or breach of his employment duties under the Employment Agreement.

6

- <u>Count III, Defamation</u>, which has no relation to Shafi's claims in the 2009 Action and is based on statements made by Shafi after his employment with Braintech ended.  Unlike Shafi's claims, Count III does not involve any alleged misrepresentations by Weidinger, nor does it involve any alleged misrepresentations by Shafi related to the SPA or breach of his employment duties under the Employment Agreement.
- <u>Count IV, Unfair Competition</u>, based upon Shafi's conduct after Braintech terminated his employment and in relation to his new company, Advenovation, and his work for Aptura. Like the other claims, this claim has no relation to Shafi's claims based on breach of his employment agreement or the allegedly fraudulent pre-contractual statements that form the basis of Shafi's dismissed counterclaims.  Likewise, this claim has no relation to Braintech's original claim for rescission of the SPA.  [*See* First Am. Comp.].

On May 23, 2011, Shafi filed a motion to dismiss the 2011 Action or, in the alternative, to transfer venue. RVT and Weidinger filed their opposition, Shafi filed a reply brief and oral argument was presented on July 1, 2011.  Later that same day, under 28 U.S.C. 1404(a), the federal court in Virginia entered an order transferring venue to this Court without ruling on Shafi's motion to dismiss.  The 2011 Action was redocketed here.  Shafi has renewed his motion to dismiss, which should be denied for the reasons set forth below.

## III. ARGUMENT

### A.  Plaintiffs' Claims in the 2011 Action Are Not Precluded by the Court's Dismissal of Braintech's Equitable Claim for Rescission in the 2009 Action.

Shafi is wrong in his assertion that RVT and Weidinger's claims in the 2011 Action are subject to *res judicata* by virtue of the dismissal of Braintech's original 2009 complaint for rescission.

It is well-established in this circuit that the application of *res judicata* requires a showing of the following three elements:  "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first."  *McCoy v. Michigan*, 369 Fed. App'x 646, 649 (6th Cir. 2010) .  In determining whether a claim was or could have been resolved in earlier litigation, Michigan law applies a "transactional test."  *Id.* at 650.  Whether a group of facts amount to a singular

"transaction for purposes of *res judicata* is to be determined pragmatically, by considering whether the facts are related in time, space, origin or motivation." *Id.* (citations omitted). Where a new action is based on new facts, *res judicata* is not applicable. *Id.* at 649-653 (holding that principles of *res judicata* did not bar a subsequent suit where events that formed the basis of the second suit did not occur until after the first suit was initiated).

Shafi's failure to meet the third prong of the *res judicata* test -- whether the claims in this case were or could have been resolved in the earlier action -- is dispositive of the issue here.[3] When analyzing *res judicata*, the focus must be on Braintech's claims against Shafi, as asserted in the 2009 Action and as asserted by RVT in the 2011 Action. As discussed above in Section II.A *supra*, Braintech's claims in the 2009 Action sought rescission of the SPA based upon Shafi's material *precontractual* misrepresentations and then subsequent material breaches of the SPA by Shafi. The sole relief sought by Braintech in the 2009 Action was a declaratory judgment rescinding the SPA and returning all consideration paid by Braintech to Shafi in relation to the SPA. Braintech thus also tendered back to Shafi the businesses that Braintech had just purchased from him. Braintech did not assert or pursue a claim for monetary damages. It is curious that Shafi refused to accept his businesses back so shortly after closing.

In the 2011 Action, it is beyond purview that Shafi's conduct after Braintech terminated his employment serves as the factual predicate for Plaintiffs' claims for breach of the Non-Competition Agreement (Count II), Defamation (Count III) and Unfair Competition (Count IV). These claims ***do not*** involve issues that were, or could have been, litigated as part of Braintech's

---

[3] As to the first prong, a judgment on the merits in the first action, Plaintiffs contend that dismissal of Braintech's 2009 Complaint was based upon the unique procedural circumstances that do not serve as an adjudication on the merits. Because Shafi fails to otherwise meet the federal *res judicata* test, it is unnecessary for this Court to reach the "judgment on the merits" prong. However, if this Court determines that inquiry to be material here, Plaintiffs request the opportunity to seek clarification from this Court regarding the proper treatment to be accorded to that Court's order or, alternatively, to seek modification of that order to expressly provide a dismissal without prejudice.

original equitable claim for rescission. These claims are based upon Shafi's post Braintech employment at his new company, Advenovation, starting in February 2009, and work as a sales representative for Aptura starting in 2010. All of this conduct post-dated Braintech's filing of the original Complaint in the 2009 Action. *McCoy, supra,* at 651 ("we do not believe that the preclusion of claims that could have been resolved in the previous litigation necessarily includes new and independent claims that arise after the original pleading in the first suit has been filed").

Moreover, none of the issues surrounding Shafi's post-employment conduct were even remotely relevant to Braintech's original 2009 complaint for rescission, which was based on Shafi's fraudulent precontractual representations and then subsequent breaches of various representations, warranties, and duties set forth in the SPA and related agreements during his employment by Braintech. There simply is no "identity of the cause of actions" in the 2009 Action (for rescission of the SPA due to fraudulent inducement and material breaches of the SPA by Shafi) compared to the 2011 Action (subsequent post Braintech employment conduct that constitutes breach of the Non-Competition Agreement, defamation and unfair competition by Shafi). There is a stark disconnect between the 2009 Action and the 2011 Action -- both as to the nature of the causes of action and temporally (in the 2009 Action, before Braintech terminated Shafi's employment for good cause; and now in the 2011 Action, after Braintech terminated his employment for good cause). *See id.* (*res judicata* did not bar a subsequent suit because, among other things, the events in the first action were "far removed temporally" from those in the second).

Material factual and legal distinctions also exist with respect to comparing the 2009 Action to RVT's claims in this action for breach of the SPA (Count I). There is no "identity of the cause[s] of action" between the two lawsuits. As for the breach of the SPA claim in the 2009

9

Action, under Michigan law[4] rescission of a contract is an equitable remedy that "returns the parties to the status quo, i.e. it places the parties in the position they occupied before the transaction in question." *McMullen v. Joldersma*, 435 N.W.2d 428, 432 (Mich. Ct. App. 1988). It is, however, *different from breach of contract*. As the Michigan Court of Appeals stated in *Adell Broadcasting v. Apex Media Sale*, 708 N.W.2d 778, 783 (Mich. Ct. App. 2005):

> Failure of consideration warranting rescission is different from, and greater than, a mere breach of contract warranting an action for damages… 'Rather rescission is permissible when there is failure to perform a substantial part of the contract or one of its essential items, or where the contract would not have been made if default in that particular had been expected or contemplated.'

*Id.* Further, rescission requires the party claiming it to show that equity requires that the parties be returned to the status quo. *Lash v. Allstate Ins. Co.*, 532 N.W.2d 869, 872 (Mich. Ct. App. 1995). "Rescission necessarily involves a repudiation of the contract and a refusal of the moving party to be further bound by it. But this by itself would constitute no more than a breach of contract or a refusal of performance, while the idea of rescission involves the additional and distinguishing element of a restoration of the status quo." *Id.* (citing *Cunningham v Citizens Ins. Co. of America*, 350 N.W.2d 283 (Mich. Ct. App. 1984)).

In the 2011 Action, RVT affirms the SPA and seeks damages for Shafi's breach of it. Under principles of *res judicata*, dismissal of the rescission claim does not preclude a claim for money damages for breach.

Shafi appears to suggest that Braintech should nonetheless have brought all of its claims at the time it brought its original rescission action merely because it knew of such claims and "could have" brought them as part of the 2009 Action. *See* Br. Supp. Mot. Dismiss at 14. In that regard, Shafi ignores that there is no compulsory joinder rule under federal law. Under the federal rules, "[j]oinder of claims is permissive, not compulsory." 4-18 Moore's Federal Practice

---

[4] The choice of law provision in the SPA provides that it shall be construed under the laws of the State of Michigan.

– Civil § 18.02. "Nothing in the claim joinder rule requires all claims to be asserted by a party." *Id.* (citing *Headley v. Bacon*, 828 F.2d 1272, 1275 (8th Cir. 1987) ("That [plaintiff] could have joined the suits does not necessarily mean she was required to do so, however.  The decision to bring separate actions was a tactical choice allowed by the Federal Rules of Civil Procedure; Rules 18(a) and 20(a) refer only to permissive joinder, at the party's option.")); *see also McCoy,* 369 Fed. App'x at 652 (citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 914 (7th Cir. 1993)) ("[E]ven if a plaintiff is aware of the factual basis for a suit at the filing of another suit, he or she is not obligated to bring all claims together if they do not arise out of the same transaction.").

In summary, even if the Court were to determine that Braintech's equitable rescission claims in the 2009 Action were dismissed with prejudice (and Plaintiffs contend that they were not), *res judicata* does not bar Plaintiffs' claims in the 2011 Action because such claims were not and could not have been litigated in Braintech's original equitable claim for rescission of the SPA in the earlier 2009 Action.

## B.   Collateral Estoppel Does Not Bar Plaintiffs' Claims in the 2011 Action.

Shafi is also wrong in his assertion that collateral estoppel bars Count I of Plaintiffs' Amended Complaint.

Collateral estoppel applies when "(1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation, (2) the issue was actually litigated and decided in the prior action, (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation, (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and (5) the party to be estopped had a full and fair opportunity to litigate the issue." *Verizon North, Inc. v. Strand*, 367 F.3d 577, 583 (6th Cir. 2004).

In his attempt to recast his *res judicata* argument as a collateral estoppel argument, Shafi overlooks the fact that collateral estoppel bars the re-litigation of *specific issues* -- not entire

11

claims -- and fails to ever identify the precise issues he believes were actually litigated and decided in the prior action. Nor does Shafi even attempt to establish the other requisite collateral estoppel elements. The party asserting collateral estoppel as a defense has the burden of proof.

Moreover, none of the issues surrounding Shafi's post-employment conduct were even remotely relevant to Braintech's original complaint for rescission. A claim for rescission -- which necessarily involves a repudiation of the contract -- requires the party claiming it to show that equity requires that the parties be returned to the status quo. *See* discussion at Section III.A, *supra*. The issues that would have been litigated in the prior 2009 Action are fundamentally different than those involved in the instant claim for monetary damages. Collateral estoppel is therefore inapplicable.

## C.     Plaintiffs' Claims in the 2011 Action Are Not Compulsory Counterclaims to Shafi's Claims in the 2009 Action.

Shafi erroneously contends that the claims in the 2011 Action are compulsory counterclaims to *his* counterclaims in the 2009 Action.[5] Compulsory counterclaims are governed by Rule 13 of the Federal Rules of Civil Procedure. Rule 13 provides:

> A pleading must state as a counterclaim any claim that - at the time of its service - the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence *that is the subject matter of the opposing party's claim*; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed.R.Civ.P. 13(a)(1) (emphasis added).

This circuit looks to whether or not there is a "logical relation" between the two claims. *U.S. v. Southern Construction Co.*, 293 F.2d 493, 500 (6th Cir. 1961), *cert. granted*, 368 U.S. 975, 82 S. Ct. 478, 7 L. Ed. 2d 437 (1962), *rev'd in part*, 371 U.S. 57, 9 L. Ed. 2d 31, 83 S. Ct. 108 (1962). The focus of the inquiry is on whether "[t]he claim and counterclaim will present

---

[5] Shafi has not identified cases from this Court addressing the procedural propriety of filing a counterclaim to a counterclaim, and Plaintiffs are not aware of any.

entirely different legal, factual, and evidentiary questions [and whether] the interests of judicial economy and efficiency would be served." *Maddox v. Kentucky Finance Co.*, 736 F.2d 380, 383 (6th Cir. 1984). Where the "claim and counterclaim will present entirely different legal, factual, and evidentiary questions," the claims are not compulsory. *Id.*

As an initial matter, contrary to Shafi's assertions, it is of no moment that Plaintiffs may have known about their claims at the time Shafi filed his Second Amended Counterclaim against Braintech and Weidinger. Unless the claims arise out of the same transactions or occurrences that form the subject matter of his claims in the 2009 Action, the claims are not compulsory and Plaintiffs were not required to assert them in response to Shafi's claims. *See McCoy,* 369 Fed. App'x at 652.

Moreover, Shafi embraces an improperly expansive approach with respect to the "transaction or occurrence" requirement of Rule 13, relying ostensibly on background facts and not the operative facts that form "the subject matter of" his own counterclaims in the 2009 Action. *See* Br. Supp. Mot. Dismiss at 5-7. A proper examination of Shafi's claims against Braintech and Weidinger in the 2009 Action illustrates that the claims asserted in the 2011 Action do not arise out of the same transactions or occurrences.

### 1. Weidinger's Claims Bear No Legal Relationship to Shafi's 2009 Claims Against Him.

As discussed *supra* Section II.B, Shafi's counterclaims against Weidinger in the 2009 Action arise out of *alleged precontractual representations* made *by Weidinger to Shafi* in 2008 with respect to *the value of the overall transaction to Shafi,* in order to allegedly induce Shafi to consummate the Share Purchase Agreement and related agreements. Focusing on these allegedly fraudulent precontractual statements, which is the proper analysis under Rule 13(a), it is clear that Weidinger's claims in this action for disparagement and defamation (Counts III and IV) do

not arise from the same occurrences.

Weidinger's claims in the 2011 Action are based upon statements made *by Shafi* (not Weidinger) *regarding Weidinger* (not the value of the SPA transaction) *to various of Weidinger's business contacts* (not Shafi) in the vision-guided robotics and machine vision system industries in 2008, 2009, 2010, and continuing today. *See* Dkt. No. 2, 1st Am. Compl. ¶¶ 68-73. For example, long after the deal closed, Shafi made statements to various of Weidinger's business acquaintances that Weidinger fraudulently induced him into selling his companies, committed a fraud on him, had done a great injustice to him, and did not hold to his agreements. *See id.* ¶ 71. Shafi has admitted that he made such statements to Microscan, PDSI, and ABB (*Id.* ¶ 72), and Weidinger anticipates that discovery will disclose additional malicious and defamatory statements.

When viewed side-by-side, it is clear that Weidinger's new claims are not compulsory counterclaims to Shafi's now dismissed 2009 claims against him. The claims involve different issues of fact (which are distinctly different temporally) and a different body of evidence. *See Maddox*, 736 F.2d 380 at 383.

Shafi erroneously asserts that Weidinger's status as an "Affiliate" under the Non-Competition Agreement somehow renders his common law defamation claim compulsory to Shafi's fraud-based claims in the 2009 Action. Br. Supp. Mot. Dismiss at 8-9. As previously discussed, none of Shafi's claims against Weidinger in the 2009 Action relate to or arise out of the Non-Competition Agreement or Shafi's post-employment defamatory statements forming the subject matter of Weidinger's defamation claims against Shafi. And Shafi fails to provide any explanation as to how Weidinger's status as an "Affiliate" under the Non-Competition agreement changes these indisputable facts.

14

Moreover, to the extent that Weidinger's claims are based upon statements made by Shafi after mid-August 2009, and continuing through today, such claims are not compulsory counterclaims to Shafi's 2009 claims. By its plain language, Rule 13(a) only bars a claim that existed "at the time of its service" from subsequent litigation. Shafi filed his Second Amended Counterclaim in the Michigan Action on July 22, 2009. Therefore, to the extent that Weidinger's claims are based upon disparaging and defamatory statements made and/or discovered after mid-August 2009, when Weidinger's Answer was due, they cannot be compulsory to Shafi's Michigan claims.

As a matter of law, Weidinger's claims in the 2011 Action are not compulsory Counterclaims to Shafi's Counterclaims in the 2009 Action.

### 2.    RVT's Claims Bear No Legal Relationship to Shafi's 2009 Claims Against Braintech.

Shafi's compulsory counterclaim arguments similarly fail with respect to RVT's claims in this action. As discussed above, Shafi's claims against Braintech in the 2009 Action arise from: (1) Braintech's alleged breach of his Employment Agreement by terminating him without good cause and failing to pay him his contractual severance and (2) alleged pre-contractual representations made by Weidinger to Shafi regarding the value of the overall SPA transaction in order to fraudulently induce Shafi into consummating the transaction. None of RVT's claims in the 2011 Action involve the same conduct or subject matter.

RVT's disparagement and defamation claims (Counts II and III) are based upon false statements made by Shafi about Braintech and RVT to others in the vision-guided robotics and machine vision system industries. *See* Dkt. No. 2, 1st Am. Compl. ¶¶ 68-74, 80-102. RVT's claim for breach of the SPA relates to express representations and warranties made *by Shafi to Braintech* in the Share Purchase Agreement. *See id.* ¶¶ 25-26, 32-39, 81-84. And RVT's unfair

15

competition claim (Count IV) arises out of false and misleading statements made by Shafi on his new company's website and in public presentations and thus improperly usurped RVT's goodwill.[6] *See id.* ¶¶ 53-58, 104-117. Finally, RVT's claim for breach of the Non-Competition Agreement is premised entirely upon Shafi's post-employment competitive activities for his new company, Advenovation, and Braintech's competitor, Aptura. *See id.* ¶¶ 49-67, 83-84. Shafi's post-employment competitive activities have no relation to, and do not arise out of, either the allegedly fraudulent precontractual statements made by Weidinger forming the subject matter of Shafi's 2009 claims or his Employment Agreement.

Shafi is simply wrong in his contention that the Employment Agreement and the Non-Competition Agreement inextricably are linked. Br. Supp. Mot. Dismiss at 8-9. Paragraph 12(g) of the Employment Agreement, relied upon by Shafi, merely reinforces that if Braintech pays Shafi a severance, the 3 year/1 year restriction period in the Non-Competition Agreement applies, regardless of whether Shafi is terminated for good cause. *See* Mot. Dismiss, Ex. E, Employment Agreement, ¶ 12(g)(ii).

The only issues related to Shafi's Breach of Employment Agreement claim in the 2009 Action that are even arguably relevant to the breach of Non-Competition Agreement claim asserted in the 2011 Action are (i) whether Shafi was terminated for good cause and (ii) whether Braintech paid Shafi a severance, as those issues may determine the applicable non-competition period. Those two issues, however, do not inextricably link either the agreements or the claims based on breaches of the agreements. And, to the extent there are common factual issues between these two claims, *at most*, concepts of issue preclusion may apply to bar relitigating *those specific factual issues*. The existence of a handful of common factual issues, however, does not

---

[6] It also appears that Shafi, Advenovation and/or Aptura may have misappropriated Braintech's source code for robotic vision software, which RVT purchased at the public auction of assets.

convert an otherwise permissive claim under Rules 18 and 20 to a compulsory counterclaim under Rule 13.

In summary, Plaintiffs' claims against Shafi in this action do not arise out of the same transactions or occurrences that are the subject matter of Shafi's claims in the 2009 Action and accordingly, are not compulsory counterclaims to Shafi's claims in Michigan.

**D.**   **Shafi's Substantive Arguments Seeking Dismissal of Plaintiffs' Claims Fail.**

Each of Shafi's substantive arguments for dismissal fails. As an initial matter, it should be noted that Shafi does not attack the claim for Breach of the Share Purchase Agreement Warranties (Count I) on grounds other than *res judicata*, collateral estoppel, and Rule 13. Therefore, because those arguments fail, Count I properly states a cognizable claim.

**1.**   **Shafi has Failed to Raise Any Valid Defense to Plaintiffs' Breach of Non-Competition Agreement Claim.**

Shafi has failed to raise any legitimate defense to Plaintiffs' Breach of Non-Competition Agreement claim. Shafi is simply wrong in his contention that the Employment Agreement and the Non-Competition Agreement inextricably are linked. Paragraph 12(g) of the Employment Agreement, relied upon by Shafi, merely reinforces that if Braintech pays Shafi a severance, the 3 year/1 year restriction period in the Non-Competition Agreement applies, regardless of whether Shafi is terminated for good cause. *See* Mot. Dismiss, Ex. E, ¶ 12(g)(ii).

**2.**   **Plaintiffs Have Properly Pled Defamation.**

Plaintiffs' properly have pled the defamation claim (Count III), which is based upon Shafi's admissions during his deposition in the 2009 Action. For example, Plaintiffs allege that:

> Shafi's disparaging comments include, without limitation, that Weidinger fraudulently induced him into selling his companies, stole his companies and had committed a fraud on him, had done a great injustice to him, and did not hold to his agreements, and that Braintech was in a poor situation, had technical and financial issues and problems, and did not hold to its agreements.

17

Dkt. No. 2, 1st Am. Compl. ¶¶ 86, 95; Ex. 1, Shafi Dep. Tr., Vol. 1 at 150-53 ("The poor situation of Braintech. Its inability to hold its agreements. Its breaches."); Shafi Dep. Tr., Vol. 3 at 475 ("I said that I was fraudulently induced into selling my companies, that I was defrauded, and that I was done a great injustice . . . ."); *Id.* at 478 ("[Y]ou've told people that Mr. Weidinger defrauded you? A. Yes. I do."); *Id.* at 480 ("Yeah. I say he defrauded me.").

As this Court has recognized, *Iqbal* and *Twombly* require that the complaint "allege facts that, if true, plausibly satisfy each element of the claims for which relief is sought." *See Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007). Plaintiffs have met this requirement. *See* Dkt. No. 2, 1st Am. Compl., Count III.

In the event this Court determines that Plaintiffs' allegations regarding Shafi's defamatory statements require more specificity, which is easily remedied by block quoting Shafi's deposition testimony in the Complaint, or that Plaintiffs must identify the parties to whom Shafi published the defamatory statements, Plaintiffs request leave under Rule 15 to so amend their Complaint.

### 3. Plaintiffs Have Stated a Claim for Unfair Competition.

Plaintiffs properly have alleged a claim of unfair competition. Michigan's common law prohibits all unfair and unethical trade practices that are harmful to one's competitors or to the general public and encompasses any conduct that is fraudulent or deceptive and tends to mislead the public. *See Good Housekeeping Shop v. Smitter*, 236 N.W. 872 (Mich. 1931); *Clairol, Inc. v. Boston Disc. Ctr., Inc.*, 608 F.2d 1114, 1120 (6th Cir. 1979). Each unfair competition case "is determined upon its own facts and relief is based upon the principles of common business integrity." *Good Housekeeping*, 236 N.W. 872. In Michigan, the tort has been applied broadly. *See, for example, Hayes-Albion v. Kuberski*, 364 N.W.2d 609 (Mich. 1984) (misappropriation of

18

trade secrets); *Heritage Optical Center, Inc. v. Levine*, 359 N.W.2d 210 (Mich. Ct. App. 1984) (defamation of competitor).

Contrary to Shafi's assertions, Plaintiffs' Amended Complaint is replete with examples of fraudulent and deceptive conduct that is harmful to Shafi's competitors and the general public, including Shafi's knowing misrepresentations about Advenovation which are intended to mislead the public and position Shafi to unfairly compete with RVT. *See* Dkt. No. 2, 1st Am. Compl. ¶¶ 116-129. At a minimum, Shafi is guilty of unfair competition by palming off Advenovation's software and services as Reliabot software and services (which are now owned by RVT). *See id.*, ¶¶ 53-58, 110, 112. Shafi's claim that Plaintiffs have failed to state a claim for unfair competition has no merit.

As set forth above, Plaintiffs properly have alleged the elements and supporting facts to state cognizable claims for breach of the SPA, breach of the Non-Competition Agreement, Defamation and Unfair Competition.

## E. **Shafi's Motion for Sanctions Should be Denied.**

As discussed in detail above, Plaintiffs properly filed this action in this Court and, therefore, Shafi's motion for sanctions under 28 U.S.C. § 1927 is without merit.

Section 1927 focuses on the conduct of the litigation, not on its merits, and requires a showing that the non-moving party unreasonably and vexatiously has multiplied the proceedings. *See* 28 U.S.C. § 1927. "The purpose of § 1927 is to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d 624, 644 (6th Cir. 2009). The determination of whether to award such sanctions should be "enlightened by the knowledge that 'such an award' is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Id.* at 642 (quoting *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986) (emphasis in original)).

19

Plaintiffs properly exercised their right to file the 2011 Action in Virginia. This is particularly true because in the 2009 Action discovery had been closed for five months, a summary judgment motion had been pending four months, a settlement conference was scheduled to take place in nine days and trial was scheduled to start in six weeks. Plaintiffs properly asserted new claims against Shafi in a jurisdiction in which he conducted business. Where all matters in the 2009 Action were concluded but for the trial of Shafi vs. Braintech, Plaintiffs RVT and Weidinger did not unreasonably and vexatiously multiply proceedings. In all respects, Plaintiffs' 2011 Action is proper and Shafi's request for sanctions under 28 U.S.C. § 1927 should be denied.

## IV.   <u>CONCLUSION</u>

Based upon the foregoing, Plaintiffs Robotic Vision Technologies, LLC and Frederick Weidinger request that this Court deny in all respects Defendant Shafi's motions to dismiss and for costs.

Respectfully submitted,

DICKINSON WRIGHT PLLC

/s/    Erin M. Pawlowski
Thomas G. McNeill (P36895)
Michelle L. Alamo (P60684)
Erin M. Pawlowski (P74305)
500 Woodward Ave, Suite 4000
Detroit, Michigan 48226
Dated:    November 14, 2011      Tel:  313.223.3500/Fax:  313.223.3598

20

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 14, 2011, the foregoing PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, was electronically filed with the ECF of the Eastern District of Michigan and served upon counsel of record via electronic notice.


/s/Karen A. Hopf_____