UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**************

ADIL SHAFI,                                    Case No. 2:09-cv-10454

   Counter-Plaintiff,                       Honorable Victoria A. Roberts

Vs.

BRAINTECH, INC.,

   Counter-Defendant.
_____/

| | |
|---|---|
| T. Michael Doyle (P12931) | Ann Bagno Widlak (P35763) |
| DOYLE & MALINZAK, P.C. | Susan D. Koval (P59297) |
| Attorney for Counter-Plaintiff | NEMETH BURWELL |
| 45 Blue Star Highway | Attorney for Counter-Defendant |
| Douglas, Michigan 49406 | 200 Talon Centre Drive, Suite 200 |
| (269) 857-3111 | Detroit, Michigan 48207-5199 |
| | (313) 576-5921 |

_____/


**<u>ADIL SHAFI'S RESPONSE AND BRIEF</u>**
**<u>IN OPPOSITION TO BRAINTECH, INC.'S</u>**
**<u>RENEWED MOTION FOR JUDGMENT AS A</u>**
**<u>MATTER OF LAW OR, IN THE ALTERNATIVE,</u>**
**<u>FOR NEW TRIAL</u>**

## TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUES PRESENTED ………………………………… iii

INDEX OF CONTROLLING AUTHORITIES …………………………………. iv

INTRODUCTION …………………………………………………………….. 1

PROCEDURAL BACKGROUND ………………………………………………… 2

DISCUSSION OF RECORD EVIDENCE …………………………………………. 2

STANDARD OF REVIEW UNDER RULE 50 …………………………………. 5

STANDARD OF REVIEW UNDER RULE 59 ………………………………… 6

ARGUMENT …………………………………………………………………. 7

     THE UNCONTRADICTED RECORD EVIDENCE COMPELS
     REASONABLE PERSONS TO REACH ONE CONCLUSION, THAT IS,
     THAT BRAINTECH DID NOT HAVE GOOD CAUSE TO TERMINATE
     SHAFI'S EMPLOYMENT …………………………………………. 7

CONCLUSION …………………………………………………………………… 8

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

I.      WHETHER BRAINTECH IS ENTITLED TO JUDGMENT AS A MATTER
        OF LAW PURSUANT TO RULE 50(b) OF THE FEDERAL RULES OF
        CIVIL PROCEDURE BECAUSE THERE WAS NOT A LEGALLY
        SUFFICIENT EVIDENTIARY BASIS TO SUTAIN THE JURY'S
        VERDICT AND A REASONABLE JURY WOULD HAVE CONCLUDED
        THAT BRAINTECH DID NOT HAVE GOOD CAUSE TO TERMINATE
        ADIL SHAFI'S EMPLOYMENT.

        Shafi answers no.

II.     IN THE ALTERNATIVE, WHETHER BRAINTECH IS ENTITLED TO A
        NEW TRIAL PURSUANT TO RULE 59(a) OF THE FEDERAL RULES OF
        CIVIL PROCEDURE BECAUSE THE JURY'S DETERMINATION THAT
        BRAINTECH DID NOT HAVE GOOD CAUSE TO TERMINATE ADIL
        SHAFI'S EMPLOYMENT IS AGAINST THE CLEAR WEIGHT OF THE
        EVIDENCE.

        Shafi answers no.

# INDEX OF CONTROLLING AUTHORIES

**Cases**                                                                                          **Page**

*Brocklehurst vs. PPG Indus., Inc*., 123 F3d. 890, 894 (6th Cir. 1997) …………       5

*Carney vs. Preston*, 683 A.2d 47, 54 (Del. Supr. 1996) ………………………       6

*Drayton vs. Price*, 2010 WL 1544414, at *4 (Del. Supr.) (citation omitted) ….       6

*Holmes vs. City of Massillon, Ohio*, 78 F.3d 1041, 1045-1046 (6th Cir. 1996) ..       7

*J.C. Wyckoff & Assoc. vs. Standard Fire Ins. Co*., 936 F.2d 1474, 1487
    (6th Cir. 1991) ……………………………………………………….       7

*K & T Enters, Inc. vs. Zurich Ins. Co.,* 97 F.3d 171, 176 (6th Cir. 1996) ………       5

*Town of Cheswold vs. Vann*, 9 A. 3d 467, 472 (Del. Supr. 2010) ……………..       6

## <u>INTRODUCTION</u>

The jury found that the termination was "without good cause".  If you read the

following provision, is seems clear that if termination is without cause, our client is

entitled to the remainder of his three year base salary, less what he had already been paid.

(a)   <u>Severance Pay</u>.  In the event of a termination of this Agreement by <u>the</u>
<u>Company</u>, without Good Cause, due to Total Permanent Disability or due
to the death of the EXECUTIVE, or by the EXECUTIVE for Good
Reason, then the EXECUTIVE or the EXECUTIVE heirs will be entitled
to:

    i.    unpaid compensation and benefits described hereunder earned up
to the termination date to be paid within 10 business days of
termination; and

    ii.    <u>a lump sum payment (less all deductions required by law such as</u>
<u>income taxes) equal to the remainder of the then Base Salary</u>
<u>remaining in **_the three year employment term_** set out in paragraph</u>
<u>5 to be paid within 20 business days after the Termination Date</u>.
The EXECUTIVE agrees that after the Termination Date, but prior
to payment of the severance pay and any outstanding bonus monies
called for herein, EXECUTIVE shall execute a release, in the form
of a severance agreement, of any and all claims he may have
against the Company and its officers, employees, directors, parents
and affiliates.  EXECUTIVE understands and agrees that the
payment of the severance pay and bonus called for by this
paragraph are contingent on his execution of the previously
described release of claims.  **For avoidance of doubt, if severance**
**is paid to EXECUTIVE then non-compete will be effective**.

-

-

The base salary for the three years is provided for as follows in the Agreement:

BASE SALARY:  BRAINTECH shall pay the EXECUTIVE, in consideration for
the Services an annual base salary of US$180,000, which shall be increased by at least
10% at each anniversary of the EXECUTIVE's employment and additional possible
increase adjusted at the discretion of the CEO, based on performance above and beyond
achieving certain milestones.

1

## PROCEDURAL BACKGROUND

In Count II of Shafi's Counterclaim, Shafi alleges that Braintech breached an employment agreement by failing to pay him severance pay upon termination of his employment. The severance provision is contained in Paragraph 12(g) of the employment agreement and provides that Shafi would be entitled to severance pay if Braintech did not have good cause to terminate his employment. Jt.Ex.1.

This matter was tried to a jury beginning May 21, 2013. On May 22, 2013, Braintech made its Motion for Judgment as a Matter of Law under Rule 50(1). Tr.II.45.[1] The Court took the Motion under advisement. Tr.II.46. On May 23, 2013, the jury returned a verdict in favor of Shafi in the amount of $180,000. The clerk entered judgment on the verdict on May 24, 2013.

## DISCUSSION OF THE RECORD EVIDENCE

### Shafi's Case

In Shafi's casae-in-chief, Shafi relied upon all of Shari's exhibits as well as Braintech's exhibits. Shafi presented a single witness – himself. His testimony can be succinctly summarized as follows:

1.   He disagreed with defense counsel's opening statement. Tr.20. The jury agreed with Shafi.

2.   Shafi denied any occasions of dishonesty.

3.   The jury determined that there was no evidence of wrongdoing.

4.   The jury obviously did not believe Rick Weidinger. Tr.21.

5.   The jury found that Shafi was stymied in performing his job duties.

6.   Shafi was terminated with a letter just before Thanksgiving of 2008. Tr.25.

---

[1] Vol. I of the trial transcript is appended as Exhibit A, and Vol. II is appended as Exhibit B.

7.      Shafi explained that the Reliabot technology involved vision guided robotics and explained generally how it worked. Tr.26-27.

8.      Shafi denied that he ever perpetrated any of these paragraphs (paragraph 12). Tr.28.

9.      Shafi testified that he never destroyed e-mails and that he never had access to anything but his own laptop. Tr.28. Shafi explained that this did not include spam.

10.     Shafi testified that he was seeking $900,000 in contract damages. Tr.28.

This concluded all of the evidence presented by Mr. Shafi before he was cross

examined by defense counsel.

**<u>Braintech's Cross Examination of Shafi</u>**

1.      In its verdict, the jury found that Shafi was credible in his cross-examination testimony.

2.      Shafi pointed out that Rick Weidinger made his performance impossible by breaching promises to support same.

Shafi's Re-Direct Examination

1.      Shafi explained how the Reliabot technology he sold to Braintech worked. Tr. II. 39.

2.      Shafi pointed out that he supervised writing of the source code for the Reliabot software by Kevin North, a former Shafi employee. Tr.II.40.

3.      Shafi asked for him [Kevin North] to be made available to Braintech, but Mr. Weidinger refused to make him available. T.II.40.

4.      Shafi testified that Mr. Weidinger made it impossible for him to have John Neilson which stopped him from doing his job. Tr.II.40.

5.      Shafi explained why the Siemens' invoice remained unpaid despite telling Mr. Weidinger that payment was imminent on several occasions. One phase was paid but it was impossible for Siemens to implement the second phase. Tr.II.41.

6.      Shafi described his pipeline of accounts and potential prospects and pointed out that he needed things that were denied. Tr.II.42-43.

3

Shafi's testimony on re-direct examination was never rebutted by Braintech.

**Braintech's Uncontested and Unimpeached Defense**

Braintech introduced 83 defense exhibits that supported Shafi's case. The jury supported and believed Shafi's case. Braintech's former Chief Executive Officer Rick Weidinger testified on behalf of Braintech and established that he ended up with all the assets of Braintech.

**Shafi's Rebuttal**

The jury fully believed Shafi's rebuttal case. The exhibits introduced by Braintech did not demonstrate good cause. He did not rebut Mr. Weidinger's testimony. Instead, Shafi testified to the following:

1.   The Braintech e-mails he destroyed were "spam" e-mails. Tr.II.91.

2.   He stated that he gave the Reliabot source code to a third party before he sold it to Braintech. Tr.II.91-92.

3.   He described his "phone book." Tr.II.91-92. This was a thick file of customer information.

4.   His "sales plan" was the access and acceleration schedule. Tr.II.92.

5.   He denied that John Neilson was hired by Braintech as a consultant. Tr.II.92.

6.   He denied that Rick Weidinger gave him authority to hire 6 people because Mr. Weidinger did not provide the financial funding for all of the hires. Tr.II.92-93.

7.   Shafi stated that he had a Braintech credit card but testified that is might as well have been "made out of wood" because he was required to get two weeks preapproval for business expenses. Tr.II.93.

Braintech never rebutted Shafi's testimony. Mr. Weidinger didn't care enough to be present.

4

<u>STANDARD OF REVIEW UNDER RULE 50</u>

A renewed motion for judgment as a matter of law is governed by Rule 50(b),

which provides in pertinent part:

> **RULE 50.  JUDGMENT AS A MATTER OF LAW IN A JURY TRIAL; RELATED MOTION FOR A NEW TRIAL; CONDITIONAL RULING . . .**
>
> (b)  **Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.  No later than 28 days after the entry of judgment - - or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged - - the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59 . . .

Under Rule 50, a court may grant judgment as a matter of law on a particular

issue if "a reasonable jury would not have a legally sufficient evidentiary basis to find for

the party on that issue . . ." Fed.R.Civ.P. 50(a)(1).  In cases based on diversity

jurisdiction, a state-law standard of review is applied when a Rule 50(b) motion for

judgment as a matter of law is based on a challenge to the sufficiency of the evidence

necessary to support the jury's verdict. *K & T Enters, Inc. vs. Zurich Ins. Co.,* 97 F.3d

171, 176 (6th Cir. 1996).  Because this is a diversity case and the instant motion

challenges the sufficiency of the evidence, Sixth Circuit precedent requires the Court to

look to the standard of review used by the courts of the state whose substantive law

governs the action. *Brocklehurst vs. PPG Indus., Inc.*, 123 F3d. 890, 894 (6th Cir. 1997).

In this case, the parties agree that Delaware substantive law applies to the

employment contract claims.  Jt. Ex.1, ¶18.  Accordingly, Delaware's standard of review

governing post-trial motions for judgment as a matter of law should be applied.

**Super. Ct. Civ. R. 50.  Judgment as a matter or law in actions tried by jury; alternative motion for new trial; conditional rulings.**
(a)(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the Court may determine the issue against the party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

In Delaware, as in most jurisdictions, jury verdicts should stand <u>unless</u> a reasonable jury could not have reached the result.  *Town of Cheswold vs. Vann*, 9 A. 3d 467, 472 (Del. Supr. 2010).  "When considering judgment as a matter of law the trial judge does not weigh the evidence but, rather, views the evidence in the light most favorable to the non-moving party and, drawing all reasonable inferences therefrom, determines if a verdict may be found for the party having the burden."  *Drayton vs. Price*, 2010 WL 1544414, at *4 (Del. Supr.) (citation omitted).  "Juries are not permitted to make [ ] factual findings in favor of a party at trial if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue . . ."  *Carney vs. Preston*, 683 A.2d 47, 54 (Del. Supr. 1996).  "The court must determine if under any reasonable view, the jury could find in favor of the non-moving party."  Mazda Motor Corp. vs. Lindahl, 706 A. 2d 526, 530 (Del. 1998).

In the instant matter, Braintech properly made a Rule 50(a) motion for judgment as a matter of law during the trial in this matter on May 22, 2013.  Braintech renews the motion pursuant to Rule 50(b).

<u>**STANDARD OF REVIEW UNDER RULE 59**</u>

A motion for new trial is governed by Rule 59, which provides in pertinent part:

**RULE 59.  NEW TRIAL; ALTERING OR AMENDING A JUDGMENT**
**. . .**
**(a) In General..**

6

      **(1)  Grounds for new Trial.**  The court may, on motion, grant a new trial on all or some of the issues - - and to any party - -  as follows:
      **(A)**  after a jury trial, for any for which a new trial has heretofore been granted in an action at law in federal court.

"[A] new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by:  (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias."  *Holmes vs. City of Massillon, Ohio*, 78 F.3d 1041, 1045-1046 (6th Cir. 1996).  When deciding whether to grant a new trial, a district court is free to independently weigh the evidence.  A trial court should grant a motion for a new trial when the verdict is clearly against the weight of the evidence.  *J.C. Wyckoff & Assoc. vs. Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991).

## ARGUMENT

      Viewing the record evidence in the light most favorable to Shafi and, drawing all reasonable inferences therefrom, there is legally sufficient evidentiary basis for the jury verdict in this case.  Under any reasonable view, Braintech did not have good cause to terminate Shafi's employment, and that is the only reasonable conclusion to be drawn from the record evidence.

      **I.**      **THE UNCONTRADICTED RECORD EVIDENCE COMPELS REASONABLE PERSONS TO REACH ONE CONCLUSION, THAT IS, THAT BRAINTECH HAD GOOD CAUSE TO TERMINATE SHAFI'S EMPLOYMENT.**

      Under the employment agreement, Shafi was not entitled to severance pay unless he could demonstrate that Braintech did not have good cause to terminate him.  Jt.Ex.1, ¶12(g).  Paragraph 12(a) of the employment agreement defines "Good Cause" as follows:

      (a)  "Good Cause" shall mean:

      i.      the willful and continued failure by the EXECUTIVE to substantially perform his duties hereunder (other than due to incapacity from physical or mental illness);

      ii.     gross misconduct which is or could reasonably be expected to become materially injuries to BRAINTECH or its business or reputation, including, without limitation, fraud, or misappropriation of Company property or unauthorized disclosure and/or non-disclosure of confidential information; and

     iii.    dishonesty resulting, or intending to result, directly or indirectly, in gain or personal enrichment at the expense of the Company.

The jury found that there was no good cause to terminate.

**<u>The Uncontested  Record Evidence Establishes That Braintech Did Not Have Good Cause And That Shafi Is Entitled To Severance Pay.</u>**

**<u>The Uncontested Record Evidence Establishes That Shafi Did Not Engage In Dishonesty That Was Intended To Result In Personal Gain To Shafi At The Expense Of Braintech.</u>**

**<u>CONCLUSION</u>**

WHEREFORE, Shafi respectfully request that this Honorable Court deny Braintech's Motion for Judgment as a Matter of Law or, in the Alternative, for New Trial and enter an Order directing the entry of judgment as a matter of law in favor of Shafi as decided by the jury.

                       Respectfully submitted,

                       DOYLE & MALINZAK, P.C.
                       Attorneys for Shafi

Dated: August 26, 2013          By: */s/ T. Michael Doyle*
                         T. Michael Doyle (P12931)
                         45 Blue Star Highway
                         Douglas, Michigan 49406
                         (269) 857-3111
                         tmichael06t@aol.com

8

## PROOF OF SERVICE

I hereby certify that on August 26, 2013, I electronically filed the foregoing paper (Adil Shafi's Response and Brief in Opposition to Braintech, Inc.'s Renewed Motion for Judgement as a Matter of Law, or, in the Alternative, for New Trial) with the Clerk of the Court using the ECF system, which will send notification of such filing and service of such documents to all parties via their counsel of record at the e-mail addresses disclosed on the Notice of Electronic Filing receipt.

_/s/ T. Michael Doyle_____
T. Michael Doyle (P12931)
DOYLE & MALINZAK, P.C
Attorney for Shafi
45 Blue Star Highway
Douglas, Michigan 49406
(269) 857-3111
tmichael06t@aol.com